**HEARING DATE: MARCH 27, 2020**
**HEARING TIME: 10:00 A.M.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>P8H, Inc. d/b/a PADDLE 8,<br><br>               *Debtor.* | Chapter 11<br><br>Case No. 20-10809 (SMB) |

**CHARITY CREDITORS' OPPOSITION AND OBJECTION TO
DEBTOR'S MOTION FOR AN ORDER (I) SCHEDULING A PRELIMINARY HEARING ON DEBTOR'S MOTION REQUESTING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. §363(c)(2) AND BANKRUPTCY RULE 4001, (II) AUTHORIZING THE DEBTOR'S USE OF CASH COLLATERAL ON AN INTERIM BASIS AND PROVIDING ADEQUATE PROTECTION THEREFORE PURSUANT TO 11 U.S.C. §§361 AND 362, AND (III) SCHEDULING A FINAL HEARING**

PAUL COSSU declares under penalty of perjury:

1. I am a member of Olsoff Cahill Cossu LLP, attorneys for three of the "Charity Creditors[1]." I file this declaration in support of the objection (the "Objection") to the motion (the "Financing Motion") filed by P8H, Inc. d/b/a Paddle8 ("Debtor") to use cash collateral. In support of the Objection, the Charity Creditors state as follows:

**BASIS FOR THE OBJECTION**

2. Debtor, an online auction house, undertook—for the Charity Creditors benefit and as a fiduciary of the Charity Creditors[2]—to sell artworks from important artists. Debtor collected the funds from the sale of the artworks and misappropriated them for Debtor's purposes.

---

[1] Our firm's "Charity Creditors" are (i) Rema Hort Mann Foundation, Inc., a not-for-profit New York corporation ("RHMF), (ii) Penumbra Foundation, a not-for-profit New York corporation ("Penumbra"), and (iii) The New American Cinema Group, Inc., a not-for-profit New York corporation ("NACG"), who are collectively owed more than $100,000.

[2] *Christie, Manson & Woods Intl., Inc.,* 117 A.D.2d 284, 292, 502 N.Y.S.2d 165 (1986) ("[the auction house] Christie's had a fiduciary duty" to its consignor).

3.      Debtor acknowledged that wrongdoing and blamed it on Debtor's former CEO (who, in turn, blames it on Debtor's board and backers). With Debtor listing only up to $50,000 in assets, having not yet filed the required schedules (which are due on Monday, March 30, 2020), the Charity Creditors are very concerned that ***their secured trust funds*** have either been spent or will be diminished when they need them most—the monies were critical for certain of the charities even before the current crisis.

4.      Because the funds that Debtor has misused are subject to a first-priority, statutory lien, Debtor cannot, as it seeks to by its application, subordinate the Charity Creditors' lien to those of others.[3] The funds already distributed to Debtor's attorneys (to which two of the Charity Creditors have already filed an objection) are material to the Charity Creditors, two of which have very limited operating budgets and whose programming—and perhaps existence—are threatened by Debtor's actions.

5.      Debtor has not filed any budget, which prevents the Charity Creditors, and every other creditor, from disclosure of the source of the "Collateral" that Debtor seeks to transfer to unidentified third parties (*i.e.*, is the Collateral coming from a bank account that holds the funds that are due to be paid to the Charity Creditors?). Further, the Charity Creditors respectfully submit that Debtor's motion, along with the "13-week" budget (which is an excessively long amount of time at this juncture), is inappropriate, when a Creditors' Committee has not even been formed (and which would be irreparably prejudiced by the inability to review the schedules or budget).

6.      Although we have not seen any budget or plan from Debtor, I and two other members of our firm have practiced in the "art world" (two are former General Counsels of auction

---

[3] Section 12.01(1) of New York's Arts and Cultural Affairs Law ("NYACAL") provides that NYACAL provides, inter alia, that ". . . ***such trust property and trust funds shall be considered property held in statutory trust, and no such trust property or trust funds shall become the property of the consignee or be subject or subordinate to any claims, liens or security interest of any kind or nature whatsoever of the consignee's creditors***." (Greater detail is provided in a filing by two of the Charity Creditors that is ECF No. 5.)

houses) long enough to credibly opine that there is no future likely for Debtor: even if the art market was not now shut down by the current crisis, it is hard to imagine an auction house that violates its fiduciary duties with respect to its client's funds can operate in the future.

7. If there was any hope of Debtor continuing in business, Debtor would surely have at least paid the Charity Creditors given the reputational and other consequences for those in the art world who have misused consignor funds from art sales.

8. For that reason, the Charity Creditors expect to seek to have Debtor's case converted to Chapter 7. Debtor has demonstrated, both before and during this proceeding (*e.g.*, by not initially filing schedules), that it should not be handling what appear to be funds that ultimately belong to charities and is not in the best position to pursue claims against those individuals who have deprived the Charity Creditors of those funds. (A case has already been filed against certain of those individuals—including the CEO and CFO of Debtor. It also named Debtor, which appears to have triggered the filing of Debtor's petition in this Court, after Debtor agreed, but failed, to pay the claim of Charity Creditor NACG.)

9. For the foregoing reasons and those set forth in the opposition filed by the Charity Creditors to the retention Application of Debtor's proposed counsel, the Charity Creditors respectfully submit that the Court should deny Debtor's Financing Motion, and allow the Charity Creditors to seek the appointment of a Court-appointed Trustee who can protect the interests of the Charity Creditors and other creditors.

Dated: New York, New York
      2020-March-26

                                                                               Paul Cossu