Robert T. Honeywell, Esq.
Thomas A. Warns
**K&L GATES LLP**
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 536-4863
Facsimile:  (212) 536-3901

Emily Mather (*pro hac vice* pending)
**K&L GATES LLP**
4350 Lassiter at North Hills Avenue, Suite 300
Raleigh, NC 27609
Telephone: (919) 743-7300
Fax: (919) 743-7358

*Counsel to Counseling in Schools Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>P8H, INC. d/b/a PADDLE8,<br><br>            Debtor. | Chapter 11<br><br>Case No. 20-10809 (SMB) |
| COUNSELING IN SCHOOLS, INC.<br><br>            Plaintiff,<br><br>v.<br><br>P8H, INC. d/b/a PADDLE8,<br><br>            Defendant. | Adv. Pro. No. 20-_____(SMB) |

## COMPLAINT

Plaintiff Counseling in Schools, Inc. ("CIS" or "Plaintiff"), by and through its undersigned counsel, hereby files this complaint against defendant P8H, Inc. d/b/a Paddle8 ("Paddle8" or "Defendant") to recover funds held in trust by Paddle8 for the sale of artwork on behalf of CIS that took place prior to the Petition Date (as defined below). In support of its complaint, CIS alleges as follows:

1

**INTRODUCTION**

1) This is a breach of contract and constructive or statutory trust action brought by CIS against Paddle8 to seek redress for Paddle8's breach of an agreement to carry out an online art auction and remit certain proceeds from that auction to CIS.

2) CIS is a non-profit organization dedicated to helping children in New York City's public schools. In 2019, CIS sought to raise additional funds for its operations, and decided to hold an art auction that would raise money for the schools while providing unique artistic works to its benefactors.

3) CIS did not have the capability of hosting an art auction itself, and sought out a partner to help with the fundraising. CIS eventually found Paddle8, an online art auction site that, prior to the Petition Date, regularly hosted online auctions for non-profit organizations. On October 21, 2019, CIS and Paddle8 entered into an Online Benefit Auction Agreement (the "Agreement"), a copy of which is attached hereto as Exhibit A.

4) Under the Agreement, Paddle8 was obligated to auction off art works donated to and owned by CIS, and collect the funds from the auction. Within thirty business days of the conclusion of the auction, Paddle8 was obligated to remit the proceeds of the auction, minus a commission and other related fees, to CIS.

5) The auction took place between November 19, 2019, and December 10, 2019 (the "Auction"). However, as of the date hereof, Paddle8 has not paid CIS a single cent.

**PARTIES**

6) Plaintiff CIS is a community-based non-profit organization that sponsors a variety of activities aimed at promoting the emotional and social growth of children to help them thrive in New York City's public schools. CIS sponsors a variety of programs to enrich the lives of students,

2

including counseling services, youth development activities, and professional development training for staff at schools. CIS is incorporated as a non-profit organization in New York state, and does business at 505 Eighth Avenue, Suite 12A-06, New York, NY 10018.

7) Prior to the Petition Date, Defendant Paddle8 was in the business of hosting online art auctions, in many cases for the benefit of non-profit organizations. Paddle8 billed itself as "a global leader in cultural e-commerce," and its website promised that "Paddle8 makes buying and selling fine art and collectibles online an easy, secure, and efficient experience." Paddle8 is a Delaware corporation that is registered to do business in New York state, and its principal place of business is located at 107 Norfolk St., New York, NY 10002.

8) Paddle8 is currently a chapter 11 debtor in the above-captioned proceeding in the United States Bankruptcy Court for the Southern District of New York (the "Court").

## JURISDICTION AND VENUE

9) Jurisdiction is proper under §§ 28 U.S.C. 157 and 1334(b).

10) Venue is properly laid in this district court pursuant to 28 U.S.C. § 1409(a).

11) This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## STATEMENT OF FACTS

12) As a non-profit organization, CIS relies on charitable donations in order to operate. In October 2019, CIS decided to launch an art fundraiser in order to fund its operations.

13) CIS became aware that Paddle8 operated an online art auction platform that could facilitate CIS' contemplated charity auction, and sought to run an art auction through Paddle8.

14) CIS and Paddle8 executed the Agreement on October 21, 2019. (Ex. A at 9). The parties were also bound by the Conditions of Business that were posted on Paddle8's website (the

"Conditions of Business"), a copy of which is attached hereto as Exhibit B. The Conditions of Business were incorporated into the Agreement by reference. (Ex. A at 1).

15) Under the Agreement, CIS provided works of art, or "lots," to list for auction on Paddle8's website, Paddle8.com. (Ex. A at ¶ 1). Each lot came from an artist that donated such lot to CIS to be sold in the Auction, and the proceeds of the sale of each lot were to belong solely to CIS.

16) Following a public preview period, the Auction was scheduled to run from November 19, 2019 to December 3, 2019. (Ex. A at ¶ 1). By written agreement of the parties, a copy of which is attached hereto as Exhibit C, the end date of the Auction was later extended to December 10, 2019.

17) According to the Agreement, Paddle8 was to conduct the Auction on its website, and collect the proceeds from the sale of each lot. Paddle8 was entitled to collect a one-time fee of $1,500 in order to set-up the Auction, as well as an 8% commission on the sale of each lot, a 2% payment processing fee on all lots, and a 3.5% fee on all transactions that took place via credit card. (Ex. A at ¶ 2, 4(a)).

18) Although Paddle8 was entitled to collect the fees listed in the preceding paragraph from the proceeds of the Auction, it was obligated to distribute the remainder of the funds, or the "Net Sale Proceeds," to CIS. The Agreement obligated Paddle8 to remit the Net Sale Proceeds to CIS within thirty business days of receipt of all payments from the Auction.

19) According to the Conditions of Business, Paddle8 was "an agent for the Seller [CIS]." (Ex. B). Further, if buyers purchased lots on Paddle8's website, the contract of sale was "concluded directly between…the buyer, and the Seller [CIS]." (Ex. B, ¶ 1). The Conditions of

4

Business also clarified that the lots were "consigned" to Paddle8 and offered for sale on Paddle8's website. (Ex. B).

20) The Auction concluded on December 10, 2019, and Paddle8 collected the proceeds from the works of art that were sold during the Auction. Paddle8 did not remit the Net Sale Proceeds to CIS within thirty business days of collecting the proceeds of the Auction, as it was required to do under the terms of the Agreement.

21) After conclusion of the Auction, CIS employees reached out to Paddle8 employees on numerous occasions about payment, but received no response to their inquiries. Finally, at the end of January 2020, Lew Bader of CIS exchanged a series of e-mails with Randi Zwickler and Sondra Kinney of Paddle8. On January 31, 2020, Sondra Kinney produced, by e-mail to Lew Bader, a detailed "Summary Statement" which stated that the Auction had raised $43,940.00, and the Net Sale Proceeds to be remitted to CIS totaled $36,508.10. Sondra Kinney's email, which is attached hereto as <u>Exhibit D</u>, also stated that Paddle8 would pay CIS the Net Sale Proceeds by February 14, 2020 at the latest.

22) Despite its promise, Paddle8 did not pay the Net Sale Proceeds by February 14, 2020, and Paddle8 has yet to remit any of the Net Sale Proceeds to CIS.

23) On March 16, 2020 (the "Petition Date"), Paddle8 filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Court.

24) On May 8, 2020, this Court ordered the appointment of Megan E. Noh, Esq., as Chapter 11 trustee in the above captioned matter. (Dkt. 43.)

25) CIS has not been identified by Paddle8 in its schedules as a creditor.

### FIRST CAUSE OF ACTION
**(Breach of Contract)**

26) CIS incorporates the allegations of paragraphs 1-25 as though fully set forth herein.

27) The elements of a breach of contract are the (1) formation of a contract between plaintiff and defendant, (2) performance by plaintiff, (3) defendant's failure to perform, and (4) resulting damage from defendant's failure to perform.

28) The Agreement is a valid and binding contract between CIS and Paddle8.

29) CIS fully performed its obligations under the Agreement.

30) Paddle8 failed to perform under the Agreement, specifically by failing to remit the Net Sale Proceeds to CIS within thirty business days of the receipt of the proceeds of the Auction, as the Agreement required.

31) CIS has been damaged in an amount to be determined at trial as a result of Paddle8's failure to perform, but in no event less than $36,508.10.

## SECOND CAUSE OF ACTION
**(Constructive Trust)**

32) CIS incorporates the allegations of paragraphs 1-31 as though fully set forth herein.

33) General common law principles of agency, as they apply in New York, establish the auctioneer as an agent of the seller by virtue of such employment.

34) The principal and agent relationship requires the impression of a constructive trust upon funds received by the agent from the sale of his principal's property which are retained in segregated identity. An auctioneer has a fiduciary duty to turn over the proceeds of an auction sale to the principal. The relationship of principal and agent that is created when an auctioneer sells a principal's goods creates a constructive trust in favor of the principal for the funds received by the auctioneer.

35) Paddle8 conducted the Auction of the lots as an agent of CIS and owed fiduciary duties to CIS. *See* Ex. B.

36) At all times prior to the moment a sale was effectuated, CIS retained title to the art works comprising the lots. *Id.*

37) As such, ownership of the proceeds of the sales of the lots passed directly to CIS. Although Paddle8 was permitted to deduct its fees and commissions from such proceeds, Paddle8 was obligated to remit the Net Sale Proceeds to CIS.

38) When Paddle8 failed to remit the Net Sale Proceeds to CIS, a constructive trust in favor of CIS was imposed upon such funds.

39) Further, Paddle8's interest in the Auction proceeds extended only to its fees under the Agreement, without any legal or equitable interest in the Net Sale Proceeds themselves. Thus, the Net Sale Proceeds are not property of the Paddle8's bankruptcy estate.

40) Paddle8 has been unjustly enriched by its retention of the Net Sale Proceeds.

41) Therefore, the Net Sale Proceeds are held for CIS in a constructive trust, and are not part of Paddle8's bankruptcy estate.

### THIRD CAUSE OF ACTION
### (Statutory Trust Under the NYACAL § 12.01)

42) CIS incorporates the allegations of paragraphs 1-41 as though fully set forth herein.

43) In the alternative, CIS maintains that the Net Sale Proceeds are subject to the statutory trust pursuant to the New York Arts and Cultural Affairs Law (the "NYACAL"), § 12.01(1), and thus are held in trust for the benefit of CIS and cannot be subordinated to the lien of any others. N.Y. Art & Cult. Aff. Law § 12.01(1).

44) Section 12.01(1) of the NYACAL provides that:

(a) Whenever an artist . . . delivers or causes to be delivered a . . . print of such artist's . . . own creation to an art merchant for the purpose of exhibition and/or sale on a commission, fee or other basis of compensation, the delivery to and acceptance thereof

by the art merchant establishes a consignor/consignee relationship as between such artist or craftsperson, or the successor in interest of such artist or craftsperson, and such art merchant with respect to the said work, and:

    (i) such consignee shall thereafter be deemed to be the agent of such consignor with respect to the said work;

    (ii) such work is trust property in the hands of the consignee for the benefit of the consignor;

    (iii) any proceeds from the sale of such work are trust funds in the hands of the consignee for the benefit of the consignor;

    (iv) such work shall remain trust property notwithstanding its purchase by the consignee for his own account until the price is paid in full to the consignor; provided that, if such work is resold to a bona fide third party before the consignor has been paid in full, the resale proceeds are trust funds in the hands of the consignee for the benefit of the consignor to the extent necessary to pay any balance still due to the consignor and such trusteeship shall continue until the fiduciary obligation of the consignee with respect to such transaction is discharged in full; and

    (v) such trust property and trust funds shall be considered property held in statutory trust, and no such trust property or trust funds shall become the property of the consignee or be subject or subordinate to any claims, liens or security interest of any kind or nature whatsoever of the consignee's creditors.

45) Paddle8 is an art merchant as defined by Section 11.01(2) of the NYACAL.

46) Several artists provided the art works comprising the lots that were sold in the Auction.

47) The artists provided the art works for sale on Paddle8's website for the benefit of CIS, as the donee of such artists.

48) Paddle8 was an agent of CIS and the artists.

49) The lots were statutory trust property in the hands of Paddle8.

50) The Net Sale Proceeds from sales of the lots are statutory trust funds in the hands of Paddle8 that it holds solely for the benefit of CIS.

51) The Net Sale Proceeds are not the property of Paddle8 as consignee, and never became property of Paddle8's bankruptcy estate, nor became subject to any claims, liens, or security interests of any kind or nature whatsoever of Paddle8's creditors.

304579573.3

52) The Net Sales Proceeds therefore constitute statutory trust funds that are not part of Paddle8's bankruptcy estate.

53) Section 12.01(3) of the NYACAL provides for attorneys' fees, costs, and expenses to be awarded to a plaintiff injured by a defendant's violation of the NYACAL.

54) CIS is therefore entitled to recover reasonable attorneys' fees, costs, and expenses related to this lawsuit.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

A. An award of damages for the Net Sale Proceeds in an amount to be determined at trial, but no less than $36,508.10;

B. A determination that the Net Sale Proceeds are held in constructive trust for the benefit of CIS, and that the Net Sale Proceeds are not property of Paddle8's bankruptcy estate;

C. In the alternative, a determination that the Net Sale Proceeds are statutory trust funds under the NYACAL, and are not property of the Paddle8's bankruptcy estate;

D. An award of pre-judgment and post-judgment interest;

E. If the Court determines that the Net Sale Proceeds are statutory trust funds under the NYACAL, an award for costs and disbursements in connection with this action, including attorneys' fees under the NYACAL, and;

F. An award of any other relief this Court finds just and proper.

Dated: New York, New York
July 16, 2020

Respectfully submitted,

**K&L GATES LLP**

*/s/* Robert T. Honeywell_____

Robert T. Honeywell, Esq.
Thomas A. Warns, Esq.
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 536-4863
Facsimile: (212) 536-3901
Email: Robert.honeywell@klgates.com

Emily Mather (*pro hac vice* admission pending)
4350 Lassiter at North Hills Avenue, Suite 300
Raleigh, NC 27609
Telephone: (919) 743-7300
Fax: (919) 743-7358

*Counsel to Counseling in Schools Inc.*