**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

In re:

                                       **Chapter 11**

**P8H, INC., d/b/a PADDLE 8,**

                                       **Case No. 20-10809 (DSJ)**

                    **Debtor.**

-------------------------------------------------------------X

### CHAPTER 11 PLAN OF LIQUIDATION OF THE DEBTOR
### JOINTLY PROPOSED BY THE CHAPTER 11 TRUSTEE AND
### THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS'

       Megan E. Noh, solely in her capacity as the Trustee (the "Trustee") for P8H, Inc., d/b/a Paddle 8 (the "Debtor"), and the Official Committee of Unsecured Creditors of the Debtor (the "Committee") jointly propose this Chapter 11 plan of liquidation of the Debtor (the "Plan") pursuant to Section 1121 of the Bankruptcy Code.

### RULES OF CONSTRUCTION AND
### INTERPRETATION, COMPUTATION OF TIME AND CHOICE OF LAW

       For purposes of this Plan: (a) whenever from the context it is appropriate, each term, whether stated as singular or plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and neutral genders; (b) any reference in the Plan to an existing document or exhibit filed, or to be filed, shall be to such document or exhibit as it may have been or may be amended, modified or supplemented from time to time in accordance with the terms of the Plan; (c) unless otherwise specified, all references in the Plan to Articles, Sections and exhibits are references to Articles Sections and exhibits of the Plan; (d) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular Article, Section or portion of the Plan; (e) captions and headings are included only for convenience or reference and are not intended to be part of or affect the interpretation of the Plan; (f) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply; and (g) any capitalized term in the Plan that is not defined in the Plan but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

       In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply except to the extent made inapplicable or otherwise expired under any other Bankruptcy Rule or applicable law.

       Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New

York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, Instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

## **THE PLAN**

### **ARTICLE I**
### **DEFINITIONS**

1.    **Administrative Expense Bar Date"** means the date designated by the Bankruptcy Court as the last day for the timely filing of a Proof of Administrative Expense Claim or request for payment of Administrative Expenses against the Debtor (excluding Professional Fee Claims).

2.    **"Administrative Expense Bar Date Order"** means the *Order Establishing Deadline for Administrative Proofs of Claims and Approving The Form and Manner of Notice Thereof* entered on September ___, 2021 [ECF No. ___].

3.    **"Administrative Expense Claim"** means a Claim for costs and expenses of administration of the Estate pursuant to Sections 503(b), 507(a)(2) and 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving and operating the Estate; (b) any indebtedness or obligations incurred or assumed by the Debtor in connection with the conduct of its business after the Petition Date, including for wages, salaries, or commissions for services, and payments for goods and other services and leased premises to the extent such indebtedness or obligations provided a benefit to the Debtor's Estate; (c) all fees and charges assessed against the Estate pursuant to Section 1930 of chapter 128 of the United States Code; (d) any Section 503(b)(9) Claims; and (e) Professional Fee Claims, to the extent allowed by the Court.

4.    **"Allowed"** means, with reference to any Claim or Interest, and except to the extent provided otherwise under this Plan:

    (a)    a Claim or Interest that has been listed by the Debtor in its Schedules and List of Equity Holders (as applicable), and (i) is not listed in its Schedules as disputed, contingent or unliquidated, (ii) is not a Claim or Interest as to which a proof of claim or interest has been filed, (iii) with respect to an Interest, the Person or Entity (or their predecessors in interest, as applicable) identified on the List of Equity Holders was the holder of record of the securities on which the Interest is based as of the Record Date, and (iv) is not the subject of an objection to such Claim or Interest filed by the Trustee or Plan Administrator on or before any applicable deadline;

    (b)    a Claim or Interest as to which a timely proof of claim or interest has been filed by the General Bar Date (and with respect to an Interest, the Person or Entity asserting the Interest was the holder of record of the securities on which the Interest is based as of the Record Date), and either (i) no objection thereto, or application to estimate, equitably

2

subordinate or otherwise limit recovery, has been made on or before any applicable deadline, or (ii) if an objection thereto or application to estimate, equitably subordinate or otherwise limit recovery, has been made, the extent to which such Claim or Interest has been allowed (whether in whole or in part) by a Final Order;

(c)     a Claim arising from the recovery of property under Section 550 or 553 of the Bankruptcy Code and allowed in accordance with Section 502(h) of the Bankruptcy Code; or

(d)     an Administrative Expense, Claim, or Interest expressly allowed under this Plan, pursuant to the Confirmation Order or other order of the Bankruptcy Court.

5.     **"Artist-Consignor"** means the Holder of an Artist-Consignor Claim.

6.     **"Artist-Consignor Claim"** means the General Unsecured Claim held or asserted by an artist as consignor, or an agent or representative of an artist as consignor, who entered into a relationship with the Debtor to sell property online, whether through a timed auction or a storefront sale, whose consignment(s) may be subject to Section 12.01 of NYACAL for any proceeds of the sale of such artist's property through an online auction or storefront sale conducted on the Debtor's online platform prior to the Petition Date, for which the proceeds were paid to the Debtor (and not subsequently charged back or returned to the purchaser) and not remitted by the Debtor, and for attorney's fees, costs and expenses pursuant to NYACAL.

7.     **"Avoidance Action"** means any action or adversary proceeding commenced, that could have been commenced before or that may be commenced after the Effective Date, pursuant to Chapter 5 of the Bankruptcy Code including Sections 544, 545, 547, 548, 549, 550, 551 or 553, including, without limitation, the FBNK Lien Avoidance Action.

8.     **"Ballot"** means the ballots distributed together with the Disclosure Statement to each Holder of an Impaired Claim entitled to vote for the purpose of accepting or rejecting this Plan.

9.     **"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.,* in effect on the Petition Date, together with any amendments made thereto subsequent to the Petition Date, to the extent that any such amendments are applicable to the Case.

10.     **"Bankruptcy Court"** or **"Court"** means the United States Bankruptcy Court for the Southern District of New York or such other court having jurisdiction over the Case, including any contested matter or adversary proceeding within, or appeal of an order entered in, the Case.

11.     **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure in effect on the Petition Date, the Official Bankruptcy Forms or the local rules of the Bankruptcy Court, together with any amendments made thereto subsequent to the Petition Date, to the extent that any such amendments are applicable to the Case.

12.     **"Business Day"** means any day, other than a Saturday, Sunday or a legal holiday (as such term is defined in Bankruptcy Rule 9006(a)).

13.     **"Case"** means the Debtor's above-captioned bankruptcy case pending in the Bankruptcy Court.

14.     **"Cash"** means the legal tender of the United States of America, including, but not limited to, bank deposits, checks and other similar items.

15.     **"Cash Collateral Order"** means the Orders entered by the Bankruptcy Court in the Case approving the use of Cash Collateral by the Debtor and/or the Trustee on an interim or final basis, as may be amended from time to time.

16.     "**Causes of Action**" means without limitation, any and all actions, proceedings, causes of action, controversies, liabilities, obligations, rights, rights of setoff, recoupment rights, suits, damages, judgments, accounts, defenses, offsets, powers, privileges, licenses, franchises, claims, Avoidance Actions, Fiduciary Breach Actions, the FBNK Lien Avoidance Action, counterclaims, cross-claims, affirmative defenses, and demands of any kind or character whatsoever, whether known or unknown, asserted or unasserted, reduced to judgment or otherwise, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, or assertable directly or derivatively, existing or hereafter arising, in contract or in tort, in law, in equity, or otherwise, whether arising under the Bankruptcy Code or any applicable non-bankruptcy law, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Case, including through the Effective Date. Without limiting the generality of the foregoing, when referring to Causes of Action of the Debtor or its Estate, Causes of Action shall include (a) all rights of setoff, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law or equity, (b) claims (including Avoidance Actions) pursuant to Section 362, and Chapter 5 of the Bankruptcy Code including Sections 510, 542, 543, 544 through 550, or 553, and (c) claims and defenses such as fraud, mistake, duress, usury, and any other defenses set forth in Section 558 of the Bankruptcy Code.

17.     **"Case"** means the Chapter 11 case voluntarily commenced by the Debtor.

18.     "**Charity Actions**" means, collectively, the prepetition state court lawsuits and post-petition adversary proceedings commenced against the Debtor, and/or the positions asserted in early bankruptcy motion practice in the Case, by Online Sellers Rema Hort Mann Foundation, Penumbra Foundation, The New American Cinema Group, Inc., The Shawn Carter Foundation, UN Women National Committee UK, and/or Counseling In Schools, Inc., in which they asserted claims for relief including, but not limited to, imposition of a constructive trust over certain cash held by the Debtor as of the Petition Date, a determination that certain cash held by the Debtor as of the Petition Date was not property of the Debtor's bankruptcy Estate, and/or breach of fiduciary duties by officers and directors of the Debtor.

19.     **"Claim"** means any claim, as such term is defined in Section 101(5) of the Bankruptcy Code, and including, without limitation, secured claims, whether or not asserted.

20.    "**Class**" means a class of Claims or Interests as listed in Article II of the Plan pursuant to Section 1122(a) of the Bankruptcy Code.

21.    **"Committee"** means the official committee of unsecured creditors appointed in this Chapter 11 Case by the United States Trustee on April 15, 2020 [ECF No. 23], pursuant to Section 1102(a) of the Bankruptcy Code, as the same may be constituted from time to time.

22.    **"Committee D& O Action"** means the adversary proceeding entitled *Official Committee of Unsecured Creditors of the Estate of P8H, Inc. v. Valentine Uhovski, et al.*, Adv. Proc. No. 20-01011 (DSJ), pending in the Bankruptcy Court.

23.    **"Confirmation Date"** means the date upon which the Court enters the Confirmation Order on the docket of the Case.

24.    **"Confirmation Hearing"** means the joint hearing before the Bankruptcy Court for approval of the Disclosure Statement and confirmation of the Plan pursuant to Sections 1125 and 1129 of the Bankruptcy Code, as such hearing may be adjourned from time to time.

25.    **"Confirmation Order"** means the order of the Bankruptcy Court approving the Disclosure Statement and confirming the Plan pursuant to Sections 1125 and 1129 of the Bankruptcy Code and authorizing and approving the Settlements and transactions contemplated by the Plan.

26.    **"Creditor"** means any Entity that is the Holder of a Claim against the Debtor that arose on or before the Petition Date or a Claim against the Debtor's estate of the kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code.

27.    **"Cure Claim"** means the Claim of a non-Debtor party to a lease or contract to be assumed under this Plan pursuant to Section 365(a) of the Bankruptcy Code which the Debtor is required to pay to remedy any monetary default under the lease or contract.

28.    **"Debtor"** means P8H, Inc., d/b/a Paddle 8, a corporation organized under the laws of the state of Delaware.

29.    "**Debtor and Trustee Released Parties**" means, collectively, but excluding any such Persons and Entities identified as Excluded Persons: (a) the Debtor; (b) the Trustee; and (c) with respect to each of the foregoing Persons in clauses (a) and (b), such Entities' predecessors, successors and assigns, subsidiaries, affiliates, managed accounts or funds, and all of their respective current and former agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and such Persons' respective heirs, executors, estates, servants and nominees.

30.    **"Disclosure Statement"** means the disclosure statement for the Plan filed pursuant to Section 1125 and transmitted to such creditors, equity holders and parties in interest as may be

required by law, including all exhibits and schedules filed by the Trustee and the Committee with the Bankruptcy Court, as thereafter amended, supplemented, or modified from time to time in accordance with applicable law.

31.     **"Disputed Claim"** means any Claim or portion thereof: (i) as to which the Trustee or the Committee has filed an objection or request for estimation, which objection has not been withdrawn or determined by a Final Order; (ii) that is subject to any right of setoff or recoupment; or (iii) that otherwise is disputed by the Trustee or the Committee.

32.     **"Distribution"** means cash distributions in accordance with this Plan to holders of Allowed Claims.

33.     **"Distribution Agent"** means the Plan Administrator.

34.     **"Distribution Date"** means the date of any Distribution under this Plan.  The initial Distribution Date shall occur as soon as reasonably practicable following the Plan Effective Date, as determined by the Plan Administrator.  Subsequent Distribution Dates shall occur as soon as practicable following a determination by the Plan Administrator that there exists sufficient available cash to warrant subsequent Distributions.

35.     **"Effective Date"** means the date on which substantial consummation (as defined in Section 1101(2) of the Bankruptcy Code) of the Plan occurs, as determined pursuant to Article XII below, when all conditions to effectiveness of the Plan are either (a) satisfied, or (b) waived by the Trustee and the Committee and (c) no stay of the Confirmation Order is in effect; provided, however, that such date shall be no earlier than one day after the on which the Confirmation Order becomes a Final Order.

36.     **"Entity"** has the meaning set forth in Section 101(15) of the Bankruptcy Code.

37.     **"Estate"** means the chapter 11 estate the Debtor, held by the Trustee, that was created upon the commencement of the Case under Section 541 of the Bankruptcy Code.

38.     **"Exculpated Estate Parties"** means each of:  (a) the Debtor; (b) the Trustee, solely in her official capacity and not individually; (c) the Committee; (d) the members of the Committee, solely in their capacities as such; (e) the Professionals retained by the Debtor, the Trustee and the Committee; and (f) Rameshkur Ganeshan, Jana Brooks and Steven Perez, each of whom was employed by and/or independently contracted to the Trustee or agents or retained professionals thereof from time to time in connection with the administration of the Estate by the Trustee;, and, with respect to each of the foregoing entities (a) through (f), such entities' current and former officers and directors, principals, equity holders, members, partners, managers, employees, subcontractors, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors (and employees thereof), and other professionals, and such entities' respective heirs, executors, estates, servants, and nominees, in each case in their capacity as such.

39.     **"FBNK"** means FBNK Finance S.à.r.l., a Luxembourg limited liability company.

40.    **"FBNK Lien Avoidance Action"** means the adversary proceeding entitled *Megan E. Noh, as Trustee of P8H, Inc. v. FBNK Finance S.à.r.l.*, Adv. Proc. No. 20-01211 (DSJ), pending in the Bankruptcy Court.

41.    **"FBNK Secured Claim"** means the alleged Secured Claim held by FBNK in its capacity as successor to Stockaccess Holdings SAH.

42.    **"Fiduciary Breach Actions"** means the Committee D&O Action and the Trustee D&O Action.

43.    **"Final Order"** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing will then be pending, or (b) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment will have been affirmed by the highest court to which such order was appealed, or certiorari will have been denied, or a new trial, reargument, or rehearing will have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument, or rehearing will have expired; provided, however, that no order or judgment will fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or Sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

44.    **"General Bar Date"** means August 24, 2020, the date designated by the Bankruptcy Court as the last day for the timely filing of a Proof of Claim against the Debtor.

45.    **"General Bar Date Order"** means that *Order Establishing Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice of General Bar Date, and Establishing A Protocol for the Filing of Claims by Online Sale Claimants* entered on July 10, 2020 [ECF No. 112].

46.    **"General Unsecured Claim"** means any Claim as asserted against the Debtor other than an Administrative Expense, Priority Claim, Online Seller Claim, or an Artist-Consignor Claim.

47.    **"Governmental Unit"** means any entity defined in Section 101(27) of the Bankruptcy Code.

48.    **"Holder"** means any Person or Entity that holds a Claim or Equity Interest.

49.    **"Interest"** means any equity security (as defined in Section 101(16) of the Bankruptcy Code) of the Debtor, including all shares, common stock, preferred stock, or other

instrument evidencing or purporting to evidence any fixed or contingent ownership interest in any Debtor, whether or not transferable, and any option, warrant, or other right, contractual or otherwise, to acquire any such interest in a Debtor, whether fully vested or vesting in the future, including, without limitation, equity or equity-based incentives, grants, or other instruments issued, granted or promised to be granted to current or former employees, directors, officers, or contractors of the Debtor, to acquire any Interests in the Debtor that existed immediately before the Petition Date.  For purposes of this Plan, Interests includes any shares of stock that may have been authorized by the Debtor any time before the Petition Date but for which an amended certificate of incorporation was not filed with the Secretary of State of Delaware, the state of the Debtor's incorporation.

50.     **"Impaired"** means the extent to which any Claim or Equity Interest is "impaired" within the meaning of Section 1124 of the Bankruptcy Code.

51.     **"Insider Unsecured Claims"** means the Claims of FBNK, Stockaccess, Recall Studios Inc., and Hashtag Studio scheduled or filed against the Debtor.

52.     "**Instrument**" means any share of stock, security, promissory note, bond, or any other 'Instrument,' as that term is defined in Section 9-102(47) of the Uniform Commercial Code in effect on the Petition Date.

53.     "**Insurance Policy**" means any issued policy of insurance and any agreements relating thereto covering the Debtor, the Estate, or their members, managers, officers, employees, or fiduciaries, or that may be available to provide coverage for Claims against the Debtor or any of the foregoing, including without limitation any general liability, property, workers compensation, casualty, umbrella, or excess liability policy(ies), errors and omissions, directors and officer or similar executive, fiduciary and organization liability policy(ies) (Side A, B, or C coverage), and any tail with respect thereto.

54.     **"Lien"** has the meaning given in Section 101(37) of the Bankruptcy Code; except that a Lien that has been avoided in accordance with a provision of the Bankruptcy Code, including Sections 544, 545, 546, 547, 548 or 549, shall not constitute a Lien under this Plan or by Settlement through the Mediation.

55.     **"Litigation Settlement"** means the settlement of the FBNK Lien Action and the Fiduciary Breach Actions, and certain other compromises and settlements, resulting from the Settlement Agreement, to be approved by the Plan.

56.     **"Mediation"** means the mediation of certain disputes and controversies among the parties to the FBNK Lien Avoidance Action and the Fiduciary Breach Actions pursuant to the order of the Bankruptcy Court dated April 26, 2021, which referred those matters to mediation before the Mediator [ECF No. 195].

57.     **"Mediator"** means Honorable Elizabeth S. Stong, United States Bankruptcy Judge for the Eastern District of New York.

58.    **"NYACAL"** means the New York Arts & Cultural Affairs Law.

59.    **"Online Buyer"** means the Holder of an Online Buyer Claim.

60.    **"Online Buyer Claim"** means any Unsecured Claim held by any Person or Entity who entered into a relationship with the Debtor to purchase property through the Debtor's online platforms, whether through a timed auction or a storefront sale, for which the property sold to such Person or Entity through an online auction or storefront sale conducted on the Debtor's online platform was not delivered prior to the Petition Date.

61.    **"Online Seller Claimants' Protocol"** means the protocol and procedure established under the General Bar Date Order for the filing by Persons and Entities of Claims asserted as Online Seller Claims, Artist-Consignor Claims, and/or Online Buyer Claims.

62.    **"Online Seller"** means the Holder of an Online Seller Claim.

63.    **"Online Seller Claim"** means any Claim of any Person or Entity holding a Claim, as seller, for any proceeds of the sale of such Person's or Entity's property through an online auction or storefront sale conducted on the Debtor's online platform prior to the Petition Date, for which the proceeds were paid to the Debtor (and not subsequently charged back or returned to the purchaser) and not remitted by the Debtor.  Class 3 Claims are impaired.

64.    "**Online Seller/Artist-Consignor Settlement**" means the settlement under this Plan of the contentions of Online Sellers and Artist- Consignors that the proceeds of pre-petition online auctions or storefront sales effectuated through the Debtor's online platforms were not property of the Debtor's estate under Section 541 of the Bankruptcy Code, and the Trustee's defenses to such contentions, resulting in the treatment of Online Seller Claims and Artist-Consignor Claims provided by the Plan.

65.    **"Other Secured Claim"** means any Secured Claim other than the FBNK Secured Claim.

66.    **"Person"** has the meaning set forth in Section 101(41) of the Bankruptcy Code.

67.    **"Petition Date"** means March 16, 2020.

68.    **"Plan"** means this plan of liquidation, as it may be amended or modified from time to time, which shall include the Plan Supplement (if any).

69.    "**Plan Administrator**" means the Person or Entity designated by the Confirmation Order to administer the Plan following the Effective Date.

70.    **"Plan Administration Assets"** means (a) Cash held by the Estate as of the Confirmation Date; (b) any Cause of Action arising under or based on Sections 542, 543, 544 through 548, 550, or 553 of the Bankruptcy Code, any state law fraudulent transfer, fraudulent conveyance, or voidable transaction law, or any statute limiting or prohibiting transfers to

shareholders, except those Causes of Action that are being released in accordance with the Settlement Agreement and this Plan, (c) any Cause of Action relating to fraudulent transfer, fraudulent conveyance, voidable transaction, illegal dividend, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, alter ego, or unjust enrichment, except those Causes of Action that are being released in accordance with the Settlement Agreement and this Plan, (d) any other Cause of Action that could be asserted by or on behalf of the Debtor except those Causes of Action that are being released in accordance with the Settlement Agreement and this Plan; and (e) any other items of property that may remain in the Estate including, without limitation, accounts receivable of the Debtor. Plan Administration Assets do *not* include the contents of the Segregated Seller Fund.

71.     **"Plan Supplement"** means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan, if any, to be filed by the Trustee and the Committee (as may be amended, supplemented, altered, or modified from time to time on the terms set forth herein), and which includes: (a) the Rejected Executory Contract and Unexpired Lease List, if any; and (b) any other necessary documentation related to the Plan.

72.     **"Priority Claim"** means any Claim entitled to a priority in payment pursuant to Section 507(a) of the Bankruptcy Code, excluding Administrative Expenses and Priority Tax Claims.

73.     **"Pro Rata"** means proportionately so that, with respect to any Distribution, the ratio of (a)(i) the amount of property to be distributed on account of a particular Claim and/or Interest or a particular Class of Claims and/or Interests to (ii) the amount of such particular Claim and/or Interest or a particular Class of Claims and/or Interests, is the same as the ratio of (b)(i) the amount of property to be distributed on account of all Claims and/or Interests or all Classes of Claims and/or Interests sharing in such Distribution to (ii) the amount of all Claims and/or Interests or all Classes of Claims and/or Interests sharing in such Distribution.

74.     **"Professional"** means (a) any professional employed in the Case pursuant to orders of the Bankruptcy Court under Sections 327, 330 and/or 1103 of the Bankruptcy Code and (b) (b) all Professionals or other Entities seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to Section 503(b)(4) of the Bankruptcy Code.

75.     **"Professional Fee Claim"** means the Claims of (a) Professional Persons and (b) any Person making a Claim for compensation or expense reimbursement under Section 503(b) of the Bankruptcy Code, in each case for reasonable compensation or reimbursement of reasonable costs and expenses relating to services performed during the period commencing on the Petition Date.

76.     **"Proof of Claim"** means a proof of Claim filed by a Holder of a Claim or Administrative Expense against the Debtor's Estate in this Case.

77.     **"Rejected Contracts and Leases"** means the schedule referred to in Article IX, Part C of the Plan, to be filed as part of the Plan Supplement (if any), which will identify the executory contracts and unexpired leases, if any, to be rejected as of the Effective Date.

78.    **"Released Parties"** means, collectively: the Released Settling Parties, the Debtor, the Trustee, the Committee, the members of the Committee, Ramesh Ganeshan, Michael McClellan, Jana Brooks, and Steven Perez and their respective Professionals and with respect to each of the foregoing entities, such entities' predecessors, successors, assigns, subsidiaries, affiliates, managed accounts and funds, current and former officers and directors, principals, equity holders, members, partners, managers, employees, subcontractors, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors (and employees thereof), and other professionals, and such entities' respective heirs, executors, estates, servants, and nominees, in each case in their capacity as such.

79.    **"Released Settling Parties"** means the persons or entities (i) listed on Schedule A attached to the Settlement Agreement, and (ii) the Settlers as defined in the Settlement Agreement.

80.    **"Schedules"** means the schedules of assets and liabilities, statement of financial affairs, lists of holders of Interests, and related exhibits filed with the Court pursuant to Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007(b) by the Debtor [ECF No. 20], including any and all amendments and supplements thereto.

81.    **"Secured Claim"** means a Claim that (a) is secured by a Lien on property in which the Debtor has an interest or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Debtor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Section 506(a) of the Bankruptcy Code or (b) is Allowed by a Final Order or pursuant to this Plan as a Secured Claim.

82.    **"Segregated Seller Fund"** means the proceeds of the segregated account established by prior orders of the Bankruptcy Court and held by the Trustee, the current amount of which is $213,000.

83.    **"Settlements"** means the Litigation Settlement and the Online Seller/Artist-Consignor Settlements pursuant by the Plan.

85.    **"Settlement Agreement**" means the agreement resulting from the Mediation and executed on or about August 20, 2021 by and among the Trustee, the Committee and the Parties to the Fiduciary Breach Actions and the FBNK Lien Avoidance Action, attached to this Plan as **Exhibit 1**.

84.    **"Tax"** means all taxes, charges, fees, duties, levies, imposts, rates or other assessments imposed by any federal, state, local or foreign Governmental Unit, including income, gross receipts, excise, property, sales, stamp, use, license, capital stock, transfer, franchise, payroll, withholding, social security, value added and other taxes, and any interest, penalties, fines, losses, damages, costs or additions attributable thereto.

85.    **"Tax Code"** means the Internal Revenue Code of 1986, as amended.

86.    "**Trustee**" means Megan E. Noh, solely in her capacity as Trustee of the Estate (and not individually), or her duly appointed successor in such capacity (and not individually).

87.    **"Trustee D&O Action"** means the adversary proceeding entitled *Megan E. Noh, as Trustee of P8H, Inc. v. John Textor, et al.*, Adv. Proc. No. 20-01212 (DSJ), pending in the Bankruptcy Court.

88.    **"United States Trustee"** means the United States Trustee for the Region 2, including the Southern District of New York."

89.    "**United States Trustee Fees**" means all fees and charges asserted against the Estate pursuant to 28 U.S.C. § 1930.

90.    **"Unsecured Claim"** means a Claim that is not secured by a valid Lien or security interest or as to which there is no collateral securing a valid Lien or security interest.

91.    **"Voting Deadline"** means the date set by the Bankruptcy Court pursuant to the Order Scheduling a Joint Hearing on Approval of the Disclosure Statement and Confirmation of the Plan, by which Ballots for acceptance or rejection of this Plan must be received by the Trustee.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

The following chart summarizes the classification and impairment of Claims against and Interests in the Debtor pursuant to the Plan:

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | FBNK Secured Claim | Impaired | Entitled to Vote |
| 2 | Other Secured Claims, if any | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | Online Seller Claims | Impaired | Entitled to Vote |
| 4 | Artist-Consignor Claims | Impaired | Entitled to Vote |
| 5 | Online Buyer Claims | Impaired | Entitled to Vote |
| 6 | General Unsecured Claims | Impaired | Entitled to Vote |
| 7 | Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

1.    **Unclassified Claims**.

A.    ***Administrative Expenses***.  Administrative Expenses are those expenses and claims entitled to payment pursuant to Section 503 and 507(a)(2) of the Bankruptcy Code.

B.    ***Priority Claims***.  Priority Claims are those claims entitled to payment pursuant to Section 507(a) of the Bankruptcy Code excluding Administrative Expenses.

2.    **Classified Claims**.

A.    ***Class 1:  FBNK Secured Claim***.  Class 1 consists of the FBNK Secured Claim.  The Class 1 claim is impaired.

B.    ***Class 2:  Other Secured Claims***.  Class 2 consists of all Other Secured Claims.  The Trustee does not believe that there are any Other Secured Claims outstanding against the Debtor or the Estate.  Class 2 claims, if any, are not impaired.

C.    ***Class 3:  Online Seller Claims***.

i.    **Included Claims**.  Class 3 consists of all Online Seller Claims.  Class 3 Claims are impaired.

ii.      **Excluded Claims**.  Class 3 does ***not*** include:  (i) those Claims that were not the subject of timely-filed Proofs of Claim asserting entitlement to treatment as Online Seller Claims under the Online Seller Claimants' Protocol; (ii) those Claims that were listed by the Debtor in its Schedules as non-contingent, liquidated, undisputed General Unsecured Claims, and for which no Proof of Claim was timely filed by the Holders asserting entitlement to treatment as Online Seller Claims under the Online Seller Claimants' Protocol; and (iii) those Persons or Entities involved in each auction or storefront sale that was cancelled as a result of the Online Buyer's failure to remit the proceeds of the sale or where returns or chargebacks of the purchase price were obtained by or for the account of the Online Buyer.

D.      ***Class 4:  Artist-Consignor Claims***.

i.      **Included Claims**.  Class 4 consists of all Artist-Consignor Claims. Class 4 Claims are impaired.

ii.      **Excluded Claims**.  Class 4 does ***not*** include:  (i) those Claims that were not the subject of timely-filed Proofs of Claim asserting entitlement to treatment as Artist-Consignor Claims under the Online Seller Claimants' Protocol; (ii) those Claims that were listed by the Debtor in its Schedules as non-contingent, liquidated, undisputed General Unsecured Claims, and for which no Proof of Claim was timely filed by the Holders asserting entitlement to treatment as Artist-Consignor Claims under the Online Seller Claimants' Protocol; (iii) those Persons or Entities involved in each auction or storefront sale that was cancelled as a result of the Online Buyer's failure to remit the proceeds of the sale or where returns or chargebacks of the purchase price were obtained by or for the account of the Online Buyer; and (iv) those Claims that may be held or asserted by any artist, or agent or representative of an artist that are the subject of timely-filed Proofs of Claim, but where the artist no longer held legal title or any ownership interest in and to the consigned property prior to the sale of such property through an online auction or storefront sale conducted on the Debtor's online platform prior to the Petition Date.

E.      ***Class 5:  Online Buyer Claims***.  Class 5 consists of the Online Buyer Claims.  Class 5 Claims are impaired.  Class 5 does ***not*** include the Claims of any Persons or Entities who filed Proofs of Claim, as buyers, and who were involved in in each auction or storefront sale that was cancelled as a result of the Online Buyer's failure to remit the proceeds of the sale or where returns or chargebacks of the purchase price were obtained by or on account of such Online Buyer.

F.      ***Class 6:  General Unsecured Claims***.  Class 6 includes all General Unsecured Claims including Insider Unsecured Claims but excluding Online Seller Claims and Artist-Consignor Claims.  For the avoidance of doubt, the Insider Unsecured Claims shall be subordinated to all other General Unsecured Claims and shall not receive any distribution under the Plan.  Class 6 Claims are impaired.

G.      ***Class 7 – Equity Interests***.  Class 7 consists of all Interests in the Debtor of any kind or nature held by any Persons or Entities.  Class 7 Interests are impaired.

3.      **Elimination of Vacant Classes**.

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, for purposes of determining acceptance or rejection of the Plan by such Class pursuant to Section 1129(a)(8) of the Bankruptcy Code, and for purposes of Distributions by the Plan Administrator after confirmation and consummation of the Plan.

## ARTICLE III
## TREATMENT OF UNCLASSIFIED CLAIMS

1.      **Administrative Expenses**.

A.      **Administrative Expenses Other Than Professional Fees**.  Except to the extent that a Holder of an Administrative Expense Claim, other than a Professional Fee Claim, has been paid during the Case or, with the consent of the Trustee, agrees to a different treatment that is no more favorable to such Holder, each Holder of an Allowed Administrative Expense Claim shall receive in full satisfaction, settlement, release, and discharge of its Administrative Expense Claim, an amount of Cash equal to the unpaid portion of its Allowed Administrative Expense Claim to be paid on the latest of:  (a) if such Claim is Allowed as of the Effective Date, on or as soon as practicable after the Effective Date; (b) if such Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order allowing such Administrative Expense Claim becomes a Final Order, or as soon thereafter as is reasonably practicable; (c) if not yet due and payable on the Effective Date, the date on which such Allowed Claim becomes due and payable in the ordinary course of business, or an Administrative Expense Claim; or (d) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.  Professional Fee Claims shall be treated as provided in Section III.1.B of the Plan.

B.      **Professional Fees**.  All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be filed no later than twenty (20)  days after the Effective Date, unless extended with the approval of the Trustee and the Committee.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules and Local Bankruptcy Rules. The amount of the Allowed Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals when such Professional Fee Claims are Allowed by entry of an order of the Bankruptcy Court.

2.      **Priority Claims**.

Except to the extent that a Holder of a Priority Claim agrees to a less favorable treatment, each Holder of an Allowed Priority Claim shall receive in full and final satisfaction, settlement,

release, and discharge of its Allowed Priority Claim, cash equal to its unpaid Allowed Priority Claim to be paid on the earliest of (a) the Effective Date, if such Claim is Allowed as of the Effective Date, (b) the date on which such Priority Claim is Allowed, or as soon thereafter as reasonably practicable, and (c) such other date as may be ordered by the Court or agreed by such Holder and the Trustee or the Plan Administrator, as the case may be.

## ARTICLE IV
## TREATMENT OF CLASSIFIED CLAIMS

1.      **Class 1 – FBNK**.

Pursuant to the Litigation Settlement and Settlement Agreement under this Plan, the FBNK Secured Claim shall be Allowed as a General Unsecured Claim in Class 6, but shall be subordinated to the rights to Distributions held by all other Allowed General Unsecured Claims until such time, if any, before or as of the closing of the Case, that such Allowed General Unsecured Claims have received Distributions satisfying their Allowed Claims in Class 6 in full.

2.      **Class 2 – Other Secured Claims**.

Except to the extent that a Holder of an Other Secured Claim agrees to a less favorable treatment, each Holder of an Allowed Claim in Class 2, if any, shall receive in full and final satisfaction, settlement, release, and discharge of such Claim, Cash equal to the value of the Lien on property owned by the Debtor that serves as collateral to secure such Claim, without post-petition interest, to be paid on the earliest of: (a) the Effective Date, if such Claim is an Allowed Other Secured Claim as of the Effective Date; (b) the date on which such Other Secured Claim is Allowed as a Secured Claim, or as soon thereafter as reasonably practicable, and (c) such other date as may be ordered by the Court or agreed by such Holder and the Trustee or the Plan Administrator, as the case may be.  Other Secured Claims are impaired and will be solicited for acceptance of the Plan.  The amount of any deficiency Claim held by a Holder of an Other Secured Claim (the amount of the Claim that exceeds the value, if any, of the Lien on property owned by the Debtor that serves as collateral to secure such Holder's Other Secured Claim) shall be entitled to the treatment as an Unsecured Claim under Class 6 of the Plan.  The Trustee does not believe there to be any claims in this class.

3.      **Class 3 – Online Seller Claims.**

A.      Pursuant to the settlement of controversies relating to Online Seller Claims as provided in this Plan, and except to the extent that a Holder of an Online Seller Claim agrees to a less favorable treatment, each Holder of an Allowed Claim in Class 3 shall receive in full and final satisfaction, settlement, release, and discharge of such Claim, without pre- or post-petition interest, pursuant to the Online Seller/Auction Consignor Claim Settlement under this Plan, on the earliest of  (a) the Effective Date, if such Claim is Allowed as of the Effective Date, (b) the date on which such Claim is Allowed, or as soon thereafter as reasonably practicable, and (c) such other date as may be ordered by the Court or agreed by such Holder and the Trustee or the Plan Administrator, as the case may be: (i) such Holder's Pro Rata share of the Segregated Seller Fund,

16

in Cash; and (ii) an additional Distribution, in Cash, from the proceeds of the Plan Administration Assets in the same percentage as the Distributions to Allowed General Unsecured Claims under Class 6.  Such Allowed Claim Class 3 Claims are impaired and will be solicited for their acceptances of the Plan.

B.      In exchange for receiving a Pro Rata share of the Segregated Seller Fund under the Plan pursuant to the Online Seller/Auction-Consignor Settlement, any Holder of an Online Seller Claim who remains in possession of property subject to a sale that was completed prior to the Petition Date shall be required to relinquish and surrender possession of the property to the Online Buyer that purchased such property if the Online Buyer elects under the Plan to receive the property purchased, <u>provided that</u> such Online Buyer shall be responsible for the payment of all shipment and delivery costs of the subject property.

C.      If the contract between the Debtor, on the one hand, and such Online Buyer or Online Seller, on the other hand, provided for the Debtor to pay the shipment and delivery costs of the subject property, such contract is deemed rejected as of the Effective Date as provided in Section IV.5 of the Plan regarding the treatment of Online Buyer Claims.

D.      *In order to confirm and receive the treatment provided under Section IV.3 of the Plan, each Holder of an Online Seller Claim must timely return a Ballot that (i) identifies or confirms each and every artwork or other item of property that was the subject of a sale on the Debtor's online platform for which such Holder did not receive payment, and (ii) states the current location of each such item of property or indicates that such Holder has disposed of any or all such items.  The failure of such Holder to provide the requested information shall result in the automatic reclassification and treatment of such Holder's Online Seller Claim as a General Unsecured Claim.*

E.      In the event that the Holder of an Online Buyer Claim elects to receive an Allowed General Unsecured Claim in the amount of the purchase amount paid by such Claimant, without post-petition interest, the Holder of the corresponding Allowed Online Seller Claim that previously sold the property to such Online Buyer shall still receive the treatment provided under Class 3 of the Plan, notwithstanding the continued possession of any property by such Holder of the Allowed Online Seller Claim.

4.      **Class 4 – Artist-Consignor Claims**.

A.      Pursuant to the settlement of controversies relating to Artist-Consignor Claims as provided in this Plan, and except to the extent that a Holder of an Artist-Consignor Claim agrees to a less favorable treatment, each Holder of an Allowed Claim in Class 4 shall receive in full and final satisfaction, settlement, release, and discharge of such Claim, without pre- or post-petition interest, on the earliest of (a) the Effective Date, if such Claim is Allowed as of the Effective Date, (b) the date on which such Claim is Allowed, or as soon thereafter as reasonably practicable, and (c) such other date as may be ordered by the Court or agreed by such Holder and the Trustee or the Plan Administrator, as the case may be: (i) such Holder's Pro Rata share of the Segregated Seller Fund, in Cash; (ii) an additional Pro Rata Distribution, in Cash, from the proceeds of the Plan Administration Assets in an amount equal to the same percentage as

17

Distributions to Allowed Unsecured Claims in Class 6; and (iii) a second Pro Rata Distribution on account of such Holder's claim for entitlement under NYACAL to attorney's fees, costs, expenses, and/or monetary penalties.  Class 4 Claims are impaired and will be solicited for their acceptances of the Plan.  Class 4 Claims are impaired and will be solicited for their acceptances of the Plan.

        B.     In exchange for receiving a Pro Rata share of the Segregated Seller Fund under the Plan, any Holder of an Artist-Consignor Claim who remains in possession of property subject to a sale that was completed prior to the Petition Date shall be required to relinquish and surrender possession of the property to the Online Buyer that purchased such property if the Online Buyer elects under the Plan to receive the property purchased, provided the Online Buyer shall be responsible for the payment of all shipment and delivery costs of the subject property.

        C.     If the contract between the Debtor, on the one hand, and either of such Online Buyer or Artist-Consignor, on the other hand, provided for the Debtor to pay the shipment and delivery costs of the subject property, such contract is deemed rejected as of the Effective Date as provided in Section IV.5 of the Plan regarding the treatment of Online Buyer Claims.

        ***D.     In order to confirm and receive the treatment provided under Section IV.4 of the Plan, each Holder of an Artist-Consignor Claim must timely return a Ballot that (i) identifies or confirms each and every artwork or other item of property that was the subject of a sale on the Debtor's online platform for which such Holder did not receive payment, and (ii) states the current location of each such item of property or indicates that such Holder has disposed of any or all such items.  The failure of such Holder to provide the requested information shall result in the automatic reclassification and treatment of such Holder's Artist-Consignor as a General Unsecured Claim.***

        E.     In the event that the Holder of an Online Buyer Claim elects to receive an Allowed General Unsecured Claim in the amount of the purchase amount paid by such Claimant, without post-petition interest, and not to retrieve and collect the property, the Holder of the corresponding Allowed Online Seller Claim that previously sold the property to such Online Buyer shall still receive the treatment provided under Class 3 of the Plan, notwithstanding the continued possession of any property by such Holder of the Allowed Online Seller Claim.

    5.    **Class 5 – Online Buyer Claims.**

        A.     Except to the extent that a Holder of an Online Buyer Claim agrees to a less favorable treatment, each Holder of an Allowed Claim in Class 5 shall receive in full and final satisfaction, settlement, release, and discharge of such Claim, without pre- or post-petition interest, on the earliest of (a) the Effective Date, if such Claim is Allowed as of the Effective Date, (b) the date on which such Claim is Allowed, or as soon thereafter as reasonably practicable, and (c) such other date as may be ordered by the Court or agreed by such Holder and the Trustee or the Plan Administrator, as the case may be: (i) the right to receive the property purchased by such Claimant, provided that such Holder shall be responsible for the payment of all delivery and shipment costs; or (ii) an Allowed General Unsecured Claim in the amount of the purchase amount paid by the Claimant, without pre- or post-petition interest, a Pro Rata Distribution, in Cash, from the proceeds of the Plan Administration Assets in the same percentage as the Distributions to Allowed General

Unsecured Claims under Class 6.  Class 5 Claims are impaired and will be solicited for their acceptances of the Plan.

B.      Each Holder of an Online Buyer Claim will have the ability to elect on the ballot to accept or reject the Plan and to elect whether such Holder prefers the right to receive either (i)  the property purchased by such Claimant, provided that such Holder shall be responsible for the payment of all shipment and delivery costs (notwithstanding whether such Claimant previously paid such amounts to the Debtor); or (ii) an Allowed General Unsecured Claim in the amount of the purchase amount paid by the Claimant, without post-petition interest.

C.      All pre-petition contracts between the Debtor and Online Buyers, including, without limitation, any purchaser contracts that obligate the Debtor to bear the costs of collection, packing, insurance, transit, shipping, import/export and/or delivery of any purchased property to the Online Buyers, are deemed rejected by the Plan.  Any Person or Entity that filed a Proof of Claim, as a buyer, that was involved in a sale which was cancelled as a result of such Person's or Entity's failure to remit the proceeds of the sale or where such Person or Entity initiated a chargeback resulting in the return of the purchase price will not be treated as a creditor under Class 5 or this Plan and will not receive a ballot.  Class 5 Claims are impaired and will be solicited for their acceptances of the Plan.

D.      In the event that the Holder of an Online Buyer Claim elects to receive an Allowed General Unsecured Claim in the amount of the purchase amount paid by such Claimant, without post-petition interest, and not to retrieve and collect the property, the Holder of the corresponding Allowed Artist-Consignor Claim that sold the property to such Online Buyer shall still receive the treatment provided under Class 3 of the Plan, notwithstanding the continued possession of any property by such Holder of the Allowed Artist-Consignor.

6.      **Class 6 – General Unsecured Claims.**

A.      Except to the extent that a Holder of a General Unsecured Claim agrees to a less favorable treatment, each Holder of an Allowed Claim in Class 6 other than FBNK or Holders of Insider Unsecured Claims, shall receive a Pro Rata Distribution, in Cash, on account of such Allowed General Unsecured Claim, in full and final satisfaction, settlement, release, and discharge of such Claim, without pre- or post-petition interest, on the earliest of (a) the Effective Date, if such Claim is Allowed as of the Effective Date, (b) the date on which such Claim is Allowed, or as soon thereafter as reasonably practicable, and (c) such other date as may be ordered by the Court or agreed by such Holder and the Trustee or the Plan Administrator, as the case may be.

B.      Pursuant to the Litigation Settlement and Settlement Agreement under this Plan, the FBNK Claims and the Insider Unsecured Claims shall be Allowed as General Unsecured Claims in Class 6, but shall be subordinated to the rights to Distributions held by all other Allowed General Unsecured Claims until such time, if any, before or as of the closing of the Case, that such Allowed General Unsecured Claims have received Distributions satisfying their Allowed Claims in Class 6 in full.

## ARTICLE V

## TREATMENT OF INTERESTS

On the Effective Date, all Interests in Class 7 shall be discharged, cancelled, released, and extinguished as of the Effective Date, and the holders of such Interests shall neither receive any Distributions nor retain any property under this Plan for or on account of any such Interests. Class 7 Interests are deemed to have rejected the Plan and will not be solicited for their acceptances of the Plan.

## ARTICLE VI

## SETTLEMENTS

1.    **General Settlement of Claims and Interests**.

Unless otherwise set forth in the Plan, pursuant to Section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan, including with respect to issues related to the value of the Debtor's unencumbered property, or relating to the contractual, legal, and subordination rights that a Holder of a Claim or Equity Interest may have with respect to any Claim or Equity Interest, or any Distribution to be made on account of such Claim or Equity Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Equity Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Equity Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Liquidating Trustee may compromise and settle Claims against the Debtors and their Estates and Trust Claims against other Entities.

2.    **Litigation Settlement**.

In consideration of the Litigation Settlement resulting from the Mediation, covering actual and potential disputes between and among the Trustee and the Committee (on behalf of the Estate), on one hand, and the Settling Parties on the other hand, this Plan operates as approval of the Settlement Agreement pursuant to Section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 on the terms of such Litigation Settlement Agreement, including its resolution of the FBNK Lien Avoidance Action, the Fiduciary Breach Actions, the Insider Unsecured Claims and the compromises of other claims and matters covered by that Settlement. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Litigation Settlement, as well as a finding by the Bankruptcy Court that such settlement is in the best interests of the Debtor, the Trustee, the Committee, the Settling Parties, the Estate, and Holders of Claims and Equity Interests, and is fair, equitable, and reasonable.

3. **Settlements of Online Seller Claims and Artist-Consignor Claims, and Resolution of Charity Actions**.

In consideration of actual or potential disputes between and among the Trustee (on behalf of the Estate), on one hand, and the Holders of Online Seller Claims and Artist-Consignor Claims, on the other hand, this Plan operates as a settlement pursuant to Section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 of all matters relating to debtor-creditor and/or principal-agent relationships, if and as applicable, between and among the Debtor, the Debtor's Estate and such Holders including, without limitation, the allowance, treatment and priority of the Online Seller Claims and the Artist-Consignor Claims, and as a resolution of the Charity Actions. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the settlement under this Section of the Plan, as well as a finding by the Bankruptcy Court that such settlement is in the best interests of the Debtor, the Trustee, the Committee, the Estate, and Holders of Claims and Equity Interests, and is fair, equitable, and reasonable.

## ARTICLE VII

## MEANS OF IMPLEMENTATION OF PLAN

1. **Implementation of the Litigation Settlement and Settlement Agreement**. The Mediator shall remain designated to address any questions or disputes arising from, arising out of or related to the Litigation Settlement and the Settlement Agreement, subject to the supervision of the Bankruptcy Court. The Mediator shall have the procedural powers and administrative rights conferred by Local Bankruptcy Rule 9019-1 and General Order M-452 of the Bankruptcy Court date June 28, 2013.

2. **Plan Administration.**

A. **The Plan Administrator**. The Plan Administrator shall be a Person or Entity designated by the Committee in consultation with the Trustee. On the Effective Date, the Plan designated as the Plan Administrator, who shall be vested with possession of the Plan Administration Asset pursuant to the terms of the Confirmation Order and this Plan.

B. **Rights and Powers of the Plan Administrator.** The Plan Administrator shall, in addition to any powers and authority specifically set forth in other provisions of the Disclosure Statement and Plan, be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (ii) establish, as necessary, disbursement accounts for the deposit and distribution of all amounts distributed under the Plan, (iii) make Distributions in accordance with the Plan, (iv) object to Claims, as reasonably appropriate, (v) employ and compensate professionals to represent the Plan Administrator with respect to the Plan Administrator's responsibilities, (vi) assert any of the Debtors' claims, Causes of Action, rights of setoff, or other legal or equitable defenses, and (vii) exercise such other powers as may be vested in the Plan Administrator by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Plan Administrator to be necessary and proper to implement the provisions of

the Plan. The Plan Administrator may take any and all actions deemed reasonably necessary or appropriate to defend against any Claim, including, without limitation, the right to: (a) exercise any and all judgment and discretion with respect to the manner in which to defend against or settle any Claim, including, without limitation, the retention of professionals, experts and consultants; and (b) in accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, and without any further notice to or action, order, or approval of the Bankruptcy Court, compromise and settle Claims against the Debtor or the Estate and/or pursue, compromise and settlement any Claims of the Debtor or the Estate against other Entities.

B. **Administration, Liquidation and Distribution of Proceeds of the Plan Administration Assets**. After the Effective Date, the Plan Administrator shall be empowered to administer, sell, compromise, liquidate and/or abandon the Plan Administration Assets as promptly as practicable in the discretion of the Plan Administrator, consistent with the provisions of the Plan, the Confirmation Order, the Bankruptcy Code and the Bankruptcy Rules. Pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code and shall have all of the rights and powers of a trustee under Sections 706 and 1104 of the Bankruptcy Code, the Plan Administrator shall be treated as the representative of the Estate to commence and prosecute to conclusion, whether by judgment or settlement, all proceedings on Causes of Actions, and to continue previously-commenced adversary proceedings and/or claim objections pending on the Effective Date.

C. **Compensation of the Plan Administrator and Professionals, and Final Distribution of Any Remaining Proceeds of Plan Administration Assets**. The Plan Administrator shall be entitled to reasonable compensation for services rendered pursuant to the Plan, at the Plan Administrator's current standard hourly rate as of the Effective Date, without further order and subject to a right periodic increase in the ordinary course, and reimbursement of actual, necessary costs and expenses. The reasonable fees and expenses incurred by the Plan Administrator on or after the Effective Date (including, without limitation, reasonable attorneys' and professional fees and expenses) shall be paid from the proceeds of the Plan Administration Assets including, without limitation, recoveries from any Causes of Action that the Plan Administrator may pursue or the proceeds of assets that the Plan Administrator may sell for value. At the completion of the administration and liquidation of the Plan Administration Assets, any proceeds held by the Plan Administrator at the closing of the Case shall be distributed Pro Rata to Holders of Class 3 Online Seller Claims, Class 4 Artist-Consignor Claims and Class 6 General Unsecured Claims.

D. **Engagement and Compensation of Professionals for the Plan Administrator**. After the Effect Date, the Plan Administrator may employ professionals to assist the Plan Administrator in fulfilling his/her/its duties.

3. **Cancellation of Securities and Agreements.**

On the Effective Date, except as otherwise specifically provided for in this Plan: (a) the obligations of the Debtor under any certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtor giving rise to any Claim or Interest (except such certificates, notes, or other instruments or documents evidencing

indebtedness or obligations of the Debtor that are specifically reinstated or reissued pursuant to this Plan), shall be cancelled as to the Debtor, and the Debtor and the Trustee shall not have any continuing obligations thereunder; and (b) the obligations of the Debtor pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or certificate of incorporation or similar documents governing certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtor (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligations of the Debtor that are specifically reinstated or reissued pursuant to this Plan) shall be released; **provided, however**, notwithstanding confirmation of this Plan or the occurrence of the Effective Date, any agreement that governs the rights of the Holder of an Allowed Claim shall continue in effect solely for purposes of allowing such Holders to receive Distributions under this Plan.

## ARTICLE VIII

## PROVISIONS GOVERNING DISTRIBUTIONS

1.    **Distributions in Respect of Allowed Claims and Interests**.  Except as otherwise provided herein, Distributions with respect to Allowed Claims and Interests shall be made by the Plan Administrator as soon as reasonably practicable after the Effective Date in such officer's discretion, consistent with the provisions of the Plan and the Confirmation Order.

2.    **Timing and Calculation of Amounts to Be Distributed**.  Unless otherwise provided in the Plan, on the Effective Date, or as soon as reasonably practicable thereafter (or if a Claim or Interest is not an Allowed Claim or Interest on the Effective Date, on the date that such Claim becomes an Allowed Claim or Interest), each Holder of an Allowed Claim and Interest shall receive the full amount of the Distributions that the Plan provides for Allowed Claims and Interests in each applicable Class and in the manner provided in the Plan.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims or Interests, distributions on account of any such Disputed Claims or Interests shall be made pursuant to the provisions set forth in Article VII of the Plan.  Except as otherwise provided in the Plan, Holders of Claims and Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.  The Plan Administrator shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the Distribution Record Date.

3.    **Distribution Agent**.  Except as otherwise provided in the Plan, all distributions under the Plan shall be made by the Distribution Agent on the Effective Date or as soon as reasonably practicable thereafter.  The Distribution Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

4.    **Rights and Powers of Distribution Agent**.

A.    **Powers of the Distribution Agent**.  The Distribution Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all Distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

B.    **Expenses Incurred On or After the Effective Date**.  Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Distribution Agent on or after the Effective Date (including taxes) and any reasonable compensation and out-of-pocket expense reimbursement claims (including reasonable, actual, and documented attorney and/or other professional fees and expenses) made by the Distribution Agent shall be paid in Cash by the Estate.

C.    **Delivery of Distributions, in General**.  Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be made to Holders of record as of the Distribution Record Date by the Distribution Agent, as appropriate:  (a) to the signatory set forth on any Proof of Claim or Proof of Interest filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim or Proof of Interest is filed or if the Debtor has not been notified in writing of a change of address); (b) at the addresses set forth in any written notices of address changes delivered to the Distribution Agent, as appropriate, after the date of any related Proof of Claim or Proof of Interest; or (c) on any counsel that has appeared in the Case on the Holder's behalf.  Subject to this Article VII, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.  The Trustee and the Distribution Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan except for fraud, gross negligence, or willful misconduct.

D.    **Manner of Payment**.  At the option of the Distribution Agent, any Cash payment to be made under the Plan may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

5.    **Undeliverable Distributions and Unclaimed Property**.  In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Distribution Agent has determined the then current address of such Holder, at which time such distribution shall be made to such Holder without interest; provided, however, that such distributions shall be deemed unclaimed property under Section 347(b) of the Bankruptcy Code at the expiration of six months from the later of (a) the Effective Date and (b) the date of the Distribution.  After such date, all unclaimed property or interests in property shall revert to the Estate automatically and without need of a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state laws of escheat, abandoned or unclaimed property to the contrary) for further Distribution by the Plan Administrator, and the

Claim of any Holder to such property or interest in property shall be discharged of and forever barred. The Plan Administrator shall have authority to donate any remaining funds to an art-related charity instead of distributing to Holders of Allowed Claims if, in the discretion of the Plan Administrator, the administration and distribution of such remaining funds would be burdensome and not cost-effective.

6. **Minimum Distributions**.  It is the intention of the Trustee and the Committee that Distributions should be made to all Holders of Allowed Claims under the Plan, except where impractical based on small claim amounts and resulting small distribution amounts. Accordingly, and notwithstanding any other provision of the Plan to the contrary: (a) the Distribution Agent shall not be required to make Distributions or payments of fractions of dollars, and whenever any Distribution of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole dollar (up or down) with half dollars being rounded down and (b) the Distribution Agent, in his or her discretion, may determine not to make a Distribution on account of any Allowed Claim  Holders of Allowed Claims for which such distribution would be unduly burdensome and costly to make, in which case such Distribution shall revert to the Plan Administration Assets for further administration pursuant to the Plan.

7. **Compliance Matters**.  In connection with the Plan, to the extent applicable, the Plan Administrator and the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.

8. **No Post-Petition or Default Interest on Claims**.  Unless otherwise specifically provided for in the Plan or the Confirmation Order, and notwithstanding any other documents that may govern or purport to govern the Debtor's prepetition indebtedness to the contrary, (1) post-petition and/or default interest shall not accrue or be paid on any Claims, and (2) no Holder of a Claim shall be entitled to:  (a) interest accruing on or after the Petition Date on any such Claim; or (b) interest at the contract default rate, as applicable.

9. **Allocation Between Principal and Accrued Interest**.  Except as otherwise provided in the Plan, the aggregate consideration paid to Holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to the interest, if any, on such Allowed Claim accrued through the Petition Date.

10. **Setoff and Recoupment**.  Unless otherwise provided in the Plan or the Confirmation Order, the Plan Administrator, pursuant to the Bankruptcy Code (including Bankruptcy Code Section 553), applicable non-bankruptcy law, or as may be agreed to by the

Holder of a Claim, may set off against or recoup any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any claims, rights, and Causes of Action of any nature that the Trustee or Plan Administrator, as applicable, may hold against the Holder of such Allowed Claim, to the extent such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled as of the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Trustee or the Plan Administrator of any such claims, rights, and Causes of Action that the Trustee or Plan Administrator may possess against such Holder.  In no event shall any Holder of Claims be entitled to set off or recoup any such Claim against any claim, right, or Cause of Action of the Trustee or Plan Administrator, as applicable, unless such Holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff or recoupment on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff or recoupment pursuant to Section 553 of the Bankruptcy Code or otherwise.

11.     **Applicability of Insurance Policies**.  Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of an applicable Insurance Policy.  Unless otherwise provided in the Plan, the Plan shall not constitute and shall not be deemed a waiver of any Cause of Action that the Debtor, the Trustee, the Plan Administrator, or any Person or Entity may hold against any other Person or Entity, including insurers under any policies of insurance, nor shall anything contained in the Plan constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE IX

## RESOLUTION OF CLAIMS OBJECTIONS

1.     **Objections to Claims and Interests**.

From and after the Effective Date, the Plan Administrator shall have the exclusive right to object to any and all Claims and Interests.  Any objections to Claims and Interests shall be filed and served no later than thirty (30) days following the Effective Date or such later date as may be established by the Court after notice and hearing.

2.     **Settlement of Disputed Claims and Interests**.

Notwithstanding the requirements that may be imposed by Bankruptcy Rule 9019, from and after the Effective Date, the Plan Administrator shall have the exclusive authority to settle or compromise any objections or proceedings relating to the allowance of Claims or Interests on its behalf as and to the extent deemed prudent and reasonable without further review or approval of the Court and without the need to file a formal objection.  From and after the Confirmation Date, all objections to Claims or Interests shall be litigated to a Final Order except to the extent that the

Plan Administrator elects to withdraw any such objection or the Plan Administrator and the claimant or interest holder elect to compromise, settle, or otherwise resolve any such objection, in which event they may settle, compromise, or otherwise resolve any Disputed Claim or Disputed Interests without approval of the Bankruptcy Court.

3.    **No Distributions Pending Allowance.**

Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or Distribution provided hereunder shall be made on account of the disputed portion of such Claim until the disputed portion of such Claim becomes an Allowed Claim.  No Distribution shall be made on account of any Disputed Interest unless and until such Disputed Interest becomes an Allowed Interest.

# ARTICLE X

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

1.    **Assumption and Rejection of Executory Contracts and Unexpired Leases**.

Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with this Plan, the Plan shall serve as a motion under Sections 365 and 1123(b)(2) of the Bankruptcy Code, and as of the Effective Date, all executory contracts and unexpired leases governed by Section 365 of the Bankruptcy Code to which the Debtor is a party, including, without limitation, all purchaser contracts between the Debtor and Online Buyers entered into prior to the Petition Date, are hereby rejected, except for any executory contract or unexpired lease that (1) previously has been assumed or rejected by the Debtor or the Trustee in the Case; (2) previously expired or terminated pursuant to its own terms; (3) is specifically identified on the Schedule of Rejected Contracts and Leases to be included in the Plan Supplement (if any); or (4) is the subject of a separate motion to assume or reject such executory contract or unexpired lease filed by the Trustee under Section 365 of the Bankruptcy Code prior to the Effective Date.

2.    **Rejection Damage Claims.**

Any and all Claims for damages arising from the rejection of an executory contract or unexpired lease must be filed with the Court in accordance with the terms of the Final Order authorizing such rejection, but in no event later than the first Business Day following thirty (30) calendar days after the later of the Effective Date or the date on which the Court enters an order authorizing the rejection of the contract giving rise to any such Claim, unless a different time has been established by the Court.  In the case of executory contracts or unexpired leases rejected by the Plan, including in the Schedule of Rejected Contracts and Leases, the Confirmation Order shall serve as the Final Order authorizing rejection of such executory contracts and unexpired leases. Any Claims for damages arising from the rejection of an executory contract or unexpired lease that are not filed within such time period will be automatically disallowed and forever barred from assertion against the Debtor and its Estate.  All Allowed Claims arising from the rejection of

executory contracts or unexpired leases shall be treated as Class 6 General Unsecured Claims, except that the rejection of an contracts between the Debtor and any Online Sellers, Artist-Consignors and Online Buyers shall be treated as provided for Classes 4 and 5 under the Plan.

## ARTICLE XI

## EFFECT OF CONFIRMATION OF PLAN

1.      **Termination of Corporate Existence; Dissolution.**

The Debtor will be deemed liquidated, and its corporate existence shall cease on and as of the Effective Date.  The Plan Administrator shall dissolve the Debtor and shall complete the liquidation and winding-up of its affairs, in accordance with the Bankruptcy Code and applicable non-bankruptcy law.

2.      **Vesting of Assets.**

On the Effective Date, all Assets and property in the Estate including all Avoidance Actions and Causes of Action, with the exception of the Segregated Seller Fund, shall vest in the Plan Administrator, free and clear of all Liens, Claims, charges, or other encumbrances of any nature, except to the extent otherwise provided by this Plan.

3.      **No Discharge of the Debtor.**

Pursuant to Section 1141(d) of the Bankruptcy Code, because the Debtor will be liquidated under this Plan, the Plan does not operate as a discharge of Claims and Interests against the Debtor.

4.      **Releases.**

A.      **Releases by the Debtor, the Trustee, the Estate and the Committee**.  To the maximum extent permitted by applicable law, pursuant to Section 1123(b)(3) of the Bankruptcy Code, for good and valuable consideration, effective as of the Effective Date, the Debtor, the Trustee for herself and on behalf of the Estate and any Person or Entity claiming through, on behalf of, or for the benefit of the Debtor, the Trustee, the Estate, the Committee, and the members of the Committee shall be deemed to have released and discharged and be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged all of the Released Parties of and from any and all Claims or Causes of Action (including, without limitation, any Claims or Causes of Action asserted or that could have been asserted on behalf of the Debtor derivatively under applicable law by the Debtor's current and former shareholders and creditors against the Debtor's current and former officers and directors for breach of duties of care, loyalty and good faith) existing as of the Effective Date, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, including, without limitation, claims arising in, related to or asserted in the FBNK Lien Avoidance Action, the FBNK Breach Actions, the Avoidance Actions or in the Chapter 11 case that such Person or Entity would have been legally entitled to assert (whether individually or collectively), based on, relating to, or arising

28

from, in whole or in part, directly or indirectly, in any manner whatsoever, the Debtor, the Trustee, and the Committee the assets, liabilities, operations or business of the Debtor, the Case, purchase, sale, cancellation or issue of any security of the Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of the Claims and Interests before or during the Case, the Disclosure Statement, the Plan, the Plan Supplement (if any) or any related agreements, instruments, or other documents executed to implement and/or consummate the Plan; **provided further that** this release shall not apply to post-Effective Date obligations arising under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement (if any)) executed to implement and/or consummate the Plan, **and provided further that** this release shall not limit the liability, if any, of any professionals to their clients pursuant to applicable law.

B.   **Releases by Creditors and Others to the Debtor, the Trustee, the Estate, the Committee and the Released Parties**.  To the maximum extent permitted by applicable law, as of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce this Plan, the Plan Supplement (if any), and the Settlement Agreement, for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the liquidation of the Debtor and the implementation of the Plan and Settlement Agreement, and except as otherwise provided in this Plan, in the Confirmation Order, or the Settlement Agreement, the Released Parties, are deemed forever released and discharged by the (i) holders of all Claims who vote to accept this Plan, (ii) holders of Claims or Interests that are unimpaired under this Plan, (iii) holders of Claims whose vote to accept or reject this Plan is solicited but who do not vote either to accept or to reject this Plan, (iv) subject to the last sentence of this Section XI.4.B that holders of Claims who vote to reject this Plan but do not opt out of granting the releases set forth herein (a "Release Opt-Out"), (v) the Trustee, (vi) the Committee, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Released and Settled Claims, losses, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtor, and any claims for breach of any fiduciary duty (or any similar duty), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Case, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the Settlement Agreement, the restructuring of any Claim or Interest before or during the Case, the negotiation, formulation, or preparation of the Disclosure Statement, this Plan and related agreements, instruments, and other documents (including the Plan Supplement (if any)s and the Settlement Agreement), the solicitation of votes with respect to this Plan, any membership in (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Committee, the structuring, negotiation, performance, or conducting of, participation in, or entry into, the Plan and the Settlement Agreement, including by any member of the Committee, or any other act or omission, including, without limitation, claims arising in, related to or asserted in the FBNK Lien Avoidance Action, the FBNK Breach Actions, the Avoidance Actions or in the

Chapter 11 case. For the avoidance of doubt, notwithstanding the foregoing, a Release Opt-Out by a holder of Claims who votes to reject the Plan (i) solely means that such holder is electing to not release the Released Parties other than the Debtor, the Trustee, the Estate and the Committee and (ii) shall not impair, limit or effect in any way the exculpation of the Exculpated Estate Parties as set forth in Section XI.5 of this Plan.

        C.   **Confirmation Order Operates As Approval of Releases**. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by the Debtor, the Chapter 11 Trustee, the Estate, the Committee and the Debtor's creditors described in Sections XI.4.A-B of the Plan, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Court's finding that such release is: (1) given in exchange for good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims and Causes of Action released by such release; (3) in the best interests of the Debtor and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for objection and a hearing; and (6) a bar to the Debtor, the Chapter 11 Trustee, the Estate, the Committee and the Debtor's creditors from asserting any Claim or Cause of Action released pursuant to such release.

      5.   **Exculpation**.

      Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, to the maximum extent permitted by applicable law, each Exculpated Estate Party shall not have or incur any liability for any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, remedy, loss, and liability for any claim in connection with or arising out of any acts or omissions of such Exculpated Party taken or not taken in connection with the filing of the Case, and/or taken or not taken between the date of appointment of the Trustee by the Bankruptcy Court and the Effective Date in connection with the administration of the Case, the negotiation and filing of the Plan, the Disclosure Statement, the Plan Supplement (if any), any exhibits, attachments, or amendments to the Plan, Disclosure Statement or Plan Supplement (if any), or any document implementing or consummating the Plan, the filing of the Case, the settlement of Claims, the renegotiation of executory contracts and leases, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or property to be distributed under the Plan, or the transactions and occurrences in furtherance of any of the foregoing, except for any willful misconduct, gross negligence or intentional fraud as determined by a Final Order to have been committed by such Exculpated Party with respect to any of his/her/its obligations under or in connection with the Plan and the transactions contemplated by the Plan. The Exculpated Parties in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and the transactions contemplated by the Plan and shall neither have nor incur any liabilities for acting or forbearing from acting pursuant to the advice of counsel. Nothing contained herein shall relieve any person from their duties and responsibilities to perform under the Plan, including to make the payments required by the terms of the Plan.

      6.   **General Injunction**.

The discharge, satisfactions, releases, settlements, and exculpation provisions in this Plan shall act as a permanent injunction against any Person or Entity commencing or continuing any action, lawsuit, proceeding, employment of process, or act to collect, offset, or recover any Claim, Interest, or Cause of Action expressly preserved, satisfied, released, or discharged under this Plan to the fullest extent authorized or provided by the Bankruptcy Code and applicable law, including to the extent provided for or authorized by Sections 524 and/or 1141 of the Bankruptcy Code.

7. **Injunction Relating to Online Seller Claims, Artist-Consignor Claims and Online Buyer Claims**.

**From and after the Effective Date:**

A. **Each Holder of an Allowed Online Seller Claim, and Allowed Artist-Consignor Claim and/or Allowed Online Buyer Claim is permanently restrained, enjoined and prohibited from pursuing, commencing, continuing or otherwise seeking to enforce or collect such Holder's Allowed Online Seller Claim, Allowed Artist-Consignor Claim and/or Allowed Online Buyer Claim, in whole or in part, from the Debtor, the Trustee, the Estate, its successors, affiliates, officers, directors, employees, agents or professionals, or any Person or Entity (if any) holding a Claim against the Debtor or its Estate or otherwise entitled to indemnification from the Debtor or its Estate, except that this injunction shall not apply to such Holder's rights against: (i) the Plan Administrator and the Segregated Seller Fund to the extent of the ratable Distributions which such Holder is entitled to receive from the Segregated Seller Fund on account of such Allowed Claim, and (ii) the Plan Administrator to the extent of the Distributions which such Holder is entitled to receive on account of such Allowed Claim.**

B. **All Persons and Entities holding of Allowed Buyer Claims (and all Persons and Entities claimed under or through such Holders) are enjoined from asserting against the Debtor, the Estate, Online Sellers and Artist-Consignors any claims or causes of action of any nature arising in, arising out of or related to any art works that were consigned to the Debtor, and such Persons or Entities may not prosecute or proceed on such claims or causes of action in any manner against the Debtor, the Estate, the Online Sellers and the Artist-Consignors in any state, federal, or foreign court, administrative agency or tribunal, or arbitral forum.**

8. **Term of Bankruptcy Injunctions or Stays**.

Unless otherwise provided in the Plan or Confirmation Order, all injunctions or stays provided for in the Case under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Case is closed. All injunctions or stays contained in Article XI of this Plan or in the Confirmation Order shall remain in full force and effect in accordance with their terms on and after the Effective Date and shall survive the closing of the Case.

9. **Discharge of Trustee**.

On the Effective Date, the Trustee shall be relieved of her duties and obligations to the Estate under the Bankruptcy Code, Bankruptcy Rules and Local Bankruptcy Rules, including, but not limited to, any obligation to file a final report pursuant to Local Bankruptcy Rule 3022-1, or otherwise and the Trustee's bond shall be cancelled and any collateral exonerated; <u>provided, however</u>, the Trustee shall have continuing standing solely for the purpose of prosecuting objections to applications for Allowance of Professional Fee Claims.

10.    **Dissolution of Committee.**

As of the Effective Date, the Committee shall dissolve, and its members shall be released and discharged from all further authority, duties, responsibilities, and obligations relating to and arising from the Case; <u>provided, however</u>, the Committee shall continue to exist solely for the purpose of prosecuting objections to applications for Allowance of Professional Fee Claims.

11.    **Release of Liens**.

On the Effective Date all mortgages, deeds of trust, liens, pledges or other security interests against the property of the Debtor's Estate shall be fully released and discharged, and all of the right, title and interest of any Holder of such mortgages, deeds of trust, liens, pledges or other security interests shall revert to the Estate.

# ARTICLE XII

# EFFECTIVENESS OF PLAN

1.    **Conditions Precedent to Confirmation.**

It shall be a condition to confirmation of this Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Section XII.C of this Plan:

A.    This Plan, the Plan Supplement (if any), and all of the schedules, documents, and exhibits contained therein shall have been filed in form and substance reasonably acceptable to the Trustee and the Committee, which shall not be unreasonably withheld.

2.    **Conditions Precedent to the Effective Date**

It shall be a condition to the Effective Date of this Plan that the following provisions, terms, and conditions are approved or waived pursuant to the provisions of Article XI.3 of the Plan:

A.    The Bankruptcy Court shall have entered the Confirmation Order in form and substance acceptable to the Trustee and the Committee, and the Confirmation Order shall have become a Final Order.

        B.     All requisite governmental and regulatory approvals, if any, shall have been obtained or waived.

        C.     All actions, documents, and agreements necessary to implement and consummate this Plan shall have been affected or executed and binding on all parties thereto.

3.     **Waiver of Conditions.**

Any conditions to confirmation of this Plan and to the Effective Date set forth in this Article XII may be waived in writing by the Trustee and the Committee.

4.     **Effective Date and Substantial Consummation.**

The Effective Date shall occur on the date selected by the Trustee and the Committee that is no later than fifteen (15) Business Days after all conditions to effectiveness of the Plan are either (a) satisfied, or (b) waived by the Trustee, <u>provided that</u> the Effective Date shall be no earlier than the date set forth in Article I.35 of the Plan.  On the Effective Date, this Plan shall be deemed to be substantially consummated under Sections 1101 and 1127(b) of the Bankruptcy Code.

5.     **Effect of Failure of Conditions.**

In the event that the Effective Date does not occur:  (1) the Confirmation Order shall be vacated; (2) no Distributions under this Plan shall be made; (3) the Settlement Agreement shall be null and void and of no force and effect; (4) the Debtor, the Trustee, the Estate, the Committee, the Settlers and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; and (5) the Debtor's obligations with respect to Claims and Interests shall remain unchanged, and nothing contained in this Plan shall (a) constitute or be deemed a waiver or release of any Claims against or any Interests in the Debtor or any other Person or Entity, (b) prejudice in any manner any right, remedy, or claim of the Debtor or any Person or Entity in any further proceedings involving the Debtor or otherwise, or (c) be deemed an admission against interest by the Debtor or any other Person or Entity.

6.     **Vacatur of Confirmation Order**.

If a Final Order denying confirmation of this Plan is entered, or if the Confirmation Order is vacated, then this Plan shall be null and void in all respects, and nothing contained in this Plan shall (1) constitute a waiver or release of any Claims against or Interests in the Debtor, (2) prejudice in any manner the rights of the holder of any Claim against or Interest in the Debtor, (3) prejudice in any manner any right, remedy, or claims of the Trustee, the Estate and/or the Committee, or (4) prejudice the rights of the Settlers.

7.     **Revocation, Withdrawal, Modification or Non-Consummation**.

The Trustee and the Committee reserve the right to revoke, withdraw, amend, or modify this Plan at any time prior to the Confirmation, with the prior written consent of the Committee.

If the Trustee revokes or withdraws this Plan, the Confirmation Order is not entered, or the Effective Date does not occur, (1) this Plan shall be null and void in all respects, (2) any settlement or compromise embodied in this Plan (including (i) the treating, fixing or limiting the amount of any Claim or Class of Claims and (ii) the Settlement Agreement), assumption or rejection of executory contracts or leases effected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void, and (3) nothing contained in this Plan, and no acts taken in preparation for consummation of this Plan, shall (a) constitute or be deemed a waiver or release of any Claims by or against or any Interests in the Debtor or any other Person, (b) prejudice in any manner any right, remedy, or claim of the Debtor or any other Person in any further proceeding involving the Debtor or otherwise, or (c) constitute an admission against interest by the Debtor or any other Person.

8.      **Default**.

If any Person or Entity fails or refuses to perform obligations imposed upon them pursuant to this Plan, then any other Person or Entity damaged by such failure or refusal shall have and retain the following rights and remedies:

A.      To seek to compel specific performance of this Plan,

B.      To seek to convert this case to a case under chapter 7 of the Bankruptcy Code, or to dismiss this case, and

C.      To seek an award of any other remedy to which such Person or Entity may be entitled under applicable law.

## ARTICLE XIII

## **RETENTION OF JURISDICTION**

The Court shall have exclusive jurisdiction to the fullest extent provided by applicable law over all matters arising out of, and related to, the Case and this Plan pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

A.      To hear and determine motions for the assumption or rejection of executory contracts or unexpired leases pending on the Confirmation Date, and the allowance of Claims resulting therefrom;

B.      To determine any other applications, adversary proceedings, and contested matters pending on the Effective Date, including without limitation, the Settlement Agreement;

C.      To ensure that Distributions to holders of Claims are accomplished as provided herein;

D.     To resolve disputes as to the ownership of any Claim or Interest;

E.     To hear and determine timely objections to Claims;

F.     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

G.     To issue such orders as are appropriate in aid of execution of this Plan, to the extent authorized by Section 1142 of the Bankruptcy Code;

H.     To consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Court, including the Confirmation Order;

I.     To hear and determine all applications for compensation and reimbursement of expenses of Professionals under Sections 328, 330, 331, and 503(b) of the Bankruptcy Code;

J.     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan;

K.     To hear and determine any issue for which this Plan requires a Final Order of the Court;

L.     To hear and determine matters concerning state, local, and federal taxes m accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

M.     To hear and determine any Causes of Action preserved under this Plan and solely to the extent arising under Bankruptcy Code Sections 544, 547, 548, 549, 550, 551, and 553;

N.     To hear and determine any matter regarding the existence, nature, and scope of the releases, injunctions and exculpations provided in this Plan; and

O.     To enter a final decree closing the Case.

If the Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Case, then Article XIII of this Plan shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

# ARTICLE XIV

## MISCELLANEOUS PROVISIONS

1.      **Payment of Statutory Fees**.

The Trustee (until the Effective Date) and the Plan Administrator (after the Effective Date) will be responsible for timely payment of quarterly fees incurred pursuant to 28 U.S.C. 1930(a)(6) until its case is closed or dismissed.  After confirmation, the Plan Administrator will serve the United States Trustee with a monthly disbursement report for each month (or portion thereof) that the case remains open.  The monthly report shall be due fifteen days after the end of the calendar month.  The monthly financial report shall include the following:

> (1) a statement of all disbursements made during the month, whether or not pursuant to the Plan;

> (2) a summary, by class, of amounts distributed or property transferred to each recipient under the Plan, and an explanation of the failure to make any distributions or transfers of property under the Plan, if any;

> (3) a description of any other factors which may materially affect the Debtor's ability to complete its obligations under the Plan; and

> (4) an estimated date when an application for final decree will be filed with the court (in the case of the final monthly report, the date the decree was filed).

2.      **Payment of Plan Confirmation Expenses**.

Except for fees and expenses for which prior court approval is required for payment (including, without limitation, claims for substantial contribution pursuant to Sections 503(b)(3) and 503(b)(4) of the Bankruptcy Code, or other fees and expenses under Section 1129(a)(4) of the Bankruptcy Code), the Trustee or (after the Effective Date) the Plan Administrator, as applicable, may pay all reasonable third party expenses and costs of confirmation and consummation of the Plan without further notice.

3.      **Modification of this Plan**.

Subject to the limitations contained elsewhere in this Plan:  (1) prior to the entry of the Confirmation Order, the Trustee and the Committee reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to jointly amend, modify, revoke, or withdraw this Plan, including amendments or modifications to satisfy Section 1129(b) of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Plan Administrator may, upon order of the Court, amend or modify this Plan, in accordance with Section 1127(b) of the Bankruptcy Code, provided that any modification of the Plan shall be consistent with the terms and provisions of the Settlement Agreement.

4.      **Immediate Effect of Confirmation Order**.

Notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtor and any and all Holders of Claims or Interests (regardless of whether such Claims or Interests are deemed to have accepted or not accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor. The stay of enforceability of a confirmation order pursuant to Bankruptcy Rule 3020(e) shall not apply to Confirmation Order, which shall be enforceable according to its terms immediately upon entry absent further order of the Court.

5.      **No Retiree Benefit Plan Payments**.

The Trustee is not obligated pursuant to Section 1129(a)(13) of the Bankruptcy Code to pay any "retiree benefits" as that term is defined in Section 1114(a) of the Bankruptcy Code.

6.      **Further Actions; Implementation**.

Until the Plan Effective Date, and to the limited extent necessary to complete reports after that time for periods through and including the Plan Effective Date, the Trustee shall be authorized to execute, deliver, file or record such documents, contracts, instruments, releases and other agreements and take such other or further actions as may be necessary to effectuate or further evidence the terms and conditions of this Plan. From and after the Effective Date, the Plan Administrator shall be authorized to take all steps and execute all documents necessary to effectuate the provisions contained in this Plan.

7.      **Severability**.

If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Court to be invalid, void, or unenforceable, the Court, at the joint request of the Trustee and the Committee, or at the request of the Plan Administrator, as the case may be, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan, such that it may not be deleted or modified without the consent of the Trustee or (after the Effective Date) the Plan Administrator; and (3) non-severable and mutually dependent.

8.      **Final Decree and Closure of the Case**.

After the occurrence of the Effective Date, the Plan Administrator may file a motion for a final decree closing the Case at such time as the Plan Administrator determines to be reasonable and appropriate.

9.     **Conflicts in Terms of Documents**.

The terms of this Plan shall govern in the event of any inconsistency with the summaries of this Plan set forth in the Disclosure Statement.  In the event of any inconsistency or ambiguity between and among the terms of this Plan, the Disclosure Statement, and the Confirmation Order, the terms of the Confirmation Order shall govern and control.

10.     **Reservation of Rights**.  Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court has entered the Confirmation Order.  None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement (if any) shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

11.     **Successors and Assigns**  The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiary, or guardian, if any, of each Entity.

12.     **Service of Documents**  All notices, requests, and demands to or upon the Debtor to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Trustee:

PRYOR CASHMAN LLP
Attn:   Richard Levy, Jr., Esq.
           Conrad K. Chiu, Esq.
7 Times Square
New York, New York 10036-6569
Tel:  (212) 421-4100
Fax:  (212) 326-0806
rlevy@pryorcashman.com
cchiu@pryorcashman.com


If to the Committee:

THE LAW OFFICES OF RICHARD J. CORBI PLLC
Attn:   Richard J. Corbi, Esq.

1501 Broadway, 12th Floor
New York, New York 10036
Tel: (646) 571-2033
rcorbi@corbilaw.com

<u>If to the Plan Administrator</u>:

[TO BE PROVIDED AT OR BEFORE THE CONFIRMATION HEARING AND INCLUDED IN NOTICE OF THE OCCURRENCE OF THE EFFECTIVE DATE OF THE PLAN.]

After the Effective Date, the Plan Administrator shall have the authority to send a notice to Persons and Entities that continue to receive documents pursuant to Bankruptcy Rule 2002, which shall require each such Person or Entity to file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Plan Administrator is authorized to limit the list of Persons and Entities receiving documents pursuant to Bankruptcy Rule 2002 to those who have filed such renewed requests.

13. **Entire Agreement.** Except as otherwise indicated, the Plan (including, for the avoidance of doubt, the Plan Supplement (if any)) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

14. **Plan Supplement Exhibits.** All exhibits and documents included in the Plan Supplement (if any) are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are filed, copies of such exhibits and documents shall be made available upon written request to the Trustee's or the Committee's counsel at the addresses above or by downloading such exhibits and documents from the Bankruptcy Court's website at https://www.nysb.uscourts.gov/ (fee required for copies). Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement (if any) is inconsistent with the terms of any part of the Plan that does not constitute the Plan Supplement (if any), the Plan Supplement (if any) shall control. The documents considered in the Plan Supplement (if any) are an integral part of the Plan and shall be deemed approved by the Bankruptcy Court pursuant to the Confirmation Order.

15. **Non-Severability.** Except as set forth in Section XIV.7 above, the provisions of the Plan, including its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan, such that it may not be deleted or modified without the joint consent of the Trustee and the Committee or (after the Effective Date) the Plan Administrator; and (3) non-severable and mutually dependent.

16.     **<u>Votes Solicited in Good Faith.</u>**  Upon entry of the Confirmation Order, the Trustee and the Committee will be deemed to have solicited acceptances of on the Plan in good faith and in compliance with the Bankruptcy Code.

17.     **<u>Waiver or Estoppel</u>**  Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtor or the Trustee, or their respective counsel, or any other Person or Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court prior to the Confirmation Date.

*[SIGNATURES APPEAR ON THE FOLLOWING PAGES]*

Dated:  August 25, 2021

_____*DRAFT*_____
**MEGAN E. NOH, Plan Proponent,**
*solely in her capacity as the Trustee of P8H, Inc.,*
*d/b/a Paddle 8, Debtor*


- and -


**OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS OF P8H, INC., d/b/a PADDLE 8,**
**Plan Proponent**

By:_____*DRAFT*_____
Ghislain Pascal of The Little Black Gallery,
*solely in his capacity as Chairperson of the Official*
*Committee of Unsecured Creditors of P8H, Inc.,*
*d/b/a Paddle 8, Debtor*

*Approved as to form and*
*substance, and filed by:*

**PRYOR CASHMAN LLP**

By:___/s/ Richard Levy, Jr.___
          Richard Levy, Jr.
          Conrad K. Chiu
7 Times Square
New York, NY 10036
Tel: (212) 421-4100
Fax: (212) 326-0806
rlevy@pryorcashman.com
cchiu@pryorcashman.com

*Attorneys for Megan E. Noh, solely in*
*her capacity as the Trustee of P8H, Inc.,*
*d/b/a Paddle 8, Debtor*

- and -

**THE LAW OFFICES OF RICHARD J. CORBI PLLC**

By: __/s/ Richard J. Corbi____
      Richard J. Corbi
1501 Broadway, 12th Floor
New York, New York 10036
Tel:  (646) 571-2033
rcorbi@corbilaw.com

*Attorneys for the Official Committee*
*of Unsecured Creditors of P8H, Inc.,*
*d/b/a Paddle 8, Debtor*