**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X

In re:

**Chapter 11**

**P8H, INC., d/b/a PADDLE 8,**

**Case No. 20-10809 (DSJ)**

                   **Debtor.**

----------------------------------------------------------------X

**PROPOSED**
**DISCLOSURE STATEMENT TO ACCOMPANY**
**CHAPTER 11 PLAN OFLIQUIDATION OF THE DEBTOR**
**JOINTLY PROPOSED BY THE CHAPTER 11 TRUSTEE AND**
**AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

---

**THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT.**

---

**PRYOR CASHMAN LLP**
Richard Levy, Jr.
Conrad K. Chiu
7 Times Square
New York, NY 10036
Tel: (212) 421-4100
rlevy@pryorcashman.com
cchiu@pryorcashman.com

*Attorneys for Megan E. Noh, solely in her capacity as Chapter 11 Trustee of P8H, Inc., d/b/a Paddle 8, Debtor*

**THE LAW OFFICES OF**
**RICHARD J. CORBI PLLC**
Richard J. Corbi
1501 Broadway, 12th Floor
New York, New York 10036
Tel: (646) 571-2033
rcorbi@corbilaw.com

*Attorneys for the Official Committee of Unsecured Creditors of P8H, Inc., d/b/a Paddle 8, Debtor*

August 25, 2021

## **<u>TABLE OF CONTENTS</u>**

[to be added prior to service of solicitation materials]

# I
# INTRODUCTION

This Disclosure Statement ("Disclosure Statement") is being filed in accordance with Section 1125 of title 11 of the United States Code ("Bankruptcy Code") by Megan E. Noh, solely in her capacity as Chapter 11 Trustee (the "Trustee") of P8H, Inc., d/b/a Paddle 8 (the "Debtor" or "P8H"), and not in her individual capacity, and the Official Committee of Unsecured Creditors ("Committee") appointed in the chapter 11 case (the "Case") of the Debtor to provide information to all known creditors about the accompanying *Plan of Liquidation of the Debtor Jointly Proposed By the Chapter 11 Trustee and Official Committee of Unsecured Creditors*, dated August [16], 2021 [ECF No. ___] (as it may be further amended or supplemented, the "Plan").  The purpose of the Disclosure Statement is to provide information of a kind and in detail sufficient to enable holders of claims in certain classes designated under the Plan as impaired to make an informed judgment regarding whether to accept or reject the Plan and to inform holders of claims in unimpaired classes of their treatment under the Plan.  The Trustee and Committee urge parties in interest to read this Disclosure Statement and the Plan carefully prior to casting votes for or against the Plan.

Except as otherwise defined, capitalized terms have the meanings ascribed to them in the Plan.

As explained below, the Trustee and the Committee will solicit acceptances for the Plan using this Disclosure Statement.  Pursuant to the Bankruptcy Code and Bankruptcy Rules, and as permitted by the Bankruptcy Code and approved by the Bankruptcy Court, the Trustee and the Committee will seek both to confirm the Plan and final approval of this Disclosure Statement in a joint hearing to be held on _____, 2021, at __:__ _.m..

## A.   Disclaimer

**ALL CREDITORS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.  PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN AND THE DISCLOSURE STATEMENT AS A WHOLE.**

**THIS DISCLOSURE STATEMENT CONTAINS SUMMARIES OF CERTAIN PROVISIONS OF THE PLAN, STATUTORY PROVISIONS, DOCUMENTS RELATED TO THE PLAN, EVENTS IN THE DEBTOR'S CHAPTER 11 CASE, AND FINANCIAL INFORMATION.  ALTHOUGH THE TRUSTEE AND THE COMMITTEE BELIEVE THAT THE PLAN AND RELATED SUMMARIES ARE FAIR AND ACCURATE, SUCH SUMMARIES ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS. FACTUAL AND FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS BASED ON THE DEBTOR'S BOOKS AND RECORDS, EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED.  FOR THE FOREGOING REASONS, AS WELL AS THE COMPLEXITY OF THE DEBTOR'S FINANCIAL MATTERS, THE TRUSTEE AND THE COMMITTEE ARE UNABLE TO WARRANT OR REPRESENT**

THAT THE INFORMATION CONTAINED IN THIS DOCUMENT, INCLUDING THE FINANCIAL INFORMATION, IS WITHOUT ANY INACCURACY OR OMISSION. THE FINANCIAL DATA SET FORTH IN THIS DOCUMENT, EXCEPT AS OTHERWISE SPECIFICALLY NOTED, HAS NOT BEEN SUBJECTED TO AN INDEPENDENT AUDIT.  THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF.  NO ASSURANCES EXIST THAT THE STATEMENTS CONTAINED IN THIS DOCUMENT WILL BE CORRECT AT ANY TIME HEREAFTER.

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS INCLUDED SOLELY FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE PLAN, AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN.  NO REPRESENTATIONS CONCERNING THE DEBTOR ARE AUTHORIZED BY THE TRUSTEE OR THE COMMITTEE OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY OTHER REPRESENTATIONS OR INDUCEMENTS MADE TO SOLICIT YOUR ACCEPTANCE THAT ARE NOT CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION TO ACCEPT OR REJECT THE PLAN.

WITH RESPECT TO ADVERSARY PROCEEDINGS, CONTESTED MATTERS, OR OTHER ACTIONS OR THREATENED ACTIONS, THE FACTUAL DESCRIPTIONS AND SUMMARIES CONTAINED HEREIN ARE THOSE OF THE TRUSTEE AND THE COMMITTEE AND NOT ANY OTHER PARTY-IN-INTEREST. THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE, OR BE CONSTRUED AS, AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION, OR WAIVER BY ANY PARTY-IN-INTEREST.  INSTEAD, CONTENTS OF THIS DISCLOSURE STATEMENT ARE MADE SOLELY IN CONNECTION WITH SETTLEMENT NEGOTIATIONS BETWEEN THE TRUSTEE AND THE ESTATE, ITS CREDITORS AND OTHER PARTIES-IN-INTEREST AND THE SSOLICITATION OF ACCEPTANCES OF THE PLAN.

THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY. FURTHERMORE, THIS DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED TO CONSTITUTE CONCLUSIVE ADVICE ON THE LEGAL EFFECTS, INCLUDING, BUT NOT LIMITED TO, THE TAX OR OTHER EFFECTS OF THE PROPOSED PLAN.  YOU SHOULD CONSULT YOUR LEGAL OR TAX ADVISOR ON ANY QUESTIONS OR CONCERNS REGARDING THE TAX OR OTHER LEGAL CONSEQUENCES OF THE PLAN.

THE INFORMATION CONTAINED IN THIS DOCUMENT HAS NOT BEEN AUDITED AND WAS DERIVED FROM THE DEBTOR'S BOOKS AND RECORDS, WHICH ARE DEPENDENT UPON INTERNAL ACCOUNTING METHODS.  AS A RESULT, VALUATIONS OF ASSETS AND CLAIM LIABILITIES ARE ESTIMATED. ALTHOUGH SUBSTANTIAL EFFORT HAS BEEN MADE TO BE COMPLETE AND

ACCURATE, THE TRUSTEE AND COMMITTEE ARE UNABLE TO WARRANT OR
REPRESENT THE FULL AND COMPLETE ACCURACY OF THE INFORMATION
CONTAINED IN THIS DOCUMENT.

**B.**     **Disclosure Statement**

This Disclosure Statement sets forth certain information regarding the Debtor's prepetition
history and certain post-petition activity.  This Disclosure Statement also describes the Plan,
alternatives to the Plan, effects of confirmation of the Plan, and the manner in which Distributions
will be made under the Plan.  In addition, the Disclosure Statement discusses the confirmation
process and voting procedures that holders of claims in impaired classes must follow for their
votes to be counted.

WHEN AND IF CONFIRMED BY THE BANKRUPTCY COURT, THE PLAN WILL
BIND THE DEBTOR AND ALL HOLDERS OF CLAIMS AGAINST, AND INTERESTS IN,
THE DEBTOR, WHETHER OR NOT THEY ARE ENTITLED TO VOTE OR DID VOTE ON
THE PLAN AND WHETHER OR NOT THEY RECEIVE OR RETAIN ANY DISTRIBUTIONS
OR PROPERTY UNDER THE PLAN.  THUS, ALL CREDITORS ARE ENCOURAGED TO
READ THIS DISCLOSURE STATEMENT CAREFULLY.  IN PARTICULAR, HOLDERS OF
GENERAL UNSECURED CLAIMS WHO ARE ENTITLED TO VOTE ON THE PLAN ARE
ENCOURAGED TO READ THIS DISCLOSURE STATEMENT, THE PLAN, AND ANY
SUPPLEMENTS TO THE PLAN OR DISCLOSURE STATEMENT, CAREFULLY AND IN
THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

**C.**     **Plan Overview**

The following is a summary of the treatment, timing, and estimated Distributions for each
Class of Claims and Interests under the Plan.  This brief overview of the Plan is qualified in its
entirety by reference to the Plan.  Creditors and parties in interest should carefully review the Plan
for its complete terms and conditions.

**[CHART MUST BE UPDATED TO CONFORM TO MOST RECENT PLAN REVISIONS.]**

| Class | Claim/ Interest | Treatment | Estimated Amount and Projected Recovery | Voting Right |
|-------|-----------------|-----------|-----------------------------------------|--------------|
| Unclassified | Administrative Expense Claims (Other Than Professional Fee Claims) | Except to the extent that a Holder of an Administrative Expense Claim, other than a Professional Fee Claim, has been paid during the Case or, with the consent of the Trustee, agrees to a different treatment that is no more favorable to such Holder, each Holder of an Allowed Administrative Expense Claim shall receive in full | Estimated Amount: $30,000  Estimated Recovery: 100% of Allowed amount | Unimpaired - not entitled to vote |

3

| | | | | |
|---|---|---|---|---|
| | | satisfaction, settlement, release, and discharge of its Administrative Expense Claim, an amount of Cash equal to the unpaid portion of its Allowed Administrative Expense Claim to be paid on the latest of: (a) if such Claim is Allowed as of the Effective Date, on or as soon as practicable after the Effective Date; (b) if such Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order allowing such Administrative Expense Claim becomes a Final Order, or as soon thereafter as is reasonably practicable; (c) if not yet due and payable on the Effective Date, the date on which such Allowed Claim becomes due and payable in the ordinary course of business, or an Administrative Expense Claim; or (d) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court. Professional Fee Claims shall be treated as provided in Section III.A.2.1.B of the Plan. | | |
| Unclassified | Professional Fees | All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be filed no later than twenty (20) days after the Effective Date, unless extended with the approval of the Trustee and the Committee. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules and Local Bankruptcy Rules. The amount of the Allowed Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals when | Estimated Amount: $1,530,000<br><br>Estimated Recovery: 100% of Allowed amount | Unimpaired - not entitled to vote |

| | | | | |
|---|---|---|---|---|
| | | such Professional Fee Claims are Allowed by entry of an order of the Bankruptcy Court. | | |
| Unclassified | Priority Claims | Except to the extent that a Holder of a Priority Claim agrees to a less favorable treatment, each Holder of an Allowed Priority Claim shall receive in full and final satisfaction, settlement, release, and discharge of its Allowed Priority Claim, cash equal to its unpaid Allowed Priority Claim to be paid on the earliest latest of: (a) the Effective Date, if such Claim is Allowed as of the Effective Date,; (b) the date on which such Priority Claim is Allowed, or as soon thereafter as reasonably practicable,; and (c) such other date as may be ordered by the Court or agreed by such Holder and the Trustee or the Plan Administrator, as the case may be. | Estimated Amount: $40,000

Estimated Recovery: 100% of Allowed amount | Unimpaired - not entitled to vote |
| 1 | FBNK Secured Claim | Pursuant to the Litigation Settlement and Settlement Agreement under the Plan, the FBNK Secured Claim shall be Allowed as a General Unsecured Claim in Class 6, but any right to a Distribution shall be subordinated to all other Allowed General Unsecured Claims until such time, if any, before or as of the closing of the Case, that such Allowed General Unsecured Claims have received Distributions satisfying such claims in full. | Estimated Amount: $[8.5 mm]

Estimated Recovery: 0.0% of Allowed amount | Impaired - entitled to vote |
| 2 | Other Secured Claims | Except to the extent that a Holder of an Other Secured Claim agrees to a less favorable treatment, each Holder of an Allowed Claim in Class 2, if any, shall receive in full and final satisfaction, settlement, release, and discharge of such Claim, Cash equal to the value of the Lien on property owned by the Debtor that serves as collateral to secure such Claim, without post- | Estimated Amount: $0.00

Estimated Recovery: 100% of Allowed amount | Impaired - entitled to vote |

| | | petition interest, to be paid on the earliest of: (a) the Effective Date, if such Claim is an Allowed Other Secured Claim as of the Effective Date; (b) the date on which such Other Secured Claim is Allowed as a Secured Claim, or as soon thereafter as reasonably practicable;, and (c) such other date as may be ordered by the Court or agreed by such Holder and the Trustee or the Plan Administrator, as the case may be. Other Secured Claims are impaired and will be solicited for acceptance of the Plan. The amount of any deficiency Claim held by a Holder of an Other Secured Claim (the amount of the Claim that exceeds the value, if any, of the Lien on property owned by the Debtor that serves as collateral to secure such Holder's Other Secured Claim) shall be entitled to the treatment as an Unsecured Claim under Class 6 of the Plan. The Trustee does not believe there to be any claims in this class. | | |
| --- | --- | --- | --- | --- |
| 3 | Online Seller Claims | Pursuant to the settlement of controversies relating to Online Seller Claims as provided in the Plan, and except to the extent that a Holder of an Online Seller Claim agrees to a less favorable treatment, each Holder of an Allowed Claim in Class 3 shall receive in full and final satisfaction, settlement, release, and discharge of such Claim, without pre- or post-petition interest, pursuant to the Online Seller/Auction Consignor Claim Settlement under the Plan, on the earliest of: (a) the Effective Date, if such Claim is Allowed as of the Effective Date;, (b) the date on which such Claim is Allowed, or as soon thereafter as reasonably practicable;, and (c) such other | Estimated Amount: $477,000

Estimated Recovery: 50% | Impaired - entitled to vote |

| | | | | |
|---|---|---|---|---|
| | | date as may be ordered by the Court or agreed by such Holder and the Trustee or the Plan Administrator, as the case may be: (1i) such Holder's Pro Rata share of the Segregated Seller Fund, in Cash, without pre- or post-petition interest; and (2ii) an additional Distribution, in Cash, from the proceeds of the Plan Administration Assets in the same percentage as the Distributions to Allowed General Unsecured Claims under Class 6. Such Allowed Claim Class 3 Claims are impaired and will be solicited for their acceptances of the Plan.

In exchange for receiving a Pro Rata share of the Segregated Seller Fund under the Plan pursuant to the Online Seller/Auction-Consignor Settlement, any Holder of an Online Seller Claim who remains in possession of property subject to a sale that was completed prior to the Petition Date shall be required to relinquish and surrender possession of the property to the Online Buyer that purchased such property if the Online Buyer elects under the Plan to receive the property purchased, provided the Online Buyer shall be responsible for the payment of all shipment and delivery costs of the subject property.

If the contract between the Debtor, on the one hand, and such Online Buyer or Online Seller, on the other hand, provided for the Debtor to pay the shipment and delivery costs of the subject property, such contract is deemed rejected as of the Effective Date as provided in Section IV.5 of the Plan regarding the treatment of Online Buyer Claims. | | |

| | | | | |
|---|---|---|---|---|
| | | *D.        In order to confirm and receive the treatment provided under Section IV.3 of the Plan, each Holder of an Online Seller Claim must timely return a Ballot that (i) identifies or confirms each and every artwork or other item of property that was the subject of a sale on the Debtor's online platform for which such Holder did not receive payment, and (ii) states the current location of each such item of property or indicates that such Holder has disposed of any or all such items.  The failure of such Holder to provide the requested information shall result in the automatic reclassification and treatment of such Holder's Online Seller Claim as a General Unsecured Claim.*<br><br>In the event that the Holder of an Online Buyer Claim elects to receive an Allowed General Unsecured Claim in the amount of the purchase amount paid by such Claimant, without post-petition interest, and not to retrieve and collect the property, the Holder of the corresponding Allowed Online Seller Claim that sold the property to such Online Buyer shall still receive the treatment provided under Class 3 of the Plan, notwithstanding the continued possession of any property by such Holder of the Allowed Online Seller Claim. | | |
| 4 | Artist Consignor Claims | Pursuant to the settlement of controversies relating to Artist-Consignor Claims as provided in the Plan, and except to the extent that a Holder of an Artist-Consignor Claim agrees to a less favorable treatment, each Holder of an Allowed Claim in Class 4 shall receive in full and final satisfaction, settlement, release, and discharge of such Claim, | Estimated Amount: $224,000<br><br>Estimated Recovery: 60% | Impaired - entitled to vote |

| | | without pre- or post-petition interest, on the earliest of (a) the Effective Date, if such Claim is Allowed as of the Effective Date, (b) the date on which such Claim is Allowed, or as soon thereafter as reasonably practicable, and (c) such other date as may be ordered by the Court or agreed by such Holder and the Trustee or the Plan Administrator, as the case may be: (i) such Holder's Pro Rata share of the Segregated Seller Fund, in Cash; (ii) an additional Pro Rata Distribution, in Cash, from the proceeds of the Plan Administration Assets in an amount equal to the same percentage as Distributions to Allowed Unsecured Claims in Class 6; and (iii) a second Pro Rata Distribution on account of such Holder's claim for entitlement under NYACAL to attorney's fees, costs, expenses, and/or monetary penalties. Class 4 Claims are impaired and will be solicited for their acceptances of the Plan. Class 4 Claims are impaired and will be solicited for their acceptances of the Plan.<br><br>In exchange for receiving a Pro Rata share of the Segregated Seller Fund under the Plan, any Holder of an Artist-Consignor Claim who remains in possession of property subject to a sale that was completed prior to the Petition Date shall be required to relinquish and surrender possession of the property to the Online Buyer that purchased such property if the Online Buyer elects under the Plan to receive the property purchased, provided the Online Buyer shall be responsible for the payment of all shipment and delivery costs of the subject property. If the contract between the Debtor, on the one hand, and | | |

| | | either of such Online Buyer or Artist-Consignor, on the other hand, provided for the Debtor to pay the shipment and delivery costs of the subject property, such contract is deemed rejected as of the Effective Date as provided in Section IV.5 of the Plan regarding the treatment of Online Buyer Claims.<br><br>*In order to confirm and receive the treatment provided under Section IV.4 of the Plan, each Holder of an Artist-Consignor Claim must timely return a Ballot that (i) identifies or confirms each and every artwork or other item of property that was the subject of a sale on the Debtor's online platform for which such Holder did not receive payment, and (ii) states the current location of each such item of property or indicates that such Holder has disposed of any or all such items. The failure of such Holder to provide the requested information shall result in the automatic reclassification and treatment of such Holder's Artist-Consignor as a General Unsecured Claim.*<br><br>In the event that the Holder of an Online Buyer Claim elects to receive an Allowed General Unsecured Claim in the amount of the purchase amount paid by such Claimant, without post-petition interest, and not to retrieve and collect the property, the Holder of the corresponding Allowed Artist-Consignor Claim that sold the property to such Online Buyer shall still receive the treatment provided under Class 3 of the Plan, notwithstanding the continued possession of any property by such Holder of the Allowed Artist-Consignor Claim. | | |

| 5 | Online Buyer Claims | Except to the extent that a Holder of an Online Buyer Claim agrees to a less favorable treatment, each Holder of an Allowed Claim in Class 5 shall receive in full and final satisfaction, settlement, release, and discharge of such Claim, without pre- or post-petition interest, on the earliest of (a) the Effective Date, if such Claim is Allowed as of the Effective Date, (b) the date on which such Claim is Allowed, or as soon thereafter as reasonably practicable, and (c) such other date as may be ordered by the Court or agreed by such Holder and the Trustee or the Plan Administrator, as the case may be: (i) the right to receive the property purchased by such Claimant, provided that such Holder shall be responsible for the payment of all delivery and shipment costs; or (ii) an Allowed General Unsecured Claim in the amount of the purchase amount paid by the Claimant, without pre- or post-petition interest, a Pro Rata Distribution, in Cash, from the proceeds of the Plan Administration Assets in the same percentage as the Distributions to Allowed General Unsecured Claims under Class 6. Class 5 Claims are impaired and will be solicited for their acceptances of the Plan.

Each Holder of an Online Buyer Claim will have the ability to elect on the ballot to accept or reject the Plan and to elect whether such Holder prefers the right to receive either (i) the property purchased by such Claimant, provided that such Holder shall be responsible for the payment of all shipment and delivery costs (notwithstanding whether such Claimant previously paid such amounts to the Debtor); or (ii) an | Estimated Amount: $309,000

Estimated Recovery: 10% if Holder elects to terminate purchase right and be treated as General Unsecured claim..

If Holder elects to confirm the purchase and retrieve the property (at own expense), 10% of the cost of delivery. | Impaired - entitled to vote |

| | | | | |
|---|---|---|---|---|
| | | Allowed General Unsecured Claim in the amount of the purchase amount paid by the Claimant, without post-petition interest.<br><br>All pre-petition contracts between the Debtor and Online Buyers, including, without limitation, any purchaser contracts that obligate the Debtor to bear the costs of collection, packing, insurance, transit, shipping, import/export and/or delivery of any purchased property to the Online Buyers, are deemed rejected by the Plan. Any Person or Entity that filed a Proof of Claim, as a buyer, that was involved in a sale which was cancelled as a result of such Person's or Entity's failure to remit the proceeds of the sale or where such Person or Entity initiated a chargeback resulting in the return of the purchase price will not be treated as a creditor under Class 5 or the Plan and will not receive a ballot. Class 5 Claims are impaired and will be solicited for their acceptances of the Plan.<br><br>If the Holder of an Online Buyer Claim elects to receive the property purchased by such Holder (at such Holder's sole cost and expense), but the property is no longer in the possession of the Online Seller or Artist-Consignor of the property such that it cannot be made available for retrieval, such Holder shall automatically receive an Allowed General Unsecured Claim in the amount of the purchase amount paid by such Claimant, without post-petition interest, notwithstanding any election made by such Holder. | | |

| 6 | General Unsecured Claims | Except to the extent that a Holder of a General Unsecured Claim, each Holder of an Allowed Claim in Class 6 other than FBNK or Holders of Insider Unsecured Claims, shall receive a Pro Rata Distribution, in Cash, on account of such Allowed General Unsecured Claim, in full and final satisfaction, settlement, release, and discharge of such Claim, without pre- or post-petition interest, on the earliest of (a) the Effective Date, if such Claim is Allowed as of the Effective Date, (b) the date on which such Claim is Allowed, or as soon thereafter as reasonably practicable, and (c) such other date as may be ordered by the Court or agreed by such Holder and the Trustee or the Plan Administrator, as the case may be.<br><br>Pursuant to the Litigation Settlement and Settlement Agreement under the Plan, the FBNK Claims and the Insider Unsecured Claims shall be Allowed as General Unsecured Claims in Class 6, but shall be subordinated to the rights to Distributions held by all other Allowed General Unsecured Claims until such time, if any, before or as of the closing of the Case, that such Allowed General Unsecured Claims have received Distributions satisfying their Allowed Claims in Class 6 in full. | Estimated Amount of General Unsecured Claims excluding Insider Unsecured Claims: $2,500,000<br><br>Estimated Recovery: 10%<br><br>Estimated Amount of Insider Unsecured Claims: $8,600,000<br><br>Estimated Recovery: 0.0% | Impaired - entitled to vote |
|---|---|---|---|---|
| 7 | Interests | On the Effective Date, all Interests in Class 7 shall be discharged, cancelled, released, and extinguished as of the Effective Date, and the holders of such Interests shall neither receive any Distributions nor retain any property under the Plan for or on account of any such Interests. Class 7 Interests are deemed to have rejected the Plan and will not | Estimated Amount: N/A<br><br>Estimated Recovery: $0.00 | Deemed to reject - not entitled to vote |

| | | be solicited for their acceptances of the Plan. | | |
|---|---|---|---|---|

The figures outlined in the above chart are estimates only and are subject to change. Estimated Distributions do not take into account any proceedings resulting from the successful pursuit of Causes of Action or disposition of the other limited assets in the Estate following the Effective Date of the Plan.  Such additional recoveries may increase the estimated Distributions for Classes 3, 4, 5 and 6.

**D.** **Solicitation of Acceptances, and Joint Hearing on Confirmation of the Plan and Approval of the Disclosure Statement**

Pursuant to an Order of the Bankruptcy Court entered on August [•], 2021 [ECF No. ____], Holders of Claims in Classes 3, 4, 5 and 6 may vote to accept or reject the Plan by no later than **September [  ], 2021, at 5:00 p.m. (EST)** ("Voting Deadline").  A ballot with which to indicate and submit an acceptance or rejection of the Plan has been provided to you.  You must complete and submit your ballot on or before the Voting Deadline in order for your vote to count.  Any ballot that is executed by the holder of any Allowed Claim but does not indicate acceptance or rejection of the Plan shall not be counted for the purposes of determining acceptance or rejection of the Plan. Any other ballot not submitted in accordance with the instructions on the ballot shall not be counted for the purposes of determining acceptance or rejection of the Plan.

THE TRUSTEE AND THE COMMITTEE BELIEVE THAT THE PLAN PROVIDES THE OPTIMUM RETURN TO GENERAL UNSECURED CREDITORS, AND THAT LIQUIDATION OF THE ESTATE UNDER CHAPTER 7 OF THE BANKRUPTCY CODE WOULD NOT RESULT IN AS FAVORABLE A DISTRIBUTION TO CREDITORS.  THE TRUSTEE AND THE COMMITTEE URGE EACH CREDITOR TO VOTE IN FAVOR OF THE PLAN BY MARKING THE "ACCEPTS" BOX ON THE ENCLOSED BALLOT AND SUBMITTING IT IN ACCORDANCE WITH THE INSTRUCTIONS PRINTED THEREON ON OR BEFORE THE VOTING DEADLINE.

# II
# GENERAL INFORMATION CONCERNING THE DEBTOR

## A.    The Debtor's Business and Corporate Structure

The Debtor is a Delaware corporation that was incorporated in early 2017.  At all relevant times, the Debtor maintained its principal place of business in New York.  The Debtor's majority shareholder from its inception until early 2018 was an affiliate of former P8H director Christopher Hsu.  In early 2018, Oakley Capital International AG, a Luxembourg company later renamed FaceBank AG ("FBAG") and currently operating under the name Digital Commerce Strategy AG ("Digital") became the indirect controlling shareholder of the Debtor.  FBAG was controlled by of Mr. Sergey Skaterschikov ("Skaterschikov").  Both Mr. Skaterschikov and his wife, Ms. Isabela Depczyk ("Depczyk"), became involved in the business of the Debtor, with Ms. Depczyk serving at various times as a director and/or officer of the Company, while Mr. Skaterschikov did not formally become either an officer or director.  In August 2019, FBAG sold its indirect controlling equity interest in the Debtor to FaceBank Group, Inc. ("FaceBank"), a Florida public company in which Mr. John Textor was, at that time, an officer, director and shareholder ("Textor").[1]

The Debtor operated an online platform for the sale for artworks, collectibles and experiences (such as exclusive access to sports and/or entertainment events) through online auctions and "storefront" sales.  The Debtor focused its activities, in particular, on providing a vehicle for charitable organizations to generate funds by selling, at auction, artworks provided to and/or for the benefit of the charities.

Except for limited capital funding in the early phases of its existence, the Debtor was dependent on debt financing because business revenues were never sufficient to cover budgeted or projected operating expenses.  The Debtor's balance sheet always reflected a negative net worth after the company's incorporation.  Debt financing to P8H was provided by insiders or their affiliated entities, and not by outside arm's length lenders.  After the creation of P8H, Lightyear Collective LLC, an affiliate of Mr. Hsu, provided $5 million in debt financing.  As further explained below, in early 2019, after FBAG (then known as Oakley Capital International AG) had become the indirect controlling shareholder of the Debtor, StockAccess Holdings SAS, a French company ("StockAccess"), another FBAG affiliate, extended a $10 million loan facility to the Debtor, of which $5 million was used to retire the Lightyear loan.

Pre-bankruptcy directors of P8H included, at various times, Norman Hansen, Christopher Hsu, Peter Rich and Izabela Depczyk, and possibly others prior to 2019.  On the Petition Date, Peter Rich was the sole remaining member of the board of directors of the company.

The Debtor's first meeting of creditors under Section 341 of Title 11 of the United States Code (the "Bankruptcy Code") was convened by the United State Trustee on April 23, 2020 (the "341 Meeting").  At the 341 Meeting, the Debtor's then-last remaining board member and responsible person, Peter Rich, stated that he would not authorize the pursuit of any director and officer claims by or on behalf of the Debtor and its estate.  Mr. Rich resigned from the Debtor's

---

[1]      FBG later changed its name to fuboTV, Inc.

shortly after the 341 Meeting. On April 30, 2020, the Court directed the appointment of a trustee in the Chapter 11 Case [ECF No. 36].

After her appointment, the Trustee engaged in a detailed review of the Debtor, its business and its affairs. As a result of that process, the work force of the Debtor was reduced to a single person, the company's controller, and several former employees were engaged by the Trustee to render specialized assistance as independent contractors.

## B.    **Capital Structure and Claims**

### 1.    **Secured Claim of FBNK, as Assignee from StockAccess**

On March 8, 2019, P8H as borrower and FBAG, then operating under the name Oakley Capital International AG, as lender, entered into an agreement for P8H to borrow up to $10 million ("P8H Loan Agreement"). Several days later, FBAG assigned its rights as lender to its direct affiliate StockAccess. At all relevant prepetition times after the execution of the P8H Loan Agreement, the direct controlling equity interest in P8H is believed to have been held by 8+ Holdings LLC, a New York limited liability company ("8+") that was wholly owned by StockAccess.

On or about March 31, 2020 (*i.e.*, two weeks after the Petition Date), StockAccess, over the signature of its president Norman Hansen, a former director and board chairman of P8H and an associate of Mr. Skaterschikov,[2] assigned certain property to FBNK in full satisfaction certain outstanding obligations owed by StockAccess to FBNK Finance, AG, a Luxembourg company then affiliated with FBG and later associated with Mr. Skaterschikov. StockAccess, in turn, irrevocably transferred to FBNK (among other things) all StockAccess' right, title, and interest under P8H Loan Agreement, along with StockAccess' controlling stock interest in Native SA, a Swiss company with which Sergey then was or previously had been affiliated. On the same day, StockAccess was dissolved under French law by unilateral corporate action of Digital (previously FBAG), as its sole shareholder. Digital thereby succeeded to all of StockAccess' assets and liabilities in accordance with French law.

The P8H Loan Agreement provided for an aggregate loan facility of up to $10 million ("P8H Loan"). P8H granted collateral to the lender comprised of all assets including "Paddle8 brand, URL address and social networks presence, as well as Paddle8 digital products and their underlying source code, servers as well as all of the Paddle8 fixed assets and customer databases". Under the P8H Loan Agreement, P8H agreed to "cooperate with the Lender when and if Lender intends to effect the UCC filing on the Collateral"; no other obligation was imposed on the borrower respecting a UCC filing.

StockAccess decided in or about September 2019 to file a UCC-1 financing statement. At the direction of Mr. Skaterschikov and with the involvement of personnel in the management teams at FBAG and StockAccess, the UCC-1 was prepared and filed by P8H's controller with assistance from P8H director Peter Rich (who separately conferred with and reported back to the FBAG and

---

[2]    Mr. Hansen is believed to have been a longtime business associate of Sergey. Prior to November 2019 he served as a director and chairman of the board of P8H.

StockAccess teams); StockAccess did not involve any lawyer in the UCC-1 preparation or filing. StockAccess did not direct any P8H personnel or representatives on where to file the UCC-1. The UCC-1 was filed in New York, the state of the Debtor's place of business on October 30, 2019, less than six months before the Petition Date. No UCC-1 was filed in Delaware, the state of the Debtor's incorporation. For that and other reasons, the Trustee and the Committee believe that the P8H Loan never became subject to a perfected lien in any collateral of the Debtor.

StockAccess advanced a total of approx. $8.54 million to P8H prior to November 2019. The initial loan proceeds received by P8H in early 2019 were used to pay off the outstanding $5 million unsecured loan from Lightyear Collective. On November 15, 2019, with instructions and requests from FBAG and FBG, P8H paid the following amounts, which it booked as payments on P8H Loan: (i) $50,000 to StockAccess; and (ii) $200,000 to FBG Inc., as StockAccess' indirect parent. P8H's books reflected significant insolvency at that time. No other repayments were made on P8H Loan at any time.

Pursuant to the Litigation Settlement, discussed below and in the Plan, the alleged secured claim of FBNK in connection with the P8H Loan will be allowed as a General Unsecured Claim but will be subordinated to all other General Unsecured Claims.

## 2.    **Other Secured Claims**

The Trustee and the Committee do not believe that there are any other secured claims or any perfected security interests against the Debtor or its property.

## 3.    **Unsecured Claims**

A total of approximately $2.5 million in General Unsecured Claims were scheduled or filed for creditors that were not insiders or affiliates of insiders of the Debtor (as such terms are defined in the Bankruptcy Code. As explained below, these claims will be treated and entitled to Distributions under the Plan.

In addition to the FBNK Claim on account of the P8H Loan which will be subordinated to all other General Unsecured Claims pursuant to the Litigation Settlement, two Claims of affiliates of insiders of the Debtor (Recall Studios, Inc. and Hashtag Studios AG) in the aggregate amount of $167,205.00. These claims also will be subordinated to all other General Unsecured Claims pursuant to the Litigation Settlement.

## 4.    **Interests.**

The Debtor had one class of common stock, for which 10 million shares, $0.00001 par value per share, were authorized and issued under its certificate of incorporation. The company purported to authorize and issue an additional 5,233,783 shares, $0.00001 par value per share in January 2017 pursuant to an amended certificate of incorporation. Of the total of 15,233,783 that the company purported to authorize and issue, 2,780,498 were to be designated as "Class A Common Stock" with enhanced voting rights, 453,285 shares as "Class B Common Stock" with enhanced voting rights, and the original 10,000,000 shares of which are designated "Class C

Common Stock" with lesser voting rights. However, the amended certificate of incorporation was never filed with the Secretary of State of Delaware, as a result of which the additional issuance of shares did not become effective. For purposes of the Plan, all of the shares are treated as Interests whether or not the shares were properly issued or not properly authorized and, as provided in the Plan, none will be entitled to receive any Distributions.

### III
### THE CHAPTER 11 CASE

#### A.   Key Events Leading to the Commencement of these Chapter 11 Cases

On March 16, 2020 (the "Petition Date"), the Debtor filed a voluntary petition (the "Petition Date") [ECF No. 1] for relief under chapter 11 of the Bankruptcy Code (the "Bankruptcy Case"). The Debtor's operations had already been substantially suspended by the Petition Date as a result of the Debtor's financial distress and inability to obtain funding necessary to support its business activities. The Debtor's dire situation was further compounded by the shut-down orders of governmental agencies issued in connection with the COVID-19 pandemic. The Debtor did not engage in any online sales business during the pendency of the bankruptcy case.

#### B.   "First Day" Relief

On the Petition Date, the Debtor filed several customary "first day" motions to facilitate the transition between the Debtor's prepetition and postpetition business operations which, broadly speaking, sought authorization for the Debtor to continue with certain regular business practices that may not have been specifically authorized by the Bankruptcy Code, or for which the Bankruptcy Code requires prior approval from the Bankruptcy Court. The Court entered an *Interim Order (I) Authorizing  the Debtor to Pay and Honor Certain Prepetition Claims for (A) Wages, Salaries, Employee Benefits and Other Compensation, and (B) Withholdings and Deductions; and (II) Directing Banks to Receive, Process, Honor and Pay All Checks Presented for Payment and Electronic Payment Request Relating to the Foregoing* [ECF No. 18]. No further or final order for such relief was ever entered prior to the appointment of the Trustee. The Court also entered an *Interim Order Authorizing Use of Cash Collateral by Debtor Pursuant to 11 U.S.C. Section 363* [ECF Nos. 19, revised by ECF No. 22]. Further cash collateral orders were entered after the appointment of the Trustee, as described below.

#### C.   Retention of Professionals by Debtor

The Debtor was represented in the Case by the firm of Kirby, Aisner & Curley, LLP, but no formal retention order was entered by the Bankruptcy Court. Upon information and belief, on March 16, 2021, the firm received a prepetition retainer payment from the Debtor in the aggregate total of $30,000.00 for its engagement.

#### D.   Appointment of the Committee, and Retention of Its Professionals

On April 15, 2020, the Office of the United States Trustee (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") [ECF No. 23]. The members of the Committee are: Marcel Katz Art, The Little Black Gallery, and the VentureDevs, Inc.

On June 10, 2020, the Bankruptcy Court approved the Committee's retention of the Law Offices of Richard J. Corbi PLLC as its counsel [ECF No. 86].

### E.    Schedules and Statements

The Debtor filed its Schedules of Assets and Liabilities and Statement of Financial Affairs on April 8, 2020 [ECF No. 20].

### F.    Appointment of the Trustee, and Retention of Her Professionals

The Debtor's sole remaining director, Peter Rich, resigned from his position in April 2020. On May 8, 2020, the U.S. Trustee filed an Application for Order Approving the Appointment of Chapter 11 Trustee [ECF No. 42]. On the same day, this Court entered an order approving Megan E. Noh as the Chapter 11 Trustee [ECF No. 43].

### G.    Cash Collateral and Segregation of Certain Funds

On March 18, 2020, the Debtor moved for interim authority to use cash collateral, pursuant to 11 U.S.C. §§ 363(c)(2) and 361 and Bankruptcy Rule 4001, over which FBNK, as assignee of StockAccess asserted that a security interest and perfected prepetition lien [ECF No. 9]. By order dated April 8, 2020 [ECF No. 19], the Bankruptcy Court granted initial interim authority to the Debtor with the consent of FBNK.

At later times, the Trustee obtained additional interim authorizations from the Bankruptcy Court to use cash collateral according to agreed budgets with the consent of FBNK and the Committee. Pursuant to the Litigation Settlement, FBNK and the Committee have agreed to extend the interim authorization for the Trustee's use of cash collateral to [October 16, 2021] in connection with the confirmation proceedings on the Plan, subject to the Trustee's right to request further extension(s) as may be necessary.

As further explained below, the Trustee commenced an adversary proceeding in the Bankruptcy Court against FBNK to invalidate and avoid the Lender's alleged security interest and lien in the Debtor's property under the P8H Loan Agreement, entitled *Noh, as Trustee v. FBNK Finance S.á.r.l.,* Adv. Proc. No. 20-01211-dsj. The Litigation Settlement described below includes a settlement and resolution of all issues arising in the FBNK Lien Action.

### H.    Bar Dates

On July 10, 2020, the Court entered an order granting the Trustee's motion to August 24, 2020 as the General Bar Date for filing Proofs of Claim [ECF No. 112]. The order also implemented a Claims Protocol for claims of persons and entities holding what are classified

under the Plan as Online Seller claims and Artist-Consignor Claims to address their claimed contentions and entitlements to equitable or other relief relating to their status with respect to the Debtor's unpaid auction sale proceeds under common law and/or the New York Arts and Cultural Affairs Law.

On ____, 2021, the Bankruptcy Court entered an order setting _____ as the Administrative Expense Claims Bar Date for the filing of Proofs of Claim for Administrative Expenses or requests for payment of Administrative Expenses (excluding Professional Fee Claims, for which the time for filing will be set by the Plan and the Confirmation Order) [ECF No. ___].

## I.    The Asset Sales

Following her appointment, the Trustee engaged in a review of the Debtor and its affairs, as a result of which she determined, at the request and consultation with the Committee, that it was in the best interests of the Estate for her to seek to sell substantially all of the Debtor's remaining business assets (the "Assets"), free and clear of liens, claims, encumbrances, and other interests under Section 363(f) of the Bankruptcy Code, to the highest and best bidder(s) that might emerge from formal sale process and auction.  The Assets consisted of the Debtor's trademarks, domain names, social media accounts, website and iOS applications, inventory management system, and client transaction database.  The Committee supported that course of action.

On June 16, 2020 [ECF No. 89], the Court granted the Trustee's motion [ECF No. 61] to sell the Assets pursuant to certain procedures, and to sell the assets in bulk or in subparts through separate Purchase Agreements with different purchasers, if appropriate, to obtain the highest value for the Assets.  The Trustee obtained court approval [ECF No. 66] to engage Nevium LLC ("Nevium") as her sale advisor, and with the assistance of Nevium the Trustee engaged in robust efforts to market the Assets to potential offerors and to provide a data room containing relevant information for diligence.  As a result, several interested parties indicated their intentions to bid for the Assets.

The Trustee convened and concluded an auction on July 23, 2020, which resulted in winning bids being recognized from seven bidders and covering the sale of all of the Assets in several lots, with sale prices totaling $499,810.

After the completion of the auction, the Trustee, though her counsel, negotiated the terms of the respective asset purchase agreements with the successful purchasers under which the Lots of Assets would be sold.  Following a hearing, the Bankruptcy Court entered an order on August 6, 2020 [ECF No. 133] which approved the sales of the Assets to the various purchasers under the asset purchase agreements in all respects.  The Trustee thereafter promptly closed the sales.

## J.    Post-Petition Litigation by the Trustee and the Committee Against Various Entities and Former Directors, and the Court-Annexed Mediation of the Disputes

### 1.    Adversary Proceedings

#### a.    The Committee D&O Action

The Debtor's first meeting of creditors under Section 341 of the Bankruptcy Code was convened by the United State Trustee on April 23, 2020. At the 341 Meeting, the Debtor's then-last remaining board member and responsible person, Peter Rich, stated that he would not authorize the pursuit of any director and officer claims by or on behalf of the Debtor and the Estate. Mr. Rich resigned from the Debtor's shortly thereafter.

At a hearing on April 30, 2020, the Court "so ordered" the record of the hearing to granting the Committee standing to commence an adversary proceeding on behalf of the Debtor's Estate to seek relief against persons covered by the Debtor's directors' and officers' insurance policy ("D&O Insurance"). On May 1, 2020, the Court confirmed that relief by entering its *Order Authorizing the Committee to Commence Certain Claims and Causes of Action on Behalf of the Debtor's Estate* [ECF No. 37]. The Committee then filed an adversary complaint against Valentine Uhovski on May 1, 2020, entitled *Official Comm. of Unsec. Creds. v. Valentine Uhovski,* Adv. Pro. No. 20-01081 [Adv. ECF No. 1], in order to preserve the right of the Estate to seek the benefit of roughly $1 million of coverage under to the D&O Insurance, which was then believed to be expiring later on May 1, 2020 (the "Committee D&O Action"). The Committee's complaint, filed in the status of a derivative suit, alleged, among other things, claims for breach of fiduciary duty and other wrongs. On May 28, 2020, the Court approved a consensual stipulation between the Committee and the Trustee regarding the prosecution of the action, entitled *Stipulation and Order Authorizing the Official Committee of Unsecured Creditors to Prosecute Certain Claims and Causes of Action on Behalf of the Debtor's Estate* [Adv. Pro. No. 20-01081, Adv. ECF No. 4].

On August 28, 2020, the Committee filed an amended complaint in the Committee D&O Action to add as additional defendants Izabela Depczyk, Norman Hansen, Christopher Hsu, Peter Rich and Sergey Skaterschikov [Adv. Pro. No. 20-01081, Adv. ECF No. 17]. Mr. Uhovski filed a motion to dismiss the amended complaint. On February 8, 2021, the Committee voluntarily dismissed Mr. Uhovski from the Committee D&O Action without prejudice, in exchange for his agreement to submit to mediation of the claims and disputes. [Adv. Pro. No. 20-01081, Adv. ECF No. 44]. Further proceedings in the action were stayed in order to facilitate the Mediation described in further detail below.

### b.    The FBNK Lien Avoidance Action

On August 26, 2020, the Trustee commenced an adversary proceeding against FBNK as the holder of the right, title and interest as lender to the Debtor under a P8H Loan Agreement originally made with the Debtor in early 2019 by Oakley Capital International AG ("Oakley"), which later assigned the loan to StockAccess. FBNK acquired the interest in the loan from StockAccess in early 2020. The Trustee alleged claims seeking a declaratory judgment and other relief on the ground that, among other things, FBNK's alleged liens in assets of the Company were never properly perfected such that *all* assets of the Debtor (including alleged cash collateral) were available to the Trustee and the Estate for administration in the Chapter 11 Case free and clear of such liens (the "Lien Avoidance Action") [*Megan E. Noh, as Chapter 11 Trustee v. FBNK Finance S.à.r.l.,* Adv. Pro. No. 20-01211, Adv. ECF No. 1].

FBNK filed an answer in the Lien Avoidance Action. FBNK and Digital filed a motion to dismiss the claims against them in the Trustee D&O Action. The Trustee indicated that she intended to file an amended complaint adding additional claims including claims against FBNK and StockAccess to recover the November 2019 payments on the Loan as preferences made to insiders of the Debtor. Further proceedings in the action were stayed in order to facilitate the Mediation described in further detail below.

###### c.    The Trustee D&O Action

On August 28, 2020, the Trustee commenced an adversary proceeding against John Textor and other parties including FBNK and its affiliate Digital Commerce Strategy AG, which was previously known as FaceBank AG ("Digital") [*Megan E. Noh, as Chapter 11 Trustee v. John Textor, et al.,* Adv. Pro. No. 20-01212, Adv. ECF No. 1 (the "Trustee D&O Action," and, together with the Committee D&O Action and the Lien Avoidance Action, the "Adversary Proceedings)]. The Trustee's complaint alleged, among other things, claims for breach of fiduciary duty and other wrongs.

On November 1, 2020, the Trustee voluntarily dismissed Mr. Textor from the Trustee D&O Action without prejudice, in exchange for his agreement to submit to mediation of the claims and disputes. [Adv. Pro. No. 20-01212, Adv. ECF No. 10]. Another defendant, fuboTV, Inc., formerly known as FaceBank Group, Inc., also was dismissed without prejudice on the same day [*id.*, Adv. ECF No. 11]. Further proceedings in the action were stayed in order to facilitate the Mediation described in further detail below.

###### 2.    **The Mediation and the Litigation Settlement**

The Adversary Proceedings raised issues involving connected and related parties arising from the common nuclei of facts and occurrences regarding the Debtor and its prepetition operation and management and sought to augment the Debtor's estate and provide greater recoveries to creditors. Since the filing of each action, the Trustee and the Committee pursued – and sought to resolve the lawsuits, through settlements or otherwise – on a cooperative, joint interest basis for the benefit of the Debtor's estate and stakeholders. The Committee and the Trustee jointly engaged in settlement discussions with counsel for all defendants in the Adversary Proceedings, but those discussions did not result in resolutions of the claims against the various persons or entities.

At the Committee's urging, after the settlement discussions did not produce definitive resolutions after a number of months, the Trustee and the Committee determined that the actions should be referred to mediation to explore whether individual or global resolutions can be facilitated through the efforts of a neutral mediator in order to focus efforts on seeking a resolution of the proceedings instead of incurring additional legal expense.

On February 18, 2021, the Trustee and the Committee filed a joint motion for entry of an order referring the Adversary Proceedings to mediation [ECF No. 180]. On April 6, 2021, the Bankruptcy Court granted the motion (without any opposition) and entered an order referring the Adversary Proceedings to mediation (the "Mediation") before Judge Elizabeth S. Stong, United States Bankruptcy Judge for the Eastern District of New York (the "Mediator") [ECF No. 195].

The Mediator thereafter conducted a lengthy and intense series of collective and private mediation sessions with the participating parties.

As a result of the Mediation, through the efforts of the Mediator and the agreements of the Parties in the Mediation, the Mediation was resolved successfully with the negotiation and preparation of the Settlement Agreement, which embodies the Litigation Settlement to be approved under the Plan.

The Litigation Settlement resolves the FBNK Lien Action and the Fiduciary Breach Actions, and includes certain other compromises and settlements resulting from the Settlement Agreement to be approved by the Plan. The Mediator shall remain designated to address any questions or disputes arising from, arising out of or related to the Litigation Settlement and the Settlement Agreement, subject to the supervision of the Bankruptcy Court. The terms and conditions of the Litigation Settlement and the Settlement Agreement are described in Section IV of this Disclosure Statement.

## I. Online Seller Claims and Litigation, and the Segregated Seller Fund

Several charities – Rema Hort Mann Foundation, Penumbra Foundation, The New American Cinema Group, Inc., The Shawn Carter Foundation, the UN Women National Committee UK, and Counseling In Schools, Inc. – filed pre- or post-petition lawsuits and/or asserted positions in early bankruptcy motion practice in the Case in which they asserted rights to equitable relief and/or damages relating to funds held by the Debtor which they claimed to be proceeds payable to them for items they contracted with the Debtor to sell in online auctions. [*See New American Cinema Group, Inc. v. P8H, Inc. d/b/a Paddle 8, et al.,* Index No. 651594/2020 (N.Y. Supreme Ct., N.Y. Cnty.), removed to the Bankruptcy Court as Adv. Proc. No. 20-012228; *UN Women National Comm. UK v. P8H, Inc. d/b/a Paddle 8,* Adv. Pro. No. 20-01184 (Bankr. S.D.N.Y.); and *Counseling In Schools, Inc. v. P8H, Inc., d/b/a Paddle8,* Adv. Pro. No. 20-01195 (Bankr. S.D.N.Y.) (collectively, with any similar motion objections or arguments asserted in cash collateral motion procs, the "Charity Actions").

In connection with these contentions, the Bankruptcy Court ordered the Debtor (and, later, the Trustee) to segregate from the Estate's cash on hand and hold in a separate account the amount of approximately $267,500 (since reduced with court approval to the current balance of $213,261) (the "Segregated Seller Fund"), pending further order and without prejudice to any arguments or defenses relating to the rights in, and/or ownership of, the funds.

## IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

The following is a summary of the Plan which this Disclosure Statement accompanies. This overview is qualified in its entirety by reference to the provisions of the Plan. In accordance with Section 1123(a)(1) of the Bankruptcy Code, Allowed Administrative Expense Claims, including Professional Fees, and Allowed Priority Claims are not classified under the Plan. All other Claims and Interests are classified as shown below.

A.    **Unclassified Claims**

    1.    **Administrative Expenses Other Than Professional Fees**

Administrative Expenses are those expenses and claims entitled to a priority in payment pursuant to Section 503 and 507(a)(2) of the Bankruptcy Code.

Except to the extent that a Holder of an Administrative Expense Claim, other than a Professional Fee Claim, has been paid during the Case or, with the consent of the Trustee, agrees to a different treatment that is no more favorable to such Holder, each Holder of an Allowed Administrative Expense Claim shall receive in full satisfaction, settlement, release, and discharge of its Administrative Expense Claim, an amount of Cash equal to the unpaid portion of its Allowed Administrative Expense Claim to be paid on the latest of:  (a) if such Claim is Allowed as of the Effective Date, on or as soon as practicable after the Effective Date; (b) if such Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order allowing such Administrative Expense Claim becomes a Final Order, or as soon thereafter as is reasonably practicable; (c) if not yet due and payable on the Effective Date, the date on which such Allowed Claim becomes due and payable in the ordinary course of business, or an Administrative Expense Claim; or (d) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.  Professional Fee Claims shall be treated as provided in Section III.1.B of the Plan.

    **2.    Professional Fees**

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be filed no later than twenty (20) days after the Effective Date, unless extended with the approval of the Trustee and the Committee.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules and Local Bankruptcy Rules.  The amount of the Allowed Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals when such Professional Fee Claims are Allowed by entry of an order of the Bankruptcy Court.

    **3.    Priority Claims**

Priority Claims are those claims entitled to a priority in payment pursuant to Section 507(a) of the Bankruptcy Code excluding Administrative Expenses.

Except to the extent that a Holder of a Priority Claim agrees to a less favorable treatment, each Holder of an Allowed Priority Claim shall receive in full and final satisfaction, settlement, release, and discharge of its Allowed Priority Claim, cash equal to its unpaid Allowed Priority Claim to be paid on the earliest of (a) the Effective Date, if such Claim is Allowed as of the Effective Date, (b) the date on which such Priority Claim is Allowed, or as soon thereafter as reasonably practicable, and (c) such other date as may be ordered by the Court or agreed by such Holder and the Trustee or the Plan Administrator, as the case may be.

**B.**    **Classified Claims**

1.    **Class 1 - FBNK**

Class 1 consists of the FBNK Secured Claim.

Pursuant to the Litigation Settlement and Settlement Agreement under the Plan, the FBNK Secured Claim shall be Allowed as a General Unsecured Claim in Class 6, but shall be subordinated to the rights to Distributions held by all other Allowed General Unsecured Claims until such time, if any, before or as of the closing of the Case, that such Allowed General Unsecured Claims have received Distributions satisfying their Allowed Claims in Class 6 in full.

The Class 1 Claim is impaired and will be solicited for its acceptance of the Plan.

2.    **Class 2 – Other Secured Claims**

Class 2 consists of all Other Secured Claims.

Except to the extent that a Holder of an Other Secured Claim agrees to a less favorable treatment, each Holder of an Allowed Claim in Class 2, if any, shall receive in full and final satisfaction, settlement, release, and discharge of such Claim, Cash equal to the value of the Lien on property owned by the Debtor that serves as collateral to secure such Claim, without post-petition interest, to be paid on the earliest of: (a) the Effective Date, if such Claim is an Allowed Other Secured Claim as of the Effective Date; (b) the date on which such Other Secured Claim is Allowed as a Secured Claim, or as soon thereafter as reasonably practicable, and (c) such other date as may be ordered by the Court or agreed by such Holder and the Trustee or the Plan Administrator, as the case may be.  Other Secured Claims are impaired and will be solicited for acceptance of the Plan.  The amount of any deficiency Claim held by a Holder of an Other Secured Claim (the amount of the Claim that exceeds the value, if any, of the Lien on property owned by the Debtor that serves as collateral to secure such Holder's Other Secured Claim) shall be entitled to the treatment as an Unsecured Claim under Class 6 of the Plan.  The Trustee does not believe there to be any claims in this class.

Class 2 Claims, if any, are impaired and will be solicited for the acceptances of the Plan.

3.    **Class 3 – Online Seller Claims**

a.    **Included Claims.**  Class 3 consists of the Online Seller Claims of any Persons or Entities holding Claims, as seller, for any proceeds of the sale of such Person's or Entity's property through an online auction or storefront sale conducted on the Debtor's online platform prior to the Petition Date, for which the proceeds were paid to the Debtor (and not subsequently charged back or returned to the purchaser) and not remitted by the Debtor.  Class 3 Claims are impaired.

b.      **Excluded Claims.**  Class 3 does **_not_** include:  (i) those Claims that were not the subject of timely-filed Proofs of Claim asserting entitlement to treatment as Online Seller Claims under the Online Seller Claimants' Protocol; (ii) those Claims that were listed by the Debtor in its Schedules as non-contingent, liquidated, undisputed General Unsecured Claims, and for which no Proof of Claim was timely filed by the Holders asserting entitlement to treatment as Online Seller Claims under the Online Seller Claimants' Protocol; and (iii) those Persons or Entities involved in each auction or storefront sale that was cancelled as a result of the Online Buyer's failure to remit the proceeds of the sale or where returns or chargebacks of the purchase price were obtained by or for the account of the Online Buyer.

d.      **Treatment**.  Except to the extent that a Holder of an Online Seller Claim agrees to a less favorable treatment, Pursuant to the settlement of controversies relating to Online Seller Claims as provided in the Plan, and except to the extent that a Holder of an Online Seller Claim agrees to a less favorable treatment, each Holder of an Allowed Claim in Class 3 shall receive in full and final satisfaction, settlement, release, and discharge of such Claim, without pre- or post-petition interest, pursuant to the Online Seller/Auction Consignor Claim Settlement under the Plan, on the earliest of  (a) the Effective Date, if such Claim is Allowed as of the Effective Date, (b) the date on which such Claim is Allowed, or as soon thereafter as reasonably practicable, and (c) such other date as may be ordered by the Court or agreed by such Holder and the Trustee or the Plan Administrator, as the case may be: (i) such Holder's Pro Rata share of the Segregated Seller Fund, in Cash; and (ii) an additional Distribution, in Cash, from the proceeds of the Plan Administration Assets in the same percentage as the Distributions to Allowed General Unsecured Claims under Class 6.  Such Allowed Claim Class 3 Claims are impaired and will be solicited for their acceptances of the Plan.

In exchange for receiving a Pro Rata share of the Segregated Seller Fund under the Plan pursuant to the Online Seller/Auction-Consignor Settlement, any Holder of an Online Seller Claim who remains in possession of property subject to a sale that was completed prior to the Petition Date shall be required to relinquish and surrender possession of the property to the Online Buyer that purchased such property if the Online Buyer elects under the Plan to receive the property purchased, provided the Online Buyer shall be responsible for the payment of all shipment and delivery costs of the subject property.

If the contract between the Debtor, on the one hand, and such Online Buyer or Online Seller, on the other hand, provided for the Debtor to pay the shipment and delivery costs of the subject property, such contract is deemed rejected as of the Effective Date as provided in Section IV.5 of the Plan regarding the treatment of Online Buyer Claims.

*In order to confirm and receive the treatment provided under Section IV.3 of the Plan, each Holder of an Online Seller Claim must timely return a Ballot that (i) identifies or confirms each and every artwork or other item of property that was the subject of a sale on the Debtor's online platform for which such Holder did not receive payment, and (ii) states the current location of each such item of property or indicates that such Holder has disposed of any or all such items.  The failure of such Holder to provide the requested information shall result in the automatic reclassification and treatment of such Holder's Online Seller Claim as a General Unsecured Claim.*

In the event that the Holder of an Online Buyer Claim elects to receive an Allowed General Unsecured Claim in the amount of the purchase amount paid by such Claimant, without post-petition interest, and not to retrieve and collect the property, the Holder of the corresponding Allowed Online Seller Claim that previously sold the property to such Online Buyer shall still receive the treatment provided under Class 3 of the Plan, notwithstanding the continued possession of any property by such Holder of the Allowed Online Seller Claim.

Class 3 Claims are impaired and will be solicited for their acceptances of the Plan.

4.      **Class 4 – Artist-Consignor Claims**

a.      **Included Claims.**  Class 4 consists of the Claims **"** means the General Unsecured Claim held or asserted by an artist as consignor, or an agent or representative of an artist as consignor, who entered into a relationship with the Debtor to sell property online, whether through a timed auction or a storefront sale, whose consignment(s) may be subject to Section 12.01 of NYACAL for any proceeds of the sale of such artist's property through an online auction or storefront sale conducted on the Debtor's online platform prior to the Petition Date, for which the proceeds were paid to the Debtor (and not subsequently charged back or returned to the purchaser) and not remitted by the Debtor, and for attorney's fees, costs and expenses pursuant to NYACAL.

Class 4 Claims are impaired.

b.      **Excluded Claims.**  Class 4 does **_not_** include:  (i) those Claims that were not the subject of timely-filed Proofs of Claim asserting entitlement to treatment as Artist-Consignor Claims under the Online Seller Claimants' Protocol; (ii) those Claims that were listed by the Debtor in its Schedules as non-contingent, liquidated, undisputed General Unsecured Claims, and for which no Proof of Claim was timely filed by the Holders asserting entitlement to treatment as Artist-Consignor Claims under the Online Seller Claimants' Protocol; (iii) those Persons or Entities involved in each auction or storefront sale that was cancelled as a result of the Online Buyer's failure to remit the proceeds of the sale or where returns or chargebacks of the purchase price were obtained by or for the account of the Online Buyer; and (iv) those Claims that may be held or asserted by any artist, or agent or representative of an artist that are the subject of timely-filed Proofs of Claim, but where the artist no longer held legal title or any ownership interest in and to the consigned property prior to the sale of such property through an online auction or storefront sale conducted on the Debtor's online platform prior to the Petition Date.

c.      **Treatment.**  Except to the extent that a Holder of an Artist-Consignor Claim Pursuant to the settlement of controversies relating to Artist-Consignor Claims as provided in the Plan, and except to the extent that a Holder of an Artist-Consignor Claim agrees to a less favorable treatment, each Holder of an Allowed Claim in Class 4 shall receive in full and final satisfaction, settlement, release, and discharge of such Claim, without pre- or post-petition interest, on the earliest of (a) the Effective Date, if such Claim is Allowed as of the Effective Date, (b) the date on which such Claim is Allowed, or as soon thereafter as reasonably practicable, and (c) such other date as may be ordered by the Court or agreed by such Holder and the Trustee or the Plan Administrator, as the case may be: (i) such Holder's Pro Rata share of the Segregated Seller Fund,

in Cash; (ii) an additional Pro Rata Distribution, in Cash, from the proceeds of the Plan Administration Assets in an amount equal to the same percentage as Distributions to Allowed Unsecured Claims in Class 6; and (iii) a second Pro Rata Distribution on account of such Holder's claim for entitlement under NYACAL to attorney's fees, costs, expenses, and/or monetary penalties. Class 4 Claims are impaired and will be solicited for their acceptances of the Plan. Class 4 Claims are impaired and will be solicited for their acceptances of the Plan.

In exchange for receiving a Pro Rata share of the Segregated Seller Fund under the Plan, any Holder of an Artist-Consignor Claim who remains in possession of property subject to a sale that was completed prior to the Petition Date shall be required to relinquish and surrender possession of the property to the Online Buyer that purchased such property if the Online Buyer elects under the Plan to receive the property purchased, provided the Online Buyer shall be responsible for the payment of all shipment and delivery costs of the subject property.

If the contract between the Debtor, on the one hand, and either of such Online Buyer or Artist-Consignor, on the other hand, provided for the Debtor to pay the shipment and delivery costs of the subject property, such contract is deemed rejected as of the Effective Date as provided in Section IV.5 of the Plan regarding the treatment of Online Buyer Claims.

*In order to confirm and receive the treatment provided under Section IV.4 of the Plan, each Holder of an Artist-Consignor Claim must timely return a Ballot that (i) identifies or confirms each and every artwork or other item of property that was the subject of a sale on the Debtor's online platform for which such Holder did not receive payment, and (ii) states the current location of each such item of property or indicates that such Holder has disposed of any or all such items. The failure of such Holder to provide the requested information shall result in the automatic reclassification and treatment of such Holder's Artist-Consignor as a General Unsecured Claim.*

In the event that the Holder of an Online Buyer Claim elects to receive an Allowed General Unsecured Claim in the amount of the purchase amount paid by such Claimant, without post-petition interest, and not to retrieve and collect the property, the Holder of the corresponding Allowed Artist-Consignor Claim that previously sold the property to such Online Buyer shall still receive the treatment provided under Class 3 of the Plan, notwithstanding the continued possession of any property by such Holder of the Allowed Artist-Consignor Claim.

5.    **Class 5 – Online Buyer Claims**

a.    **Included Claims**.  Class 5 consists of the Online Buyer Claims of any Person or Entity holding a Claim, as buyer, to receive any as-yet undelivered property sold to such Person or Entity through an online auction or storefront sale conducted on the Debtor's online platform prior to the Petition Date.

Class 5 Claims are impaired.

b.    **Excluded Claims**.  Class 5 does **_not_** include the Claims of Persons or Entities that filed Proofs of Claim, as buyers, that were involved in sales which were cancelled as a result of

such Persons' or Entities' failure to remit the proceeds of the sales or where chargebacks or returns of the purchase price were initiated by such Persons or Entities.

       c.     **Treatment**.  Except to the extent that a Holder of an Online Buyer Claim agrees to a less favorable treatment, each Holder of an Allowed Claim in Class 5 shall receive in full and final satisfaction, settlement, release, and discharge of such Claim, without pre- or post-petition interest, on the earliest of (a) the Effective Date, if such Claim is Allowed as of the Effective Date, (b) the date on which such Claim is Allowed, or as soon thereafter as reasonably practicable, and (c) such other date as may be ordered by the Court or agreed by such Holder and the Trustee or the Plan Administrator, as the case may be: (i) the right to receive the property purchased by such Claimant, provided that such Holder shall be responsible for the payment of all delivery and shipment costs; or (ii) an Allowed General Unsecured Claim in the amount of the purchase amount paid by the Claimant, without pre- or post-petition interest, a Pro Rata Distribution, in Cash, from the proceeds of the Plan Administration Assets in the same percentage as the Distributions to Allowed General Unsecured Claims under Class 6.  Class 5 Claims are impaired and will be solicited for their acceptances of the Plan.

       Each Holder of an Online Buyer Claim will have the ability to elect on the ballot to accept or reject the Plan and to elect whether such Holder prefers the right to receive either (i) the property purchased by such Claimant, provided that such Holder shall be responsible for the payment of all shipment and delivery costs (notwithstanding whether such Claimant previously paid such amounts to the Debtor); or (ii) an Allowed General Unsecured Claim in the amount of the purchase amount paid by the Claimant, without post-petition interest.

       All pre-petition contracts between the Debtor and Online Buyers, including, without limitation, any purchaser contracts that obligate the Debtor to bear the costs of collection, packing, insurance, transit, shipping, import/export and/or delivery of any purchased property to the Online Buyers, are deemed rejected by the Plan.  Any Person or Entity that filed a Proof of Claim, as a buyer, that was involved in a sale which was cancelled as a result of such Person's or Entity's failure to remit the proceeds of the sale or where such Person or Entity initiated a chargeback resulting in the return of the purchase price will not be treated as a creditor under Class 5 or the Plan and will not receive a ballot.  Class 5 Claims are impaired and will be solicited for their acceptances of the Plan.

       If the Holder of an Online Buyer Claim elects to receive the property purchased by such Holder (at such Holder's sole cost and expense), but the property is no longer in the possession of the Online Seller or Artist-Consignor of the property such that it cannot be made available for retrieval, such Holder shall automatically receive an Allowed General Unsecured Claim in the amount of the purchase amount paid by such Claimant, without post-petition interest, notwithstanding any election made by such Holder.

       Class 5 Claims are impaired and will be solicited for their acceptance of the Plan.

       6.     **Class 6 – General Unsecured Claims**

Class 6 includes all General Unsecured Claims, including Insider Unsecured Claims. Unsecured Claims are Claims that are not secured by a valid Lien or security interest or as to which there is no collateral securing a valid Lien or security interest. For the avoidance of doubt, the Insider Unsecured Claims will be subordinated to all other General Unsecured Claims and shall not receive a Distribution. Class 6 Claims are impaired.

Except to the extent that a Holder of a General Unsecured Claim agrees to a less favorable treatment, each Holder of an Allowed Claim in Class 6 other than FBNK or Holders of Insider Unsecured Claims, shall receive a Pro Rata Distribution, in Cash, on account of such Allowed General Unsecured Claim, in full and final satisfaction, settlement, release, and discharge of such Claim, without pre- or post-petition interest, on the earliest of (a) the Effective Date, if such Claim is Allowed as of the Effective Date, (b) the date on which such Claim is Allowed, or as soon thereafter as reasonably practicable, and (c) such other date as may be ordered by the Court or agreed by such Holder and the Trustee or the Plan Administrator, as the case may be.

Pursuant to the Litigation Settlement and Settlement Agreement under the Plan, the FBNK Claims and the Insider Unsecured Claims shall be Allowed as General Unsecured Claims in Class 6, but shall be subordinated to the rights to Distributions held by all other Allowed General Unsecured Claims until such time, if any, before or as of the closing of the Case, that such Allowed General Unsecured Claims have received Distributions satisfying their Allowed Claims in Class 6 in full.

Class 6 Claims are impaired and will be solicited for the acceptances of the Plan.

7.    **Class 7 – Interests**

Class 7 consists of all Interests in the Debtor of any kind or nature held by any Persons or Entities. Class 7 Interests are impaired.

On the Effective Date, all Interests in Class 7 shall be discharged, cancelled, released, and extinguished as of the Effective Date, and the holders of such Interests shall neither receive any Distributions nor retain any property under the Plan for or on account of any such Interests. Class 7 Interests are deemed to have rejected the Plan and will not be solicited for their acceptances of the Plan.

Because holders of Interests in Class 7 do not retain any property under the Plan on account of such Interests, Class 7 is deemed to have rejected the Plan under Section 1126(g) of the Bankruptcy Code.

# V
# SETTLEMENTS TO BE APPROVED IN THE PLAN

A.    **General Settlement of Claims and Interests**

 Unless otherwise set forth in the Plan, pursuant to Section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and

other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan, including with respect to issues related to the value of the Debtor's unencumbered property, or relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Claim or Interest, or any Distribution to be made on account of such Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Equity Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate, and Holders of Claims and Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Plan Administrator may compromise and settle Claims against the Debtor and its Estate and Claims against other Entities.

B.    **Litigation Settlement**

In consideration of the Litigation Settlement resulting from the Mediation, covering actual and potential disputes between and among the Trustee and the Committee (on behalf of the Estate), on one hand,  and the Settling Parties on the other hand, the Plan operates as approval of the Settlement Agreement annexed as Exhibit 1 pursuant to Section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 on the terms of such Litigation Settlement Agreement, including its resolution of the FBNK Lien Avoidance Action, the Fiduciary Breach Actions, the Insider Unsecured Claims and the compromises of other claims and matters covered by that Settlement. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Litigation Settlement, as well as a finding by the Bankruptcy Court that such settlement is Debtor, the Trustee, the Committee, the Settling Parties, the Estate, and Holders of Claims and Interests, and is fair, equitable, and reasonable.

Under Federal Rule of Bankruptcy Procedure 9019, any settlement of claims of or against the Debtor is subject to approval by the Bankruptcy Court. Further, because the settlement is an essential element of the Plan, approval of the settlement by the Bankruptcy Court is a necessary precondition to confirmation and consummation of the Plan. In *TMT Trailer Ferry*, the U.S. Supreme Court outlined the standards for courts to use in evaluating proposed settlements by debtors in bankruptcy.  The key function of courts in that circumstance, the Court explained, is "to compare the terms of the compromise with the likely rewards of litigation." *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 425 (1968). Following the Supreme Court's decision in *TMT Trailer Ferry*, courts in the Second Circuit have outlined certain factors to be considered by courts evaluating whether to approve settlements proposed in bankruptcy cases and proceedings:

(1)    The balance between the litigation's possibility of success and the settlement's future benefits;

(2)    The likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment;

(3)    "[T]he paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement";

(4)    Whether other parties in interest support the settlement;

(5)    The "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement;

(6)    "[T]he nature and breadth of releases to be obtained by officers and directors"; and

(7)    "[T]he extent to which the settlement is the product of arm's length bargaining."

See In re Iridium Operating LLC, 478 F.3d 452, 462 (2d Cir. 2007).

The following paragraph summarizes the Trustee's and the Committee's evaluation of the settlement under the foregoing factors to be considered by the Bankruptcy Court in evaluating the settlement and the reasons for the Trustee and the Committee's belief that, under those factors, the settlement should be approved by the Bankruptcy Court as fair, reasonable and in the best interest of the Debtor's Estate.  The Trustee and the Committee understand that the Bankruptcy Court must rule on whether the *TMT Trailer* factors are satisfied.  For purposes of this Disclosure Statement, they provide this analysis for the limited purpose of assisting creditors in understanding the Trustee and the Committee's rationale for putting forward the Plan.

First, the settlement results in an immediate payment to creditors by the end of 2021, whereas litigation would take years to complete with prolonged discovery and lengthy motion practice and potential appeals.  Second, the settlement results in an immediate payment to creditors as a result of the Mediation, whereas even if the litigation were successful, the Trustee and the Committee would have to spend time and expense to collect judgments from defendants located around the world.  Third, the Committee, the main creditor group in this Case, supports the settlement.  Fourth, all the parties were represented by sophisticated, experienced counsel, and the Mediation was conducted by an experienced Bankruptcy Judge who served as the Mediator and the Case is being overseen by a judge with decades of bankruptcy experience.  Fifth, the releases satisfy the jurisprudence in the Second Circuit.  Finally, the settlement is a product of arm's length bargaining during a Court ordered mediation.  Accordingly, the Trustee and the Committee believe the settlement meets the standards under *Iridium* for approval of the Litigation Settlement under Bankruptcy Rule 9019 and Section 1123 of the Bankruptcy Code.

### C.    Settlement of Online Seller Claims, Artist-Consignor Claims and Charity Actions

In consideration of actual or potential disputes between the Trustee (on behalf of the Estate), on one hand, and the Holders of Online Seller Claims and Artist-Consignor Claims, on the other hand, the Plan operates as a compromise and settlement pursuant to Section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 of all matters relating to debtor-creditor and/or principal-agent relationships, if and as applicable, between the Debtor's Estate, on one hand, and

such Holders, on the other hand, and the allowance, treatment and priority of Online Seller Claims. All Allowed Online Seller Claims and Allowed Artist-Consignor Claims shall be treated as provided in Classes 3 and 4, respectively. Online Seller Claims and Artist-Consignor Claims, although unsecured in nature, differ from General Unsecured Claims in that they hold potential rights that could, if adjudicated in their favor, result in different treatment from all other General Unsecured Claims.

The proposed settlement of the Online Seller Claims and Artist-Consignor Claims, and the resolution of the Charity Actions, are subject to approval by the Bankruptcy Court. The same standards described in Section IV.A above, under the *TMT Trailer Ferry* and *Iridium* cases, apply to the consideration of these settlements. The Trustee and the Committee believe that the treatment of the Claims in Classes 3 and 4, including the resolution of the Charity Actions, satisfies those standards.

With respect to Class 3 Online Seller Claims, the Holders were principals (typically charitable organizations who had received the items from donors) for whom the Debtor acted as agent for the sale of property. The proposed treatment will avoid time-consuming and costly proceedings to adjudicate outstanding legal and factual issues concerning the status and priority of the Claims, and whether those Holders are entitled to the benefit of a constructive trust or other relief relating to the proceeds of property sold at online auctions by the Debtor on their behalf.

A determination of the nature of the parties' rights and property interest would be conducted under New York law. New York law requires the proponent of a constructive trust to establish four elements: (1) a confidential or fiduciary relation between Debtor and parties claiming benefit of such trust, (2) a promise, express or implied, (3) a transfer made in reliance on that promise, and (4) unjust enrichment. Here, certain Online Sellers have argued that further judicial fact-finding would support recognition of these factors, including as a result of Debtor's status as an auctioneer. Notwithstanding that position, however, bankruptcy jurisprudence also disfavors the imposition constructive trusts in order to not penalize other parties in interest. A settlement of the unadjudicated controversies between the Estate, on one hand, and the Online Sellers, on the other hand, avoids the uncertainty, time and expense associated the resolution of the claims. Thus, the Plan embodies, for Class 3, a treatment of Online Seller Claims that will provide them (and the Artist-Consignors in Class 4) with their Pro Rata shares of the Segregated Seller Fund, plus an additional distribution to the Online Sellers as Unsecured Creditors in the percentage amount of the Distribution to be made to Allowed General Unsecured Claims in Class 6.

With respect to the six Artist-Consignor Claims in Class 4, the Holders are entities who purported to act as agents for artists whose property was consigned to the Debtor for sale. In asserting entitlements to online auction sale proceeds, several of these creditors offered the same equitable and legal arguments of entitlement to the sale proceeds as did the Online Sellers. Thus, the same rationale for avoiding protracted litigation of these legal and factual issues applies.

In addition, each Holder of Artist-Consignor Claim asserted to the Trustee a colorable, preliminary evidentiary basis from which to conclude that the artist(s) who created the consigned property retained a title interest therein during the consignment to the Debtor (despite having been

represented in the consignment transactions by the charitable organization for whose benefit the works were to be auctioned). Accordingly, those Holders have asserted that such artists are protected by NYACAL, as a result of which, they contend, the Holders are statutorily protected as to the holding of the artist-consignor sale proceeds in trust, subject to the penalties set forth in the New York Estates, Powers and Trust Law.

A settlement of the unadjudicated controversies between the Estate, on one hand, and the Artist-Consignors, on the other, avoids the uncertainty, time and expense associated with the resolution of these fact-specific contentions. Thus, the Plan embodies, for Class 4, a treatment of Artist-Consignor Claims that will provide them (and Online Sellers in Class 3) with their Pro Rata shares of the Segregated Seller Fund, plus an additional distribution to the Artist-Consignors as Unsecured Creditors in the percentage amount of the Distribution to be made to Allowed General Unsecured Claims in Class 6, with a second Distribution in the same amount on account of their claims to attorneys' fees, costs, and expenses under NYACAL.

# VI
# MEANS FOR IMPLEMENTATION OF PLAN

## A.    Implementation of the Litigation Settlement and Settlement Agreement

The Mediator shall remain designated to address any questions or disputes arising from, arising out of or related to the Litigation Settlement and the Settlement Agreement, subject to the supervision of the Bankruptcy Court. The Mediator shall have the procedural powers and administrative rights conferred by Local Bankruptcy Rule 9019-1 and General Order M-452 of the Bankruptcy Court date June 28, 2013

## B.    Plan Administration

### 1.    The Plan Administrator

The Committee, in consultation with the Trustee, shall select the Plan Administrator, who shall be vested on the Effective Date with possession of the Plan Administration Asset pursuant to the terms of the Confirmation Order and the Plan. The Plan Administrator will be disclosed prior to the Confirmation Hearing in a plan supplement to be filed with the Court.

### 2.    Rights and Powers of the Plan Administrator

The Plan Administrator shall, in addition to any powers and authority specifically set forth in other provisions of the Disclosure Statement and Plan, be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (ii) establish, as necessary, disbursement accounts for the deposit and distribution of all amounts distributed under the Plan, (iii) make Distributions in accordance with the Plan, (iv) object to Claims, as reasonably appropriate, (v) employ and compensate professionals to represent the Plan Administrator with respect to the Plan Administrator's responsibilities, (vi) assert any of the Debtors' claims, Causes of Action, rights of setoff, or other legal or equitable defenses, and (vii) exercise such other powers as may be vested in the Plan Administrator by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Plan Administrator to be

necessary and proper to implement the provisions of the Plan. The Plan Administrator may take any and all actions deemed reasonably necessary or appropriate to defend against any Claim, including, without limitation, the right to: (a) exercise any and all judgment and discretion with respect to the manner in which to defend against or settle any Claim, including, without limitation, the retention of professionals, experts and consultants; and (b) in accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, and without any further notice to or action, order, or approval of the Bankruptcy Court, compromise and settle Claims against the Debtor or the Estate and/or pursue, compromise and settlement any Claims of the Debtor or the Estate against other Entities.

3. **Administration, Liquidation and Distribution of Proceeds of the Plan Administration Assets**

After the Effective Date, the Plan Administrator shall be empowered to administer, sell, compromise, liquidate and/or abandon the Plan Administration Assets as promptly as practicable in the discretion of the Plan Administrator, consistent with the provisions of the Plan, the Confirmation Order, the Bankruptcy Code and the Bankruptcy Rules. Pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code and shall have all of the rights and powers of a trustee under Sections 706 and 1104 of the Bankruptcy Code, the Plan Administrator shall be treated as the representative of the Estate to commence and prosecute to conclusion, whether by judgment or settlement, all proceedings on Causes of Actions, and to continue previously-commenced adversary proceedings and/or claim objections pending on the Effective Date.

4. **Compensation of the Plan Administrator and Professionals, and Final Distribution of Any Remaining Proceeds of Plan Administration Assets**

The Plan Administrator shall be entitled to reasonable compensation for services rendered pursuant to the Plan, at the Plan Administrator's current standard hourly rate as of the Effective Date, without further order and subject to a right periodic increase in the ordinary course, and reimbursement of actual, necessary costs and expenses. The of reasonable fees and expenses incurred by the Plan Administrator on or after the Effective Date (including, without limitation, reasonable attorneys' and professional fees and expenses) shall be paid from the proceeds of the Plan Administration Assets including, without limitation, recoveries from any Causes of Action that the Plan Administrator may pursue or the proceeds of assets that the Plan Administrator may sell for value. At the completion of the administration and liquidation of the Plan Administration Assets, any proceeds held by the Plan Administrator at the closing of the Case shall be distributed Pro Rata to Holders of Class 3 Online Seller Claims, Class 4 Artist-Consignor Claims and Class 6 General Unsecured Claims.

5. **Engagement and Compensation of Professionals for the Plan Administrator**

After the Effective Date, the Plan Administrator may employ professionals to assist the Plan Administrator in fulfilling his/her/its duties.

C. **Cancellation of Securities and Agreements**

35

On the Effective Date, except as otherwise specifically provided for in the Plan: (a) the obligations of the Debtor under any certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtor giving rise to any Claim or Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligations of the Debtor that are specifically reinstated or reissued pursuant to the Plan), shall be cancelled as to the Debtor, and the Debtor and the Trustee shall not have any continuing obligations thereunder; and (b) the obligations of the Debtor pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or certificate of incorporation or similar documents governing certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtor (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligations of the Debtor that are specifically reinstated or reissued pursuant to the Plan) shall be released; **provided, however**, notwithstanding confirmation of the Plan or the occurrence of the Effective Date, any agreement that governs the rights of the Holder of an Allowed Claim shall continue in effect solely for purposes of allowing such Holders to receive Distributions under the Plan.

D.     **Post-Confirmation Employee Issues**

Pursuant to Section 1129(a)(5) of the Bankruptcy Code, the Trustee will disclose in the Plan Supplement the identity and affiliations of any person proposed to assist the Trustee and/or the Plan Administrator in the wind down of the Debtor's Estate following confirmation of the Plan. To the extent any such Person is an "insider" of the Debtor under the Bankruptcy Code, the Trustee will disclose the nature of any compensation to be paid to such Person. Each such Person shall serve from and after the Effective Date pursuant to the terms of the Plan to assist the Plan Administrator.

**VII**
**PROVISIONS GOVERNING DISTRIBUTIONS**

A.     **Distributions in Respect of Allowed Claims and Interests**

Except as otherwise provided in the Plan, Distributions with respect to Allowed Claims and Interests shall be made by the Plan Administrator as soon as reasonably practicable after the Effective Date in such officer's discretion, consistent with the provisions of the Plan and the Confirmation Order.

B.     **Timing and Calculation of Amounts to Be Distributed**

Unless otherwise provided in the Plan, on the Effective Date, or as soon as reasonably practicable thereafter (or if a Claim or Interest is not an Allowed Claim or Interest on the Effective Date, on the date that such Claim becomes an Allowed Claim or Interest), each Holder of an Allowed Claim and Interest shall receive the full amount of the Distributions that the Plan provides for Allowed Claims and Interests in each applicable Class and in the manner provided

in the Plan.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims or Interests, distributions on account of any such Disputed Claims or Interests shall be made pursuant to the provisions set forth in Article VII of the Plan.  Except as otherwise provided in the Plan, Holders of Claims and Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.  The Plan Administrator shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the Distribution Record Date.

C.      **Distribution Agent**

Except as otherwise provided in the Plan, all distributions under the Plan shall be made by the Distribution Agent on the Effective Date or as soon as reasonably practicable thereafter.  The Distribution Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

D.      **Rights and Powers of Distribution Agent**

1.      **Powers of the Distribution Agent**

The Distribution Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all Distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

2.      **Expenses Incurred on or After the Effective Date**

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Distribution Agent on or after the Effective Date (including taxes) and any reasonable compensation and out-of-pocket expense reimbursement claims (including reasonable, actual, and documented attorney and/or other professional fees and expenses) made by the Distribution Agent shall be paid in Cash by the Estate.

3.      **Delivery of Distributions, in General**

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be made to Holders of record as of the Distribution Record Date by the Distribution Agent, as appropriate:  (a) to the signatory set forth on any Proof of Claim or Proof of Interest filed by such Holder or other representative identified (or at the last known addresses of such Holder if no Proof of Claim or Proof of Interest is filed or if the Debtor has not been notified in writing of a change of address); (b) at the addresses set forth in any written notices of address changes delivered to the Distribution Agent, as appropriate, after the date of any related Proof of Claim or Proof of

Interest; or (c) on any counsel that has appeared in the Case on the Holder's behalf.  Subject to Article VII of the Plan, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan. The Trustee and the Distribution Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan except for fraud, gross negligence, or willful misconduct.

4. **Manner of Payment**

At the option of the Distribution Agent, any Cash payment to be made under the Plan may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

E. **Undeliverable Distributions and Unclaimed Property**

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Distribution Agent has determined the then current address of such Holder, at which time such distribution shall be made to such Holder without interest; provided, however, that such distributions shall be deemed unclaimed property under Section 347(b) of the Bankruptcy Code at the expiration of six months from the later of (a) the Effective Date and (b) the date of the distribution.  After such date, all unclaimed property or interests in property shall revert to the Estate automatically and without need of a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state laws of escheat, abandoned or unclaimed property to the contrary) for further Distribution by the Plan Administrator, and the Claim of any Holder to such property or interest in property shall be discharged of and forever barred.  The Plan Administrator shall have authority to donate any remaining funds to an art-related charity instead of distributing to Holders of Allowed Claims if, in the discretion of the Plan Administrator, the administration and distribution of such remaining funds would be burdensome and not cost-effective.

F. **Minimum Distributions**

It is the intention of the Trustee and the Committee that Distributions should be made to all Holders of Allowed Claims under the Plan, except where impractical based on small claim amounts and resulting small distribution amounts. Accordingly, and notwithstanding any other provision of the Plan to the contrary: (a) the Distribution Agent shall not be required to make Distributions or payments of fractions of dollars, and whenever any Distribution of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole dollar (up or down) with half dollars being rounded down and (b) the Distribution Agent, in his or her discretion, may determine not to make a Distribution on account of any Allowed Claim  Holders of Allowed Claims for which such distribution would be unduly burdensome and costly to make, in which case such Distribution shall revert to the Plan Administration Assets for further administration pursuant to the Plan.

G. **Compliance Matters**

In connection with the Plan, to the extent applicable, the Plan Administrator and the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.

## H.    **No Post-Petition or Default Interest on Claims**

Unless otherwise specifically provided for in the Plan or the Confirmation Order, and notwithstanding any other documents that may govern or purport to govern the Debtor's prepetition indebtedness to the contrary, (1) post-petition and/or default interest shall not accrue or be paid on any Claims, and (2) no Holder of a Claim shall be entitled to:  (a) interest accruing on or after the Petition Date on any such Claim; or (b) interest at the contract default rate, as applicable.

## I.    **Allocation Between Principal and Accrued Interest**

Except as otherwise provided in the Plan, the aggregate consideration paid to Holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to the interest, if any, on such Allowed Claim accrued through the Petition Date.

## J.    **Setoff and Recoupment**

Unless otherwise provided in the Plan or the Confirmation Order, the Plan Administrator, pursuant to the Bankruptcy Code (including Bankruptcy Code Section 553), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may set off against or recoup any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any claims, rights, and Causes of Action of any nature that the Trustee or Plan Administrator, as applicable, may hold against the Holder of such Allowed Claim, to the extent such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled as of the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Trustee or the Plan Administrator of any such claims, rights, and Causes of Action that the Trustee or Plan Administrator may possess against such Holder.  In no event shall any Holder of Claims be entitled to set off or recoup any such Claim against any claim, right, or Cause of Action of the Trustee or Plan Administrator, as applicable, unless such Holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff or recoupment on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff or recoupment pursuant to Section 553 of the Bankruptcy Code or otherwise.

K.     **Applicability of Insurance Policies**

        Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of an applicable Insurance Policy.  Unless otherwise provided in the Plan, the Plan shall not constitute and shall not be deemed a waiver of any Cause of Action that the Debtor, the Trustee, the Plan Administrator, or any Person or Entity may hold against any other Person or Entity, including insurers under any policies of insurance, nor shall anything contained in the Plan constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## VIII
## RESOLUTION OF CLAIMS OBJECTIONS

A.     **Objections to Claims and Interests**

        From and after the Effective Date, the Plan Administrator shall have the exclusive right to object to any and all Claims and Interests.  Any objections to Claims and Interests shall be filed and served no later than thirty (30) days following the Effective Date or such later date as may be established by the Court after notice and hearing.

B.     **Settlement of Disputed Claims and Interests**

        Notwithstanding the requirements that may be imposed by Bankruptcy Rule 9019, from and after the Effective Date, the Plan Administrator shall have the exclusive authority to settle or compromise any objections or proceedings relating to the allowance of Claims or Interests on its behalf as and to the extent deemed prudent and reasonable without further review or approval of the Bankruptcy Court and without the need to file a formal objection.  From and after the Confirmation Date, all objections to Claims or Interests shall be litigated to a Final Order except to the extent that the Plan Administrator elects to withdraw any such objection or the Plan Administrator and the claimant or interest holder elect to compromise, settle, or otherwise resolve any such objection, in which event they may settle, compromise, or otherwise resolve any Disputed Claim or Disputed Interests without approval of the Bankruptcy Court.

C.     **No Distributions Pending Allowance**

        Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or Distribution provided hereunder shall be made on account of the disputed portion of such Claim until the disputed portion of such Claim becomes an Allowed Claim.  No Distribution shall be made on account of any Disputed Interest unless and until such Disputed Interest becomes an Allowed Interest.

## IX
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    **Assumption and Rejection of Executory Contracts and Unexpired Leases**

Except as otherwise provided in the Plan, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, the Plan shall serve as a motion under Sections 365 and 1123(b)(2) of the Bankruptcy Code, and as of the Effective Date, all executory contracts and unexpired leases governed by Section 365 of the Bankruptcy Code to which the Debtor is a party, including, without limitation, all purchaser contracts between the Debtor and Online Buyers entered into prior to the Petition Date, are hereby rejected, except for any executory contract or unexpired lease that (1) previously has been assumed or rejected by the Debtor or the Trustee in the Case; (2) previously expired or terminated pursuant to its own terms; (3) is specifically identified on the Schedule of Rejected Contracts and Leases to be included in the Plan Supplement (if any); or (4) is the subject of a separate motion to assume or reject such executory contract or unexpired lease filed by the Trustee under Section 365 of the Bankruptcy Code prior to the Effective Date.

B.    **Rejection Damage Claims**

Any and all Claims for damages arising from the rejection of an executory contract or unexpired lease must be filed with the Bankruptcy Court in accordance with the terms of the Final Order authorizing such rejection, but in no event later than the first Business Day following thirty (30) calendar days after the later of the Effective Date or the date on which the Bankruptcy Court enters an order authorizing the rejection of the contract giving rise to any such Claim, unless a different time has been established by the Bankruptcy Court.  In the case of executory contracts or unexpired leases rejected by the Plan, including in the Schedule of Rejected Contracts and Leases, the Confirmation Order shall serve as the Final Order authorizing rejection of such executory contracts and unexpired leases.  Any Claims for damages arising from the rejection of an executory contract or unexpired lease that are not filed within such time period will be automatically disallowed and forever barred from assertion against the Debtor and its Estate.  All Allowed Claims arising from the rejection of executory contracts or unexpired leases shall be treated as Class 6 General Unsecured Claims, except that the rejection of an contracts between the Debtor and any Online Sellers, Artist-Consignors and Online Buyers shall be treated as provided for Classes 4 and 5 under the Plan.

**X**
**EFFECT OF CONFIRMATION OF PLAN**

A.    **Termination of Corporate Existence**

The Debtor will be deemed liquidated, and its corporate existence shall cease on and as of the Effective Date.  The Plan Administrator shall dissolve the Debtor and shall complete the liquidation and winding-up of its affairs, in accordance with the Bankruptcy Code and applicable non-bankruptcy law.

B.    **Vesting of Assets**

On the Effective Date, all Assets and property in the Estate including all Avoidance Actions and Causes of Action, with the exception of the Segregated Seller Fund, shall vest in the Plan Administrator, free and clear of all Liens, Claims, charges, or other encumbrances of any nature, except to the extent otherwise provided by the Plan.

C.    **No Discharge of the Debtor**

Pursuant to Section 1141(d) of the Bankruptcy Code, because the Debtor will be liquidated under the Plan, the Plan does not operate as a discharge of Claims and Interests against the Debtor.

D.    **Releases.**

A.    **Releases by the Debtor, the Trustee, the Estate and the Committee**. To the maximum extent permitted by applicable law, pursuant to Section 1123(b)(3) of the Bankruptcy Code, for good and valuable consideration, effective as of the Effective Date, the Debtor, the Trustee for herself and on behalf of the Estate and any Person or Entity claiming through, on behalf of, or for the benefit of the Debtor, the Trustee, the Estate, the Committee, and the members of the Committee shall be deemed to have released and discharged and be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged all of the Released Parties of and from any and all Claims or Causes of Action (including, without limitation, any Claims or Causes of Action asserted or that could have been asserted on behalf of the Debtor derivatively under applicable law by the Debtor's current and former shareholders and creditors against the Debtor's current and former officers and directors for breach of duties of care, loyalty and good faith) existing as of the Effective Date, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, including, without limitation, claims arising in, related to or asserted in the FBNK Lien Avoidance Action, the FBNK Breach Actions, the Avoidance Actions or in the Chapter 11 case that such Person or Entity would have been legally entitled to assert (whether individually or collectively), based on, relating to, or arising from, in whole or in part, directly or indirectly, in any manner whatsoever, the Debtor, the Trustee, and the Committee the assets, liabilities, operations or business of the Debtor, the Case, the purchase, sale, cancellation or issue of any security of the Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of the Claims and Interests before or during the Case, the Disclosure Statement, the Plan, the Plan Supplement (if any) or any related agreements, instruments, or other documents executed to implement and/or consummate the Plan; **provided further that** this release shall not apply to post-Effective Date obligations arising under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement (if any)) executed to implement and/or consummate the Plan, **and provided further that** this release shall not limit the liability, if any, of any professionals to their clients pursuant to applicable law.

B.    **Releases by Creditors and Others to the Debtor, the Trustee, the Estate, the Committee and the Released Parties**. To the maximum extent permitted by applicable law, as of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Plan Supplement (if any), and the Settlement Agreement, for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the liquidation of the Debtor and the implementation of the Plan

and Settlement Agreement, and except as otherwise provided in the Plan, in the Confirmation Order, or the Settlement Agreement, the Released Parties, are deemed forever released and discharged by the (i) holders of all Claims who vote to accept the Plan, (ii) holders of Claims or Interests that are unimpaired under the Plan, (iii) holders of Claims whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan, (iv) subject to the last sentence of this Section XI.4.B that holders of Claims who vote to reject the Plan but do not opt out of granting the releases set forth herein (a "Release Opt-Out"), (v) the Trustee, (vi) the Committee, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Released and Settled Claims, losses, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtor, and any claims for breach of any fiduciary duty (or any similar duty), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Case, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Settlement Agreement, the restructuring of any Claim or Interest before or during the Case, the negotiation, formulation, or preparation of the Disclosure Statement, the Plan and related agreements, instruments, and other documents (including the Plan Supplement (if any)s and the Settlement Agreement), the solicitation of votes with respect to the Plan, any membership in (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Committee, the structuring, negotiation, performance, or conducting of, participation in, or entry into, the Plan and the Settlement Agreement, including by any member of the Committee, or any other act or omission, including, without limitation, claims arising in, related to or asserted in the FBNK Lien Avoidance Action, the FBNK Breach Actions, the Avoidance Actions or in the Chapter 11 case. For the avoidance of doubt, notwithstanding the foregoing, a Release Opt-Out by a holder of Claims who votes to reject the Plan (i) solely means that such holder is electing to not release the Released Parties other than the Debtor, the Trustee, the Estate and the Committee and (ii) shall not impair, limit or effect in any way the exculpation of the Exculpated Estate Parties as set forth in Section XI.5 of the Plan.

　　　　　　　　C.　　**Confirmation Order Operates As Approval of Releases**.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by the Debtor, the Chapter 11 Trustee, the Estate, the Committee and the Debtor's creditors described in XI.4.A-B of the Plan, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Court's finding that such release is: (1) given in exchange for good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims and Causes of Action released by such release; (3) in the best interests of the Debtor and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for objection and a hearing; and (6) a bar to the Debtor, the Trustee, the Estate, the Committee and the Debtor's creditors from asserting any Claim or Cause of Action released pursuant to such release.

E.   **Exculpation**

The Plan provides for the exculpation of the following parties (collectively, the :"Exculpated Estate Parties": (a) the Debtor; (b) the Trustee, solely in her official capacity and not individually; (c) the Committee; (d) the members of the Committee, solely in their capacities as such; (e) the Professionals retained by the Debtor, the Trustee and the Committee; and (f) Rameshkur Ganeshan, Jana Brooks and Steven Perez, each of whom was employed by and/or independently contracted to the Trustee or agents or retained professionals thereof from time to time in connection with the administration of the Estate by the Trustee; and, with respect to each of the foregoing entities (a) through (f), such entities' current and former officers and directors, principals, equity holders, members, partners, managers, employees, subcontractors, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors (and employees thereof), and other professionals, and such entities' respective heirs, executors, estates, servants, and nominees, in each case in their capacity as such.

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, to the maximum extent permitted by applicable law, each Exculpated Estate Party shall not have or incur any liability for any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, remedy, loss, and liability for any claim in connection with or arising out of any acts or omissions of such Exculpated Party taken or not taken in connection with the filing of the Case, and/or taken or not taken between the date of appointment of the Trustee by the Bankruptcy Court and the Effective Date in connection with the administration of the Case, the negotiation and filing of the Plan, the Disclosure Statement, the Plan Supplement (if any), any exhibits, attachments, or amendments to the Plan, Disclosure Statement or Plan Supplement (if any), or any document implementing or consummating the Plan, the filing of the Case, the settlement of Claims, the renegotiation of executory contracts and leases, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or property to be distributed under the Plan, or the transactions and occurrences in furtherance of any of the foregoing, except for any willful misconduct, gross negligence or intentional fraud as determined by a Final Order to have been committed by such Exculpated Party with respect to any of his/her/its obligations under or in connection with the Plan and the transactions contemplated by the Plan.  The Exculpated Parties in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and the transactions contemplated by the Plan and shall neither have nor incur any liabilities for acting or forbearing from acting pursuant to the advice of counsel.   Nothing contained in the Plan shall relieve any person from their duties and responsibilities to perform under the Plan, including to make the payments required by the terms of the Plan.

F.   **General Injunction**

**The discharge, satisfactions, releases, settlements, and exculpation provisions in  of the Plan shall act as a permanent injunction against any Person or Entity commencing or continuing any action, lawsuit, proceeding, employment of process, or act to collect, offset, or recover any Claim, Interest, or Cause of Action expressly preserved, satisfied, released, or discharged under the Plan to the fullest extent authorized or provided by the Bankruptcy**

Code and applicable law, including to the extent provided for or authorized by Sections 524 and/or 1141 of the Bankruptcy Code.

G.      **Injunction Relating to Online Seller Claims, Artist-Consignor Claims and Online Buyer Claims**.

From and after the Effective Date:

1.      Each Holder of an Allowed Online Seller Claim, and Allowed Artist-Consignor Claim and/or Allowed Online Buyer Claim is permanently restrained, enjoined and prohibited from pursuing, commencing, continuing or otherwise seeking to enforce or collect such Holder's Allowed Online Seller Claim, Allowed Artist-Consignor Claim and/or Allowed Online Buyer Claim, in whole or in part, from the Debtor, the Trustee, the Estate, its successors, affiliates, officers, directors, employees, agents or professionals, or any Person or Entity (if any) holding a Claim against the Debtor or its Estate or otherwise entitled to indemnification from the Debtor or its Estate, except that this injunction shall not apply to such Holder's rights against: (i) the Plan Administrator and the Segregated Seller Fund to the extent of the ratable Distributions which such Holder is entitled to receive from the Segregated Seller Fund on account of such Allowed Claim, and (ii) the Plan Administrator to the extent of the Distributions which such Holder is entitled to receive on account of such Allowed Claim.

2.      All Persons and Entities holding of Allowed Buyer Claims (and all Persons and Entities claimed under or through such Holders) are enjoined from asserting against the Debtor, the Estate, Online Sellers and Artist-Consignors any claims or causes of action of any nature arising in, arising out of or related to any art works that were consigned to the Debtor, and such Persons or Entities may not prosecute or proceed on such claims or causes of action in any manner against the Debtor, the Estate, the Online Sellers and the Artist-Consignors in any state, federal, or foreign court, administrative agency or tribunal, or arbitral forum.

H.      **Term of Bankruptcy Injunctions or Stays**

Unless otherwise provided in the Plan or Confirmation Order, all injunctions or stays provided for in the Case under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Case is closed.  All injunctions or stays contained in Article XI of the Plan or in the Confirmation Order shall remain in full force and effect in accordance with their terms on and after the Effective Date and shall survive the closing of the Case.

I.      **Discharge of Trustee**

On the Effective Date, the Trustee shall be relieved of her duties and obligations to the Estate under the Bankruptcy Code, Bankruptcy Rules and Local Bankruptcy Rules, including, but not limited to, any obligation to file a final report pursuant to Local Bankruptcy Rule 3022-1, or otherwise and the Trustee's bond shall be cancelled and any collateral exonerated; <u>provided,</u>

<u>however</u>, the Trustee shall have continuing standing solely for the purpose of prosecuting objections to applications for Allowance of Professional Fee Claims.

J.      **Dissolution of Committee**

As of the Effective Date, the Committee shall dissolve, and its members shall be released and discharged from all further authority, duties, responsibilities, and obligations relating to and arising from the Case; <u>provided, however</u>, the Committee shall continue to exist solely for the purpose of prosecuting objections to applications for Allowance of Professional Fee Claims.

K.      **Release of Liens**

On the Effective Date all mortgages, deeds of trust, liens, pledges or other security interests against the property of the Debtor's Estate shall be fully released and discharged, and all of any Holder of such mortgages, deeds of trust, liens, pledges or other security interests shall revert to the Estate.

**XII**
**EFFECTIVENESS OF PLAN**

A.      **Conditions Precedent to Confirmation**

It shall be a condition to confirmation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article XII of the Plan:  The Plan, the Plan Supplement, and all of the schedules, documents, and exhibits contained therein shall have been filed in form and substance reasonably acceptable to the Trustee and the Committee, which shall not be unreasonably withheld.

B.      **Conditions Precedent to the Effective Date**

It shall be a condition to the Effective Date of the Plan that the following provisions, terms, and conditions are approved or waived pursuant to the provisions of Article XII.C of the Plan:

1.      The Bankruptcy Court shall have entered the Confirmation Order in form and substance acceptable to the Trustee and the Committee, and the Confirmation Order shall have become a Final Order.

2.      All requisite governmental and regulatory approvals, if any, shall have been obtained or waived.

3.      All actions, documents, and agreements necessary to implement and consummate the Plan shall have been affected or executed and binding on all parties thereto.

C.      **Waiver of Conditions**

Any conditions to confirmation of the Plan and to the Effective Date set forth in Article XII of the Plan may be waived in writing by the Trustee and the Committee.

D. **Effective Date and Substantial Consummation**

The Effective Date shall occur on the date selected by the Trustee and the Committee that is no later than fifteen (15) Business Days after all conditions to effectiveness of the Plan are either (a) satisfied, or (b) waived by the Trustee, provided that the Effective Date shall be no earlier than the date set forth in Article I.35 of the Plan. On the Effective Date, the Plan shall be deemed to be substantially consummated under Sections 1101 and 1127(b) of the Bankruptcy Code.

E. **Effect of Failure of Conditions**

In the event that the Effective Date does not occur: (1) the Confirmation Order shall be vacated; (2) no Distributions under the Plan shall be made; (3) the Settlement Agreement shall be null and void and of no force and effect; (4) the Debtor, the Trustee, the Estate, the Committee, the Settlers and all holders of Claims and Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; and (45) the Debtor's obligations with respect to Claims and Interests shall remain unchanged, and nothing contained in the Plan shall (a) constitute or be deemed a waiver or release of any Claims against or any Interests in the Debtor or any other Person or Entity, (b) prejudice in any manner any right, remedy, or claim of the Debtor or any Person or Entity in any further proceedings involving the Debtor or otherwise, or (c) be deemed an admission against interest by the Debtor or any other Person or Entity.

F. **Vacatur of Confirmation Order**

If a Final Order denying confirmation of the Plan is entered, or if the Confirmation Order is vacated, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall (1) constitute a waiver or release of any Claims against or Interests in the Debtor, (2) prejudice in any manner the rights of the holder of any Claim against or Interest in the Debtor, or (3) prejudice in any manner any right, remedy, or claims of the Trustee, the Estate and/or the Committee on behalf, or (4) prejudice the rights of the Settlers

G. **Revocation, Withdrawal, Modification or Non-Consummation**

The Trustee and the Committee reserve the right to revoke, withdraw, amend, or modify the Plan at any time prior to the Confirmation, with the prior written consent of the Committee. If the Trustee revokes or withdraws the Plan, the Confirmation Order is not entered, or the Effective Date does not occur, (1) the Plan shall be null and void in all respects, (2) any settlement or compromise embodied in the Plan (including (i) the treating, fixing or limiting the amount of any Claim or Class of Claims and (ii) the Settlement Agreement), assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (3) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (a) constitute or be deemed a waiver or release of any Claims by or against or any Interests in the Debtor or any other Person, (b) prejudice in any manner any right, remedy, or claim of the Debtor or any other Person in any

further proceeding involving the Debtor or otherwise, or (c) constitute an admission against interest by the Debtor or any other Person.

H.    **Default**

If any Person or Entity fails or refuses to perform obligations imposed upon them pursuant to the Plan, then any other Person or Entity damaged by such failure or refusal shall have and retain the following rights and remedies:

1.    To seek to compel specific performance of the Plan,

2.    To seek to convert this case to a case under chapter 7 of the Bankruptcy Code, or to dismiss the case, and

3.    To seek an award of any other remedy to which such Person or Entity may be entitled under applicable law.

## XIII
## RETENTION OF JURISDICTION

The Bankruptcy Court shall have exclusive jurisdiction to the fullest extent provided by applicable law over all matters arising out of, and related to, the Case and the Plan pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

A.    To hear and determine motions for the assumption or rejection of executory contracts or unexpired leases pending on the Confirmation Date, and the allowance of Claims resulting therefrom;

B.    To determine any other applications, adversary proceedings, and contested matters pending on the Effective Date, including without limitation, the Settlement Agreement;

C.    To ensure that Distributions to holders of Claims are accomplished as provided in the Plan;

D.    To resolve disputes as to the ownership of any Claim or Interest;

E.    To hear and determine timely objections to Claims;

F.    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

G.    To issue such orders as are appropriate in aid of execution of the Plan, to the extent authorized by Section 1142 of the Bankruptcy Code;

H.    To consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

I.    To hear and determine all applications for compensation and reimbursement of expenses of Professionals under Sections 328, 330, 331, and 503(b) of the Bankruptcy Code;

J.    To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan;

K.    To hear and determine any issue for which the Plan requires a Final Order of the Bankruptcy Court;

L.    To hear and determine matters concerning state, local, and federal taxes m accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

M.    To hear and determine any Causes of Action preserved under the Plan and solely to the extent arising under Bankruptcy Code Sections 544, 547, 548, 549, 550, 551, and 553;

N.    To hear and determine any matter regarding the existence, nature, and scope of the releases, injunctions and exculpations provided in the Plan; and

O.    To enter a final decree closing the Case.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Case, then Article XIII of the Plan shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## XIV
## MISCELLANEOUS PROVISIONS

A.    **Payment of Statutory Fees**

The Trustee (until the Effective Date) and the Plan Administrator (after the Effective Date) will be responsible for timely payment of quarterly fees incurred pursuant to 28 U.S.C. 1930(a)(6) until its case is closed or dismissed.  After confirmation, the Plan Administrator will serve the United States Trustee with a monthly disbursement report for each month (or portion thereof) that the case remains open.  The monthly report shall be due fifteen days after the end of the calendar month.  The monthly financial report shall include the following:

(1)    a statement of all disbursements made during the course of the month, whether or not pursuant to the Plan;

(2)     a summary, by class, of amounts distributed or property transferred to each recipient under the Plan, and an explanation of the failure to make any distributions or transfers of property under the Plan, if any;

(3)     a description of any other factors which may materially affect the Debtor's ability to complete its obligations under the Plan; and

(4)     an estimated date when an application for final decree will be filed with the court (in the case of the final monthly report, the date the decree was filed).

## B.     <u>Payment of Plan Confirmation Expenses</u>

Except for fees and expenses for which prior court approval is required for payment (including, without limitation, claims for substantial contribution pursuant to Sections 503(b)(3) and 503(b)(4) of the Bankruptcy Code, or other fees and expenses under Section 1129(a)(4) of the Bankruptcy Code), the Trustee or (after the Effective Date) the Plan Administrator, as applicable, may pay all reasonable third party expenses and costs of confirmation and consummation of the Plan without further notice.

## C.     <u>Modification of the Plan</u>

Subject to the limitations contained elsewhere in the Plan:  (1) prior to the entry of the Confirmation Order, the Trustee and the Committee reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to jointly amend, modify, revoke, or withdraw the Plan, including amendments or modifications to satisfy Section 1129(b) of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Plan Administrator may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with Section 1127(b) of the Bankruptcy Code, <u>provided that</u> any modification of the Plan shall be consistent with the terms and provisions of the Settlement Agreement..

## D.     <u>Immediate Effect of Confirmation Order</u>

Notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtor and any and all Holders of Claims or Interests (regardless of whether such Claims or Interests are deemed to have accepted or not accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor. The stay of enforceability of a confirmation order pursuant to Bankruptcy Rule 3020(e) shall not apply to Confirmation Order, which shall be enforceable according to its terms immediately upon entry absent further order of the Court.

E.    **No Retiree Benefit Plan Payments**

     The Trustee is not obligated pursuant to Section 1129(a)(13) of the Bankruptcy Code to pay any "retiree benefits" as that term is defined in Section 1114(a) of the Bankruptcy Code.

F.    **Further Actions; Implementations**

     Until the Effective Date, and to the limited extent necessary to complete reports after that time for periods through and including the Effective Date, the Trustee shall be authorized to execute, deliver, file or record such documents, contracts, instruments, releases and other agreements and take such other or further actions as may be necessary to effectuate or further evidence the terms and conditions of the Plan.  From and after the Effective Date, the Plan Administrator shall be authorized to take any and all steps and execute all documents necessary to effectuate the provisions contained in the Plan.

G.    **Severability**

     If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the joint request of the Trustee and the Committee, or at the request of the Plan Administrator, as the case may be, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan is:  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan, such that it may not be deleted or modified without the consent of the Trustee or (after the Effective Date) the Plan Administrator; and (3) non-severable and mutually dependent.

H.    **Final Decree and Closure of the Case**

     After the occurrence of the Effective Date, the Plan Administrator may file a motion for a final decree closing the Case at such time as the Plan Administrator determines to be reasonable and appropriate.

I.    **Conflicts in Terms of Documents**

     The terms of the Plan shall govern in the event of any inconsistency with the summaries of the Plan set forth in the Disclosure Statement.  In the event of any inconsistency or ambiguity between and among the terms of the Plan, the Disclosure Statement, and the Confirmation Order, the terms of the Confirmation Order shall govern and control.

J.    **Reservation of Rights**

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court has entered the Confirmation Order.  None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement (if any) shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

K.      **Successors and Assigns**

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiary, or guardian, if any, of each Entity.

L.      **Service of Documents**

All notices, requests, and demands to or upon the Debtor to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Trustee:

PRYOR CASHMAN LLP
Attn:   Richard Levy, Jr., Esq.
            Conrad K. Chiu, Esq.
7 Times Square
New York, New York 10036-6569
Tel:  (212) 421-4100
Fax:  (212) 326-0806
rlevy@pryorcashman.com
cchiu@pryorcashman.com


If to the Committee:

THE LAW OFFICES OF RICHARD J. CORBI PLLC
Attn:   Richard J. Corbi, Esq.
1501 Broadway, 12th Floor
New York, New York 10036
Tel:  (646) 571-2033
rcorbi@corbilaw.com


If to the Plan Administrator:

[TO BE PROVIDED AT OR BEFORE THE CONFIRMATION HEARING AND INCLUDED IN NOTICE OF THE OCCURRENCE OF THE EFFECTIVE DATE OF THE PLAN.]

After the Effective Date, the Plan Administrator shall have the authority to send a notice to Persons and Entities that continue to receive documents pursuant to Bankruptcy Rule 2002, which shall require each such Person or Entity to file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Plan Administrator is authorized to limit the list of Persons and Entities receiving documents pursuant to Bankruptcy Rule 2002 to those who have filed such renewed requests.

M.    **Entire Agreement**

Except as otherwise indicated, the Plan (including, for the avoidance of doubt, the Plan Supplement (if any)) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan. To the extent that this Disclosure Statement is inconsistent with the Plan and Plan Supplement (if any), the terms of the Plan and the Plan Supplement (if any) shall control.

N.    **Plan Supplement Exhibits**

All exhibits and documents included in the Plan Supplement (if any) are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are filed, copies of such exhibits and documents shall be made available upon written request to the Trustee's or the Committee's counsel at the addresses above or by downloading such exhibits and documents from the Bankruptcy Court's website at https://www.nysb.uscourts.gov/ (fee required for copies). Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement (if any) is inconsistent with the terms of any part of the Plan that does not constitute the Plan Supplement (if any), the Plan Supplement (if any) shall control. The documents considered in the Plan Supplement (if any) are an integral part of the Plan and shall be deemed approved by the Bankruptcy Court pursuant to the Confirmation Order.

O.    **Non-Severability**

Except as set forth in Article XIV.7 of the Plan, the provisions of the Plan, including its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan, such that it may not be deleted or modified without the joint consent of the Trustee and the Committee or (after the Effective Date) the Plan Administrator; and (3) non-severable and mutually dependent.

P.    **Votes Solicited in Good Faith**

Upon entry of the Confirmation Order, the Trustee and the Committee will be deemed to have solicited acceptances of on the Plan in good faith and in compliance with the Bankruptcy Code.

Q.    **Waiver or Estoppel**

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtor or (after her appointment) the Trustee or the Plan Administrator their respective counsel, or any other Person or Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court prior to the Confirmation Date.

R.    **Preservation of Causes of Action and Certain Other Rights**

Except as otherwise expressly provided in the Plan, any rights, accounts receivable of the Debtor and/ or Causes of Action accruing to or held by the Estates prior to the Effective Date shall vest in the Plan Administrator as Plan Administration Assets on the Effective Date, including those Causes of Action identified in the Plan Supplement, if any. The Plan Administrator may pursue those Causes of Action as deemed appropriate, in his name or that of the Debtor. None of the Plan, Disclosure Statement, or Plan Supplement set forth an exhaustive list of all Causes of Action preserved under the Plan and vesting in the Debtor, and the failure to identify or list any particular Cause of Action therein or in this document shall not constitute a waiver or release. **All Causes of Action not expressly released or waived in the Plan or the Confirmation Order shall survive confirmation of the Plan, and the assertion of Causes of Action shall not be barred or limited by any estoppel doctrine.**

The Trustee understands that in 2018, the Debtor purchased a piece of artwork named "Beautiful Losers" that had been consigned from an individual, Jason Harrington ("Harrington"). On or about August 31, 2018, the Debtor sold the work to a purchaser for a price of $8,025, inclusive of the buyer's premium and shipping. The Trustee has been informed that Harrington recently pleaded guilty in a federal court in California to fraud charges for, among other things, selling false art works, and that he entered into a plea agreement providing for restitution, subject to approval of the federal court. Harrington has not yet been sentenced. The Trustee believes that if restitution is ordered, any right of the Estate to restitution from Harrington will become a Plan Administrator Asset on the Effective Date. The amount and timing of any restitution payments by the defendant that may be ordered cannot be predicted.

LS.    **Comprehensive Settlement of Claims and Controversies**

The Plan provides that it shall constitute a good faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any Distribution to be made on account of the same, subject to the reservations in favor of Governmental Units set forth in the Plan, and that entry of the Confirmation Order shall constitute the Bankruptcy Court's approval as of the Effective Date of the compromise or settlement of all

such Claims, interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor and their Estates, and is fair, equitable, and reasonable.

The Plan further provides that the compromises, settlements, and releases described tin this document shall be deemed non-severable from each other and from all other terms of the Plan, and that entry of the Confirmation Order shall constitute approval of the settlements embodied in the Plan.

T.     **Binding Effect**

Except as otherwise provided in Section 1141(d)(3) of the Bankruptcy Code, on and after the Effective Date, the provisions of the Plan shall bind any holder of a Claim against, or Interest in, the Debtor, the Estates, and its successors or assigns, whether or not the Claim or Interest of such holder is impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not the holder has filed a Proof of Claim.

## XV
## CERTAIN RISK FACTORS TO BE CONSIDERED

Holders of Claims in Classes 1, 3, 4, 5 and 6 whose votes on the Plan are being solicited should read and carefully consider the following factors before deciding whether and how to vote on the Plan.

(1)     Although the Trustee and the Committee believe that the Plan will satisfy all requirements necessary for Confirmation by the Court, there can be no assurance that the Court will reach the same conclusion.  There can be no assurance that modifications of the Plan will not be required for Confirmation, that any negotiations regarding such modification would not adversely affect the Holders of Allowed Claims or that any such modification would not necessitate the re-solicitation of votes.

(2)     The Plan is based on projections concerning among other things the collectability of the Plan Administrator Asset. Such assumptions are inherently uncertain, and their collectability is beyond the control of the Committee, or the Debtor.  Additionally, unanticipated events and circumstances may affect the financial results.

(3)     The Plan may fail to be confirmed, or the Plan Administrator may be unable to make all payments required under the Plan, which may result in the Case being converted to a liquidation under Chapter 7 of the Bankruptcy Code.

## XIV
## VOTING ON THE PLAN AND THE CONFIRMATION PROCESS

A.     **Classes Entitled to Vote**

Only holders of a Class 1 FBNK Secured Claim, Class 3 Online Seller Claim, Class 4 Artist-Consignor Claim, Class 5 Online Buyer Claim and Class 6 General Unsecured Claim as holders of "impaired" Claims are entitled to vote on the Plan. Under Section 1124 of the Bankruptcy Code, a Class of Claims or Interests is "impaired" by the Plan if the legal, equitable or contractual rights attaching to the Claims of that Class are modified. To have a Claim entitled to vote, a creditor must have timely filed a Proof of Claim or have their claim scheduled by the Debtor as non-contingent, undisputed and liquidated. If such a Claim is the subject of an objection or is otherwise disputed, such holder does not have a Claim entitled to vote and will not participate in any Distributions under the Plan until such time as the Claim becomes an Allowed Claim. Holders of Claims in Class 2 are unimpaired, and thus are conclusively presumed to have accepted the Plan and not entitled to vote under Section 1126(f) of the Bankruptcy Code. Holders of Interests in Class 7 will not receive any Distributions under the Plan and thus are conclusively presumed to have rejected the Plan and are not entitled to vote under Section 1126(g) of the Bankruptcy Code.

B.    **Voting**

If a Claim is the subject of an objection prior to the deadline for voting on the Plan and the holder of the Claim has not filed a motion for relief under Bankruptcy Rule 3018, such holder shall not be entitled to vote to accept or reject the Plan.

C.    **Voting Instructions**

Voting instructions are as set forth in the Solicitation and Voting Procedures approved by the Bankruptcy Court [ECF No. •]. As set forth in said procedures, the Bankruptcy Court has established **September [   ], 2021, at 5:00 p.m. (EST)** as the deadline to vote to accept or reject the Plan. To be counted, all ballots must be submitted to the Trustee's Counsel *before* the Voting Deadline set forth above. Ballots may be submitted electronically by email to the office of the Trustee's counsel at: [**NTD: EMAIL ADDRESS TO BE ESTABLISHED BY PRYOR CASHMAN AND INSERTED HERE**]. Alternatively, completed and properly executed hard copy ballots may be mailed or otherwise delivered to the Trustee's counsel, so as to be received *before* to the Voting Deadline set forth above, at the following address:

> **PRYOR CASHMAN LLP**
> Attn:   Richard Levy, Jr., Esq.
>           Conrad K. Chiu, Esq.
> 7 Times Square
> New York, New York 10036-6569
> Tel:  (212) 421-4100
> Fax:  (212) 326-0806
> rlevy@pryorcashman.com
> cchiu@pryorcashman.com

Any party submitting a ballot electronically should <u>not</u> also submit a paper ballot. Any *ballots submitted by fax will not be valid*. If you would like to coordinate the hand delivery of your ballot to the Trustee, please e-mail [**NTD: EMAIL ADDRESS**] at least one (1) hour in

advance to arrange delivery. **To be counted, ballots must be actually received by no later than the Voting Deadline. Delivery of a ballot not in accordance with the Solicitation and Voting Procedures shall not be valid and shall not be counted as a vote to accept or reject the Plan.**

If a creditor in Class 1, Class 3, Class 4, Class 5 or Class 6 needs additional ballots or did not receive a ballot, please contact counsel for the Trustee or the Committee, set forth on the cover page of this Disclosure Statement, sufficiently in advance of the Voting Deadline to obtain the ballot and submit the ballot before such deadline.

As described elsewhere in this Disclosure Statement, the Holders of Claims in Classes 3 (Online Seller Claims) and 4 (Artist-Consignor Claims) are required to provide certain information on their ballots in order to confirm and receive the treatment provided by the Plan. The failure to provide such information may result in the Claim being automatically reclassified and treated as a General Unsecured Claim.

As described elsewhere in this Disclosure Statement, the Holders of Claims in Class 4 (Online Buyer Claims) are entitled to make an election either to (i) retrieve and collect the property they purchased through the Debtor's online platform from the Online Seller or Artist-Consignor of the property, at the sole cost and expense of such Holder of an Online Buyer Claim, or (ii) to receive an Allowed Claim in the amount of the purchase price.

A creditor's receipt and/or return of any particular ballot does not constitute an entitlement of such creditor to any specific classification or treatment within a specific class of Claims under the Plan. In addition, any creditor's receipt and/or return of a ballot does not necessarily entitle such creditor to a distribution on account of any Claim under the Plan.

D.      **Confirmation Requirements**

The Bankruptcy Court will confirm the Plan only if it determines that all the requirements of the Bankruptcy Code have been met. The Bankruptcy Code requires, among other things, that (1) the Plan be accepted by at least one impaired Class, (2) the Bankruptcy Court make a determination that the Plan is in the "best interests" of all creditors (that is, dissenting creditors will receive at least as much under the Plan as they would in a liquidation under Chapter 7 of the Bankruptcy Code), (3) the Bankruptcy Court makes a determination that the Plan is feasible, and (4) the Plan has classified Claims and Interests in a permissible manner. To confirm the Plan, the Bankruptcy Court must find that all of these and certain other requirements have been met. Thus, even if the requisite vote is achieved for each impaired Class, the Bankruptcy Court must make independent findings regarding the Plan's conformity with these requirements of the Bankruptcy Code before it may confirm the Plan. Additionally, if the requisite vote will not be achieved for each impaired Class, the Bankruptcy Court must also make independent findings regarding the Plan's conformity with the requirements of Section 1129(b) of the Bankruptcy Code. The various statutory requirements are discussed below.

1.      <u>**Acceptance by at Least One Impaired Class**</u>

For the Plan to be confirmed, the Plan must be accepted by at least one impaired Class that is entitled to vote on the Plan. A Class of impaired Claims will have accepted the Plan if the holders of at least two-thirds in amount and more than one-half in number of the Claims actually voting in the Class have accepted it.

### 2.    Best Interests Test

The Plan cannot be confirmed unless the Bankruptcy Court determines that the Plan is in the "best interests" of the Debtor' creditors. The Plan will be deemed to have satisfied the so-called "best interests" test if the Plan provides to each dissenting or nonvoting member of each impaired Class a recovery that is at least equal to the Distribution such member would receive in a hypothetical liquidation under Chapter 7 of the Bankruptcy Code. In applying the "best interests" test, the Bankruptcy Court would ascertain the hypothetical recoveries in a Chapter 7 liquidation to the Debtor' creditors. These hypothetical liquidation recoveries would then be compared with the Distributions offered to each impaired Class of Claims under the Plan to determine if the Plan satisfies the "best interests" test. If all members of an impaired Class of Claims vote to accept the Plan, the "best interests" test does not apply with respect to that Class. As set forth below, the Committee believes that confirmation of the Plan will provide each holder of a Class 5 Claim with a recovery that is at least equal to that which would be received in a liquidation under Chapter 7 of the Bankruptcy Code.

See Section XVBII of this Disclosure Statement and Exhibit 2 for the Liquidation Analysis that the Trustee and the Committee believe demonstrates that the Plan satisfies the "best interests" test.

### 3.    Feasibility of the Plan

For the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is feasible; that is, as a practical matter, that payment obligations under the Plan can be met on a timely basis, in accordance with the terms of the Plan, and will not lead to further insolvency or bankruptcy proceedings for the Debtor. The Trustee and the Committee believe that the Plan is feasible through the liquidation of the Debtor and the Distributions to be made to Holders of Allowed Claims, as further demonstrated in the liquidation analysis attached hereto as Exhibit 2.

### 4.    Classification of Claims

The Trustee and the Committee believe that the Plan meets the classification requirements of the Bankruptcy Code, which require that a Plan place each Claim or Interest in a Class with other Claims or Interests that are "substantially similar."

### E.    Additional Requirements of Section 1129(b) of the Bankruptcy Code

Pursuant to Section 1129(b) of the Bankruptcy Code, the Bankruptcy Court must determine if the Plan is "fair and equitable" and does not discriminate unfairly against each impaired Class of Claims or Interests that has voted to reject or is conclusively presumed to have rejected the Plan. Pursuant to Section 1129(b)(2)(B)(ii), a Plan is "fair and equitable" to holders

of General Unsecured Claims if holders of junior Claims or Interests will not receive any property under the Plan. Pursuant to Section 1129(b)(2)(B)(iii), a Plan is "fair and equitable" to holders of Interests if either (1) the Plan provides that each such holder receives or retains property of a value equal to the greater of the Allowed amount of any fixed liquidation preference, any fixed redemption price, or the value of such interest, or (2) no junior Class of interests will receive or retain any property. The Committee believes the Plan meets the fair and equitable test with respect to each holder of an impaired Claim or Interest.

A corollary to the fair and equitable requirement is that no Class of Claims receive more than payment in full. The Committee does not believe that the Plan provides for any Class to receive more than payment in full.

F.    **Confirmation Hearing**

Section 1128 of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of the Plan. At that time, the Trustee will present the results of the vote by each Impaired Class of Creditors entitled to vote in favor of or in opposition to the Plan. The Bankruptcy Court will consider whether the requirements for Confirmation of the Plan under the Bankruptcy Code have been satisfied, as well as any objections to the Plan that are timely filed. Any Creditor may object to the Confirmation of the Plan, regardless of whether such Creditor is entitled to vote on the Plan.  Such objections must be filed by **September [ ], 2021, 4:00 p.m. (EST)** with a copy forwarded directly to the Chambers of the Honorable David Jones, United States Bankruptcy Court, together with proof of service thereof, and served upon (i) counsel to the Trustee, Pryor Cashman LLP, attn: Richard Levy, Jr., Esq., and Conrad Chiu, Esq. (rlevy@pryorcashman.com; cchiu@pryorcashman.com), 7 Times Square, New York, New York 10036; (ii) counsel for the Committee, The Law Offices of Richard J. Corbi PLLC, 1501 Broadway, 12th Floor, New York, New York 10036, attn: Richard J. Corbi, Esq., (rcorbi@corbilaw.com); and (iii) the Office of the United States Trustee, attn: Richard Morrissey, Esq. (Richard.morrissey@usdoj.gov) 201 Varick St., #1006, New York, New York 10014.

The joint hearing to consider confirmation of the Plan and approval of this Disclosure Statement has been scheduled by the Bankruptcy Court to be held on _____, 2021, at ___:__ __.m.  Unless otherwise ordered by the Bankruptcy Court, the hearing will be held live, with an opportunity telephonic participation through the Court Solutions online application (www.court-solutions-com (requires registration and payment of a fee).

## XVI
## FEDERAL TAX CONSEQUENCES

THE FOLLOWING SUMMARY OF CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO A HOLDER OF A CLAIM OR EQUITY INTEREST. NO RULING HAS BEEN SOUGHT OR OBTAINED WITH RESPECT TO ANY OF THE TAX ASPECTS OF THE PLAN AND NO OPINION OF COUNSEL HAS BEEN OBTAINED BY THE DEBTOR WITH RESPECT THERETO. NO REPRESENTATION OR

ASSURANCE IS BEING MADE WITH RESPECT TO THE FEDERAL INCOME TAX CONSEQUENCES AS DESCRIBED IN THIS DOCUMENT. CERTAIN TYPES OF CREDITORS AND INTEREST HOLDERS MAY BE SUBJECT TO SPECIAL RULES NOT ADDRESSED IN THIS SUMMARY OF FEDERAL INCOME TAX CONSEQUENCES. THERE MAY ALSO BE STATE OR LOCAL TAX CONSIDERATIONS APPLICABLE TO EACH HOLDER OF A CLAIM OR INTEREST WHICH ARE NOT ADDRESSED IN THIS DOCUMENT. EACH HOLDER OF A CLAIM OR INTEREST AFFECTED BY THE PLAN MUST CONSULT AND RELY UPON SUCH HOLDER'S OWN TAX ADVISOR REGARDING THE SPECIFIC TAX CONSEQUENCES OF THE PLAN WITH RESPECT TO SUCH HOLDER'S CLAIM OR INTEREST.

Pursuant to the Plan, the Debtor will remain in existence after the Effective Date, and the Plan Administrator will make Distributions in accordance with the Plan and the Settlement Agreement. Holders of Allowed Online Seller Claims, Artist-Consignor Claims, Online Buyer Claims, and General Unsecured Claims will receive their Pro Rata Share pursuant to the Settlement Agreement in satisfaction of their Claims. A holder of an unsecured Claim that receives cash in exchange for its Claim pursuant to the Plan generally will recognize gain or loss for Federal income tax purposes in an amount equal to the difference between the amount of cash received on account of the Claim, and the holder's adjusted tax basis in its Claim. Such gain or loss is ordinarily capital in nature and is ordinarily long-term capital gain or loss if the Claim was held for more than one year.

Under the Internal Revenue Code's backup withholding rules, a holder of a Claim should be subject to backup withholding with respect to Distributions made pursuant to the Plan unless that holder comes within certain exempt categories (which generally include corporations) and, when required, demonstrates that fact or provides a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that the holder is not subject to backup withholding because of a failure to report all dividend and interest income. Backup withholding is not an additional income tax, but merely an advance payment of income tax that may be claimed as a credit on the income tax return of the person that is subject to backup withholding and refunded to the extent it results in an overpayment of income tax on such return. Holders of Claims may be required to establish exemption from backup withholding or to make arrangements with respect to the payment of backup withholding.

## XVII
## <u>LIQUIDATION ANALYSIS</u>

To demonstrate that the Plan satisfies the "best interests" test under Section 1129(__) of the Bankruptcy Code, the Trustee and the Committee prepared the liquidation analysis attached as Exhibit 2 (the "<u>Liquidation Analysis</u>").

The determination of the costs of, and proceeds from, the hypothetical liquidation of the Assets in a chapter 7 case is an uncertain process involving significant estimates and assumptions that, although considered reasonable by the Debtor, the Committee and their advisors, are inherently subject to significant business, economic, and competitive uncertainties and contingencies beyond the control of the Debtor and the Committee. The Liquidation

Analysis is also based on the best judgment of how numerous decisions in the liquidation process would be resolved.  Inevitably, some assumptions in the Liquidation Analysis may not materialize in an actual chapter 7 liquidation, and unanticipated events and circumstances could materially affect the ultimate results in an actual chapter 7 liquidation. The Liquidation Analysis was prepared for the sole purpose of generating a reasonable good faith estimate of the proceeds that would be generated if the Debtor was liquidated in accordance with chapter 7 of the Bankruptcy Code. The Liquidation Analysis is not intended, and should not be used, for any other purpose.

All the limitations and risk factors set forth in the Disclosure Statement are applicable to this Liquidation Analysis and are incorporated by reference.  In particular, the underlying financial information in the Liquidation Analysis was not compiled or examined by any independent accountants in accordance with the standards promulgated by the American Institute of Certified Public Accountants.  No independent appraisals were conducted in preparing the Liquidation Analysis.  NEITHER THE TRUSTEE, THE COMMITTEE NOR THEIR ADVISORS MAKE ANY REPRESENTATIONS OR WARRANTIES THAT THE ACTUAL RESULTS WOULD OR WOULD NOT APPROXIMATE THE ESTIMATES AND ASSUMPTIONS REPRESENTED IN THE LIQUIDATION ANALYSIS.  ACTUAL RESULTS COULD VARY MATERIALLY.

In preparing the Liquidation Analysis, the Trustee and the Committee estimated Allowed Claims based upon the latest review of liabilities in the Debtor's books and records, the Schedules, Proofs of Claim filed in the Case, and stipulations resulting in adjustment and allowance of certain Claims.  The Liquidation Analysis includes estimates for Claims that could be asserted and Allowed in a chapter 7 liquidation, including Administrative Expense Claims, wind-down costs, Chapter 7 trustee commissions, and professional fees required to facilitate disposition of certain assets in a value maximizing manner.  The estimate of Allowed Claims set forth in the Liquidation Analysis should not be relied upon for any purpose other than the consideration of the "best interests" test,, including determining the value of any Distributions Allowed Claims under the Plan.  NOTHING CONTAINED IN THE LIQUIDATION ANALYSIS IS INTENDED TO BE, OR CONSTITUTES, A CONCESSION, ADMISSION, OR ALLOWANCE OF ANY CLAIM.  THE ACTUAL AMOUNT OR PRIORITY OF ALLOWED CLAIMS IN THE CASE COULD MATERIALLY DIFFER FROM THE ESTIMATED AMOUNTS SET FORTH AND USED IN THE LIQUIDATION ANALYSIS.

The Liquidation Analysis assumes conversion of the Debtors' chapter 11 cases to chapter 7 liquidation cases on or about September 30, 2021, and the appointment of a Chapter 7 trustee on that date  (the "Assumed Conversion Date"). Claims are estimated at the Assumed Conversion Date based on the Debtor's books and records, Schedules and filed Proofs of Claim, and stipulations resulting in adjustment and allowance of certain Claims. The Liquidation Analysis assumes that the proceeds available for distribution (the "Liquidation Proceeds") will be available to the Trustee. The Liquidation Analysis sets forth an allocation of the Liquidation Proceeds to creditors in accordance with the priorities set forth in Section 726 of the Bankruptcy Code.

Under Section 704 of the Bankruptcy Code, a Chapter 7 trustee must, among other duties, collect and convert property of the Estates as expeditiously as is compatible with the best interests

of parties in interest, which could result in potentially distressed recoveries. The Liquidation Analysis assumes that the actual liquidation of Assets of the Debtor is substantially completed as of the Assumed Conversion Date, excluding the pursuit of lawsuits, litigations and causes of action that otherwise would be resolved under or preserved for the benefit of Chapter 11 creditors under the Plan.

Wind-down costs consist of the costs of the professionals the Chapter 7 trustee will employ to assist with the liquidation process, including attorneys and other advisors. The Liquidation Analysis assumes that the Chapter 7 trustee's primary legal, accounting, consulting and other support would be provided by new professionals.   Chapter 7 Trustee fees and commissions necessary to facilitate the liquidation of Debtor's assets were calculated in accordance with Section 326 of the Bankruptcy Code, specifically for overseeing the chapter 7 liquidation.   This fee estimate also takes into account the time that will be required for the Chapter 7 trustee and any professionals to become educated with respect to the Debtor's businesses, the chapter 11 Case, and matters that must be addressed in the liquidation phase of the converted case.

The Trustee and the Committee have determined that confirmation of the Plan will provide creditors with a recovery that is not less than what they would otherwise receive in connection with a hypothetical liquidation of the Debtor under chapter 7 of the Bankruptcy Code and that, therefore, the Plan is superior to a chapter 7 liquidation and should be confirmed.

## XVIII
## CONCLUSION

The Trustee and Committee urge all Holders of Claims entitled to vote in Classes 1, 3, 4, 5, and 6 to accept the Plan.

*[signatures appear on the next page]*

Dated:  August 25, 2021

                                             *DRAFT*

**MEGAN E. NOH, Plan Proponent,**
*solely in her capacity as the Trustee of P8H, Inc.,*
*d/b/a Paddle 8, Debtor*

- and -

**OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF P8H, INC., d/b/a PADDLE 8,
Plan Proponent**

By:            *DRAFT*

Ghislain Pascal of The Little Black Gallery,
*solely in his capacity as Chairperson of the Official
Committee of Unsecured Creditors of P8H, Inc.,*
*d/b/a Paddle 8, Debtor*

**PRYOR CASHMAN LLP**

By:  /s/ Richard Levy, Jr.
       Richard Levy, Jr.
       Conrad K. Chiu
7 Times Square
New York, NY 10036
Tel: (212) 421-4100
Fax: (212) 326-0806
rlevy@pryorcashman.com
cchiu@pryorcashman.com

*Attorneys for Megan E. Noh, solely in her capacity*
*as the Trustee of P8H, Inc., d/b/a Paddle 8, Debtor*

**THE LAW OFFICES OF RICHARD J. CORBI
PLLC**

By:  /s/ Richard J. Corbi.
       Richard J. Corbi
1501 Broadway, 12th Floor
New York, New York 10036
Tel:  (646) 571-2033
rcorbi@corbilaw.com

*Attorneys for the Official Committee of Unsecured*
*Creditors of P8H, Inc., d/b/a Paddle 8, Debtor*