EXECUTION VERSION

## SETTLEMENT AGREEMENT

This compromise and settlement agreement ("***Settlement Agreement***") is made as of August 20, 2021 by and among Megan E. Noh, solely in her capacity as the Chapter 11 Trustee (the "***Trustee***") appointed in the Chapter 11 bankruptcy case (the ***Chapter 11 Case***") of P8H, Inc. d/b/a Paddle 8 (the "***Debtor***"), and the Official Committee of Unsecured Creditors (the "***Committee***") appointed in the Debtor's Chapter 11 Case on the one hand, and the following persons and entities, collectively, on the other hand (collectively, the "***Settlers***" and certain named "***Defendants***"): Digital Commerce Strategy AG ("***Digital***"), for itself and as successor under the laws of France to its now dissolved subsidiary Stockaccess Holdings SAH ("***SAH***") and FBNK Finance S.à.r.l., a Luxembourg company ("***FBNK***"), ( together with SAH and Digital, the "***FBAG Parties***"), FuboTV, Inc., Valentine Uhovski, Peter Rich, Christopher Hsu, Sergey Skaterschikov, Izabela Depczyk, and Norman Hansen, (collectively referred to as the "***Settlers***").  The Trustee, the Committee and the Settlers are collectively referred to as the "Parties" and each separately as a "Party."

## RECITALS

**WHEREAS**, on March 16, 2020 (the "***Petition Date***"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York, case number 20-10809, (the "***Bankruptcy Court***"); and

**WHEREAS**, on April 30, 2020, the Bankruptcy Court directed the appointment of the Trustee in the Chapter 11 Case [ECF No. 36]; and

**WHEREAS**, the Committee was appointed in the Chapter 11 Case on April 15, 2020 pursuant to section 1102(a) of the Bankruptcy Code by the United States Trustee for the Southern District of New York [ECF No. 23]; and

**WHEREAS**, at a hearing on April 30, 2020, the Bankruptcy Court ***"so ordered"*** the record of the hearing granting the Committee standing to commence an adversary proceeding on behalf of the Debtor's estate to seek relief against persons covered by the Debtor's directors' and officers' insurance policy ("***D&O Insurance***"); and

**WHEREAS**, on May 1, 2020, the Bankruptcy Court confirmed the relief issued on April 30, 2020 by entering its *Order Authorizing the Committee to Commence Certain Claims and Causes of Action on Behalf of the Debtor's Estate* [ECF No. 37]; and

**WHEREAS**, the Committee filed an adversary complaint against defendant Valentine Uhovski on May 1, 2020 [*Official Comm. of Unsec. Creds. v. Valentine Uhovski,* Adv. Pro. No. 20-01081; Adv. ECF No. 1], in order to preserve the right of the estate to seek coverage under Debtor's directors' and officers' insurance policy (the "***Committee D&O Action***"); and

**WHEREAS**, on May 28, 2020, the Bankruptcy Court "**So Ordered**" a consensual stipulation between the Committee and the Trustee regarding the prosecution of the Committee D&O Action, entitled the *Stipulation and Order Authorizing the Official Committee of Unsecured*

*Creditors to Prosecute Certain Claims and Causes of Action on Behalf of the Debtor's Estate* [Adv. Pro. No. 20-01081, Adv. ECF No. 4]; and

**WHEREAS**, on August 28, 2020, the Committee filed an amended complaint in the Committee D&O Action to add as Defendants Izabela Depczyk, Norman Hanson, Christopher Hsu, Peter Rich and Sergey Skaterschikov [Adv. Pro. No. 20-01081, Adv. ECF No. 17]; and

**WHEREAS**, on August 26, 2020, the Trustee commenced an adversary proceeding against FBNK seeking a declaratory judgment and other relief on the ground that, among other things, FBNK's alleged liens in assets of the Debtor were never properly perfected such that *all* assets of the Debtor are available to the Trustee and the Debtor's estate ("***Estate***") for distribution in the Chapter 11 Case free and clear of such liens (the "***Lien Avoidance Action***") [*Megan E. Noh, as Chapter 11 Trustee v. FBNK Finance S.a.r.l.,* Adv. Pro. No. 20-01211, Adv. ECF No. 1]; and

**WHEREAS**, on August 28, 2020, the Trustee commenced an adversary proceeding against John Textor ("***Textor***") and other parties including FaceBank Group, Inc. (now known as FuboTV, Inc.), FBNK, its affiliate Digital Commerce Strategy AG, which was previously known as FaceBank AG ("***Digital***") and SAH who has never been served with a Summons and Complaint [*Megan E. Noh, as Chapter 11 Trustee v. John Textor, et al.,* Adv. Pro. No. 20-01212, Adv. ECF No. 1 (the "***Trustee D&O Action***," and, together with the Committee D&O Action and the Lien Avoidance Action, the "***Adversary Proceedings***")]; and

**WHEREAS**, on November 1, 2020, the Trustee voluntarily dismissed: (1) Mr. Textor from the Trustee D&O Action without prejudice, in exchange for his agreement to submit to mediation of the claims and disputes. [Adv. Pro. No. 20-01212, Adv. ECF No. 10]; and (2) another defendant, fuboTV, Inc., formerly known as FaceBank Group, Inc., also was dismissed without prejudice on the same day [*id.*, Adv. ECF No. 11]; and

**WHEREAS**, FBNK filed an answer in the Lien Avoidance Action and FBNK and Digital filed a motion to dismiss the claims against them in the Trustee D&O Action; and

**WHEREAS**, on February 8, 2021, the Committee voluntarily dismissed Valentine Uhovski from the Committee D&O Action without prejudice, in exchange for his agreement to submit to mediation of the claims and disputes. [Adv. Pro. No. 20-01081, Adv. ECF No. 44]; and

**WHEREAS**, on February 18, 2021, the Trustee and the Committee filed a joint motion for entry of an order assigning the Adversary Proceedings to mediation [ECF No. 180]; and

**WHEREAS**, on April 6, 2021, the Bankruptcy Court entered an order (the "***Mediation Order***") assigning the Adversary Proceedings to mediation (the "***Mediation***") before Judge Elizabeth S. Stong, United States Bankruptcy Judge for the Eastern District of New York (the "***Mediator***") [ECF No. 195]; and

**WHEREAS**, as a result of the Mediation, the efforts of the Mediator and the agreements of the Parties in the Mediation, the Mediation was resolved successfully through the negotiation and preparation of this Settlement Agreement, subject to its approval in connection with the

approval of a jointly proposed disclosure statement (the "***Disclosure Statement***") and confirmation and consummation of a chapter 11 plan of liquidation of the Debtor jointly proposed by the Trustee and the Committee (the "***Plan***"), and subject to the continuing supervision of the Mediator with respect to the implementation of the settlements embodied herein; and

**WHEREAS**, the Parties desire to compromise and have agreed to resolve amicably and settle fully and finally all of their past, present, and any future claims, disputes, and potential disputes that existed or may exist, relating to the claims that were asserted or could have been asserted in the Adversary Proceedings and the Chapter 11 Case, or relate in any way whatsoever to the Adversary Proceedings and the Chapter 11 Case, pursuant to the terms and conditions of this Settlement Agreement, without making any admission as to any claim or defenses, and all such claims and defenses are preserved pending approval of this Settlement Agreement; and

**WHEREAS**, the Parties, under the supervision of the Mediator, have negotiated this Settlement Agreement, and have had a reasonable period of time to review this Settlement Agreement with their respective counsel; and

**WHEREAS**, the Parties wish to avoid the burdens and expenses of litigation in the Adversary Proceedings and the Chapter 11 Case and have determined to fully and finally settle all disputes and/or claims and/or counter-claims between them including, but not limited to, those allegations and claims that were asserted or could have been asserted in the Adversary Proceedings and the Chapter 11 Case, or relate in any way whatsoever to the Adversary Proceedings and the Chapter 11 Case, pursuant to the terms and conditions of this Settlement Agreement as effectuated under the Plan.

**NOW**, **THEREFORE**, in consideration of the mutual covenants and undertakings set forth herein, as well as for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties, intending to be legally bound, have agreed to the following terms and conditions:

## TERMS AND CONDITIONS

1.    The above "whereas" clauses are incorporated by reference as if fully set forth herein.

2.    This Settlement Agreement is subject to approval of the Bankruptcy Court pursuant to confirmation of the Plan.

3.    The Trustee and the Committee shall submit this Settlement Agreement to the Bankruptcy Court for approval as an exhibit to the Plan and Disclosure Statement, and the Parties agree to cooperate to obtain such approval.  In the event this Settlement Agreement is not approved by the Bankruptcy Court by a final order confirming the Plan incorporating this Settlement Agreement which has not been stayed and is not subject to further appeal or review (the "***Confirmation Order***"), then the Settlement Agreement shall be null and void and of no effect and the Parties shall be restored to the factual and legal position which existed immediately prior to execution of this Settlement Agreement.  This Settlement Agreement is also contingent upon the occurrence of

the Effective Date of the Plan and the Settlement Effective Date, as defined below.  If the Settlement Effective Date does not occur, this Settlement Agreement shall be null and void.

4.      The first business day after the (a) Confirmation Order has become a final order as provided in Section 3 above, and (b) the Effective Date of the Plan as such term will be defined in the Plan, shall be the "Settlement Effective Date" applicable to this Settlement Agreement.  Except for the acts required pursuant to Sections 4, 5 and 6 below, each release or act of performance given or to be performed under this Settlement Agreement shall be deemed to have been given as of or shall be performed on the Settlement Effective Date, and no earlier.

5.      Subject to the terms herein, and on or before the later of (a) the date on which this Settlement Agreement is fully executed and (b) September 15, 2021:

> a.  Settler FBNK shall cause the aggregate amount of $1,250,000.00 to be deposited to an escrow account maintained by FBNK's counsel of record ("***Settler Settlement Escrow***").
>
> b.  Settlers Christopher Hsu, Peter Rich and Valentine Uhovski, collectively, shall deposit the aggregate amount of $150,000.00 to the Settler Settlement Escrow or the escrow account of one of their  respective attorneys of record. The Parties acknowledge that the sum paid by these Settlers shall be funded by the Debtor's directors' and officers' insurance carrier.
>
> c.  The Settlers shall send one or more emails to the counsel for the Trustee at rlevy@pryoycashman.com and counsel for the Committee at rcorbi@corbilaw.com, with a copy to the Mediator at Elizabeth_stong@nyeb.uscourts.gov, which email(s) shall indicate that the amounts required to be deposited in the Settler Settlement Escrow have been paid into the Settler Settlement Escrow account.

6.      <u>Continued Use of Cash Collateral</u>:  FBNK shall consent to the Trustee's continued use of cash collateral for an amount up to $35,000 for the period from and including August 23, 2021 to and including October 18, 2021 in accordance with an agreed upon Budget (as defined in the amended interim cash collateral Order entered subsequent to the Fifteenth Interim Cash Collateral Order (the "***Amended Interim Cash Collateral Order***") until and including confirmation and consummation of the Plan so that the Estate has the ability to pay its post-petition operating obligations arising in the ordinary course during that period.  FBNK will continue to receive the Adequate Protection Rights as defined and provided in the 15th Interim Cash Collateral Order [ECF No. 228] in exchange for the Trustee's continued use of cash collateral in accordance with this paragraph and  the Amended Interim Cash Collateral Order.  FBNK's consent to the Trustee's use of cash collateral shall terminate if the Effective Date of the Plan and this Settlement Agreement does not occur by October 15, 2021 <u>provided</u>, that FBNK shall provide three (3) days' written notice (the "***Notice Period***") to the Trustee, counsel for the Trustee, and counsel for the Committee via email at the following email addresses: rlevy@pryorcashman.com and rcorbi@corbilaw.com that FBNK's consent and such use of cash collateral has terminated, and for the avoidance of doubt, no termination of the use of cash collateral will occur until after the

termination notice is delivered in accordance with this paragraph and the Notice Period has expired; _provided, further,_ that during the Notice Period, the Trustee, the Committee and/or any other party in interest shall be entitled to seek an emergency hearing within the Notice Period with the Bankruptcy Court to consider relief in connection with delivery of the termination of cash collateral notice (the "***Remedies Hearing***"). If a Remedies Hearing is requested to be heard within the Notice Period but is scheduled for a later date by the Bankruptcy Court, the Notice Period shall be automatically extended to the date of the Remedies Hearing, provided that the Remedies Hearing is held at the earliest possible date consistent with the Bankruptcy Court's calendar.

7.    <u>No Acts Inconsistent with Settlement Pending Court Approval</u>:  No party will take any action or assert any position respecting the other Parties that is inconsistent with this Settlement Agreement pending the Bankruptcy Court's consideration and determination of whether to confirm the Plan, including approval of this Settlement Agreement.

8.    <u>Plan</u>.  The Parties agree to the treatment of their claims and defenses, and to the subordination of certain of the Parties' claims, as provided in the attached Plan/ Term Sheet, which is incorporated by reference. So long as the Plan incorporates, embodies, and provides for the approval of this Settlement Agreement pursuant to the Confirmation Order, no party shall take any action or assert any position respecting the Plan that is inconsistent with the proposed Plan, <u>provided however</u>, nothing shall prevent the Trustee and/or the Committee from making technical modifications to the Plan without the approval of the Parties and/or the Mediator, <u>provided further</u>, any modifications to the Plan made by the Trustee and/or the Committee that adversely impact the rights of the Parties to this Settlement Agreement shall require approval of the Parties affected, with notice to the Mediator, unless such affected Parties waive the requirement of such notice, and comply with Section 1127 of the Bankruptcy Code. Nothing herein shall authorize the Trustee or Committee to modify the Plan in a manner inconsistent with the terms and provisions of this Settlement Agreement.

9.    Within five (5) business days after the Settlement Effective Date, the Trustee and the Committee, as applicable, shall prepare and file stipulations and proposed forms of order dismissing each of the Adversary Proceedings with prejudice, with each party to bear its own costs and fees.

10.    With respect to the Trustee D&O Action, no later than, October 31, 2021 the Trustee and the Committee shall prepare and sign a stipulation of dismissal (the "***Stipulation***") with prejudice as to the claims of the Debtor and the Estate against Textor and counterclaims (if any) that could be asserted by Textor against the Debtor, the Estate, the Trustee, and the Committee, and obtain the signature of Textor on such Stipulation. The Stipulation shall (i) contain mutual releases between the Trustee and the Committee on the one hand, and John Textor on the other hand; and (ii) become effective upon the occurrence of the Effective Date of the Plan, at which time the Trustee shall file the Stipulation with the Bankruptcy Court.

11.    <u>Releases</u>.

a.    As a material inducement for Settlers to enter into this Settlement Agreement, on and as of the Effective Date the Trustee and the Committee, on behalf of themselves, the Debtor

EXECUTION VERSION

and the Debtor's Chapter 11 Estate, and all persons or entities that may claim by or through them, including their present, past, and future owners, affiliates, related business entities, parent companies, subsidiaries, predecessors, successors, assigns, divisions, directors, officers, trustees, members, employees, consultants, shareholders, representatives, insurers, reinsurers, agents, executors, administrators, and attorneys, in their individual and representative capacities, and all persons acting by, through, under, or in concert with any of these parties ("***Trustee and Committee Releasor***s"), hereby irrevocably and unconditionally releases, acquits, and forever discharges Settlers, their present, past, and future owners, affiliates, related business entities, parent companies, subsidiaries, predecessors, successors, assigns, divisions, directors, officers, trustees, members, joint ventures, employees, consultants, partners, stockholders, representatives, insurers, reinsurers, agents, executors, trustees, heirs, administrators, advisors, professionals and attorneys, in their individual and representative capacities, and all persons acting by, through, under, or in concert with any of these parties ("***Settler Releasees***"),[1] from any and all charges, complaints, claims, liabilities, obligations, suits, demands, costs, losses, debts, and expenses, including, but not limited to, all claims for penalties, general damages, punitive damages, compensatory damages, special damages, damages, claims under Title 11 of the United States Code, including, without limitation, under subchapter III of Chapter 5 of the Bankruptcy Code (the "***Avoidance Actions***"), equitable relief, attorneys' fees, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, demands whatsoever in law or equity, of any nature whatsoever, including, without limitation, claims for indemnification and contribution, known or unknown, suspected or unsuspected, that the Trustee and Committee Releasors had, now have, or in the future may or could have, arising out of or relating in any way to the Adversary Proceedings and the Chapter Case or that could have been asserted in the Adversary Proceedings and the Chapter 11 Case, excluding any claims to enforce their rights under this Settlement Agreement.

b.       As a material inducement for the Trustee and the Committee to enter into this Settlement Agreement, on and as of the Effective Date the Settlers, on behalf of themselves and all persons or entities that may claim by or through them, including their present, past, and future owners, affiliates, related business entities, parent companies, subsidiaries, predecessors, successors, assigns, divisions, directors, officers, trustees, members, members of the Committee, employees, shareholders, representatives, insurers, reinsurers, agents, executors, administrators, and attorneys, in their individual and representative capacities, and all persons acting by, through, under, or in concert with any of these ("***Settler Releasors***"),[2] hereby irrevocably and unconditionally release, acquit, and forever discharge the Trustee and the Committee, their present, past, and future owners, affiliates, related business entities, parent companies, subsidiaries, predecessors, successors, assigns, divisions, directors, officers, trustees, members, members of the Committee, joint ventures, employees, partners, stockholders, representatives, insurers, reinsurers, agents, executors, trustees, heirs, administrators, advisors, professionals and attorneys, in their individual and representative capacities, and all persons acting by, through, under, or in concert with any of these parties ("***Trustee and Committee Releasees***"), from any and all charges, complaints, claims, liabilities, obligations, suits, demands, costs, losses, debts, and expenses, including, but not limited to, all claims for penalties, general damages, punitive damages, compensatory damages, special damages, damages under Title 11 of the United States Code,

---

[1] The Settler Releasees shall also include those individuals and entities listed on **Exhibit A**.
[2] The Settler Releasors shall also include those individuals and entities listed on **Exhibit A**.

equitable relief, attorneys' fees, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, demands whatsoever in law or equity, of any nature whatsoever known or unknown, suspected or unsuspected, that Settler Releasors had, now have, or in the future may or could have, arising out of or relating in any way to the Adversary Proceedings and the Chapter 11 Case or that could have been asserted in the Adversary Proceedings and the Chapter 11 Case, excluding any claims to enforce their rights under this Settlement Agreement.

c.      As a material inducement for the Settlers to enter into this Settlement Agreement, on and as of the Effective Date the Trustee and Committee Releasors forever release, discharge, and covenant not to sue any "Entity" (as defined in 11 U.S.C. §101(15)) including, without limitation, the Settlers, regarding any claims that were asserted or could have been asserted in the Adversary Proceedings and the Chapter 11 Case, or relate in any way whatsoever to the Adversary Proceedings and the Chapter 11 Case, including, without limitation, the Avoidance Claims, which shall be understood to include all such claims which the Trustee and the Committee do not know of or suspect to exist in the Trustee and Committee's favor as of the Effective Date and which, if known by the Trustee and the Committee, might have affected the Trustee and the Committee's settlement and release.  The Trustee and the Committee acknowledge that they may subsequently discover facts in addition to or different from those which the Trustee and the Committee now know or believe to be true, but nonetheless the Trustee and the Committee stipulate and agree that upon attachment of the Trustee's and the Committee's signature to this Settlement Agreement, the Trustee and the Committee fully, finally, and forever settle and release any and all claims described herein, whether known or unknown, suspected or unsuspected, disclosed or undisclosed, foreseen or unforeseen, or based upon any theory of law now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rules, without regard to the subsequent discovery or existence of such different or additional facts.  The Trustee and the Committee shall assume the risks expressed above and acknowledge that the foregoing waiver was bargained for and is a material element of this Settlement Agreement.

d.      As a material inducement for the Trustee and the Committee to enter into this Settlement Agreement, on and as of the Effective Date the Settler Releasors forever release, discharge, and covenant not to sue regarding any claims that were asserted or could have been asserted in the Adversary Proceedings and the Chapter 11 Case, or relate in any way whatsoever to the Adversary Proceedings and the Chapter 11 Case, which shall be understood to include all such claims which the Settlers do not know of or suspect to exist in the Settlers' favor as of the Effective Date and which, if known by the Settlers, might have affected the Settlers' settlement and release.  The Settlers acknowledge that they may subsequently discover facts in addition to or different from those which the Settlers now know or believe to be true, but nonetheless the Settlers stipulate and agree that upon attachment of Settlers' signature to this Settlement Agreement, the Settlers fully, finally, and forever settle and release any and all claims described herein, whether known or unknown, suspected or unsuspected, disclosed or undisclosed, foreseen or unforeseen, or based upon any theory of law now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rules, without regard to the subsequent discovery or existence of such different

or additional facts.  The Settlers shall assume the risks expressed above and acknowledge that the foregoing waiver was bargained for and is a material element of this Settlement Agreement.

e.        As a further material inducement for the Settlers to enter into this Settlement Agreement, on and as of the Effective Date, the Settlers, each on behalf of the individual Parties comprising them, and all persons or entities that may claim by or through them, including their present, past, and future owners, affiliates, related business entities, parent companies, subsidiaries, predecessors, successors, assigns, divisions, directors, officers, trustees, members, members of the Committee, employees, shareholders, representatives, insurers, reinsurers, agents, executors, administrators, and attorneys, in their individual and representative capacities, and all persons acting by, through, under, or in concert with any of these parties (the "***Intra-Settler Releasors***"), hereby irrevocably and unconditionally releases, acquits, and forever discharges each of the other Settlers, their present, past, and future owners, affiliates, related business entities, parent companies, subsidiaries, predecessors, successors, assigns, divisions, directors, officers, trustees, members, joint ventures, employees, consultants, partners, stockholders, representatives, insurers, reinsurers, agents, executors, trustees, heirs, administrators, advisors, professionals and attorneys, in their individual and representative capacities, and all persons acting by, through, under, or in concert with any of these parties ("Intra-Settler Releasees"), from any and all charges, complaints, claims, liabilities, obligations, suits, demands, costs, losses, debts, and expenses, including, but not limited to, all claims for penalties, general damages, punitive damages, compensatory damages, special damages, damages under Title 11 of the United States Code, equitable relief, attorneys' fees, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, demands whatsoever in law or equity, of any nature whatsoever known or unknown, suspected or unsuspected, that Intra-Settler Releasors had, now have, or in the future may or could have, arising out of or relating in any way to the Adversary Proceedings and the Chapter 11 Case or that could have been asserted in the Adversary Proceedings and the Chapter 11 Case, excluding any claims to enforce their rights under this Settlement Agreement.

f.        Nothing herein shall be deemed a waiver of: (i) claims for breach of this Settlement Agreement; (ii) claims that may arise based upon events occurring after the Effective Date; or (iii) claims that cannot be waived as a matter of law.

g.        The Plan shall contain the broadest possible third party releases and plan injunction in favor of the Released Parties authorized by applicable law.

12.        <u>No Admission of Liability</u>

The Trustee and the Committee acknowledge and agree that the Settlers have entered into this Settlement Agreement solely for the purpose of avoiding the burdens and expenses of protracted litigation.   Further, neither this Settlement Agreement nor the furnishing of consideration for the releases intended shall be construed as an admission that the Settlers have violated any federal, state, or local law (statutory or decisional), ordinance, or regulation, or that the Settler Releasees have committed any wrongdoing whatsoever.

The Settlers acknowledge and agree that the Trustee and the Committee have entered into this Settlement Agreement solely for the purpose of avoiding the burdens and expenses of protracted litigation. Further, neither this Settlement Agreement nor the furnishing of consideration for the releases intended shall be construed as an admission that the Trustee and the Committee have violated any federal, state, or local law (statutory or decisional), ordinance, or regulation, or that the Trustee and the Committee have committed any wrongdoing whatsoever.

13.   Representations and Warranties

a.   Each of the Parties represent and warrant that (except that all of the Parties acknowledge that their entry into this Settlement Agreement is subject to the approval of the Bankruptcy Court in an order confirming the Plan) he, she or it, as the case may be, has all requisite power and authority to enter into this Settlement Agreement, that this Settlement Agreement has been duly authorized, executed, and delivered by him, her or it, as the case may be and constitutes a legal, valid, and binding obligation of each of them, enforceable against him, her or it, as the case may be, in accordance with its terms.

b.   The Parties agree, declare, and represent that no promise, inducement, representation, or agreement not herein expressed has been made to any Party or caused them to enter into this Settlement Agreement, and no Party is relying upon any such promise, inducement, representation, or agreement other than those contained within this Settlement Agreement.

c.   The Parties agree that should any of the provisions or terms of this Settlement Agreement require judicial interpretation, the Bankruptcy Court interpreting or construing this Settlement Agreement shall not apply a presumption that such provision(s) or term(s) shall be more strictly construed against any Party by reason of the rule of construction that a document is to be construed more strictly against the party who prepared it, it being agreed that the Parties and their counsel have participated jointly in the preparation and review of this Settlement Agreement.

14.   Legal Advice

The Parties understand that this Settlement Agreement affects significant rights and acknowledge that they have been advised to consult with an attorney prior to executing this Settlement Agreement, and that they did in fact consult with an attorney of each Party's choice prior to executing this Settlement Agreement. The Parties hereto also acknowledge that they have been afforded a reasonable period of time to consider and voluntarily approve the terms of this Settlement Agreement, and that they rely entirely upon their own judgment, beliefs, and interests and the advice of counsel and that they execute this Settlement Agreement fully, voluntarily, and of their own free will, and that they possess full legal and mental capacity and understand the terms and conditions herein.

15.   Non-Disparagement; No Action to be Taken That Is Inconsistent With this Settlement Agreement; Press Release(s)

(a)   The Trustee and the Committee agree, and will direct their respective past, present, and future agents, representatives and professionals, to refrain from, directly or indirectly,

denigrating, disparaging, slandering, criticizing, defaming, or making any false or derogatory statements, orally, electronically/digitally (including by email or through social media or internet) or in writing concerning the Settlers.  Nothing herein is intended to, or shall be construed to limit or preclude any truthful statements (disparaging or otherwise) made under oath in response to legal process, in a legal proceeding or as otherwise required by law or final non-appealable court order.

(b)      The Settlers agree to direct their respective past, present, and future directors and officers to refrain from, directly or indirectly, denigrating, disparaging, slandering, criticizing, defaming, or making any false or derogatory statements, orally, electronically/digitally (including by email or through social media or internet) or in writing, concerning the Trustee and the Committee.  Nothing herein is intended to, or shall be construed to limit or preclude any truthful statements (disparaging or otherwise) made under oath in response to legal process, in a legal proceeding or as otherwise required by law or final non-appealable court order.

(c)      The Settlers further each agree to direct, but are not obligated to enforce, their respective past, present, and future directors and officers to refrain from, directly or indirectly, denigrating, disparaging, slandering, criticizing, defaming, or making any false or derogatory statements, orally, electronically/digitally (including by email or through social media or internet) or in writing, concerning the other Parties comprising the Settlers.   Nothing herein is intended to, or shall be construed to limit or preclude any truthful statements (disparaging or otherwise) made under oath in response to legal process, in a legal proceeding or as otherwise required by law or final non-appealable court order.

(d)      [RESERVED FOR APPLICABLE PRESS RELEASES(S)]

16.    Further Assurances.

Each Party shall execute and deliver any document or instrument reasonably requested by the other Party after the date of this Settlement Agreement to effectuate the intent of this Settlement Agreement.

17.    Entire Settlement Agreement.

This Settlement Agreement constitutes the entire agreement and understanding between the Parties pertaining to the subject matter hereof and supersedes any and all prior or contemporaneous agreements, representations and understandings of the Parties concerning the subject matter hereof.

18.    Amendment; Waiver.

This Settlement Agreement may not be terminated, amended, modified or abrogated in any way except by written instrument signed by all Parties or their authorized representative.  The failure of any Party at any time or times to require performance of any provision of this Settlement Agreement shall in no manner affect the rights at a later time to enforce the same.  No waiver by any Party of the breach of any term or covenant contained in this Settlement Agreement, whether by conduct or otherwise, in any one or more instances, shall be deemed to be, or be construed as,

a further or continuing waiver of any such breach, or a waiver of the breach of any other term or covenant contained in this Settlement Agreement.

19.    Assignment.

This Settlement Agreement may not be assigned by any Party without the prior written consent of all other Parties.  All mutually agreed upon assignees shall be known as "Permitted Assigns."

20.    Successors.

This Settlement Agreement shall be binding upon, inure to the benefit of and be enforceable against the Parties and their respective estates, heirs, personal representatives, executors, administrators, heirs, successors, Permitted Assigns, transferees, any subsequent chapter 7 trustee appointed in the Chapter 11 Case upon or after conversion to a case under chapter 7 of the Bankruptcy Code, and any other persons who have asserted or seek to assert claims on behalf of or against the Debtor's estate.

21.    Negotiated Settlement Agreement.

This Settlement Agreement has been fully negotiated by the Parties.  Each Party acknowledges and agrees that this Settlement Agreement has been drafted jointly, and the rule that ambiguities in an agreement or contract may be construed against the drafter shall not apply in the construction or interpretation of this Agreement.  All prior understandings, representations, writings, and undertakings between or among the Parties with respect to the matters covered in this Settlement Agreement are merged herein and superseded hereby.

22.    Severability.

In the event that any term or provision of this Settlement Agreement or any application thereof is deemed to be invalid or unenforceable, the remainder of this Settlement Agreement and any other application of such term or provision shall not be affected thereby.

23.    Counterparts; Electronic Copy of Signatures.

This Settlement Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document.  Each Party may evidence its execution of this Settlement Agreement by delivery to the other Party of scanned or faxed copies of its signature, with the same effect as the delivery of an original signature.

24.    Governing Law and Jurisdiction.

This Settlement Agreement and any claim related directly or indirectly to this Settlement Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to the principles of conflicts of law thereof) and the Bankruptcy Code.  Each

Party hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of New York law provision is or has become unreasonable in any legal proceeding. Each Party hereto irrevocably and unconditionally submits to and accepts the exclusive jurisdiction of the Bankruptcy Court for any action, suit, or proceeding arising out of or based upon this Settlement Agreement or any matter relating to it, and waives any objection that it may have to the laying of venue in any such court or that such court is an inconvenient forum or does not have personal jurisdiction over them, solely for purposes of enforcing this Settlement Agreement.  The prevailing Party in any such dispute shall be entitled to recover its reasonable attorneys' fees and costs, in addition to all other relief to which that Party may be entitled.

     25.   <u>Expenses</u>.

Each Party shall bear its respective expenses relating to, arising in or arising out of the Adversary Proceedings and this Settlement Agreement, including, but not limited to, fees for attorneys, experts, consultants, accountants and other advisors.

     26.   <u>Notices</u>.

All notices, requests, demands, consents and communications necessary or required under this Settlement Agreement shall be in writing and shall be delivered by hand or sent by registered or certified mail, return receipt requested, by overnight mail with confirmation, by facsimile (receipt confirmed) or by electronic means (receipt confirmed), in each case addressed and copied as set forth on the applicable signature page hereto.  A Party may change its address for receiving notice by giving notice of a new address in the manner provided herein.  All such notices, requests, demands, consents and other communications shall be deemed to have been duly given or sent two (2) days following the date on which mailed, or on the date on which delivered by courier or by hand or by facsimile or electronic transmission (receipt confirmed), as the case may be, and addressed as aforesaid.

     27.   <u>No Third Party Beneficiaries</u>.

Except as expressly provided in this Settlement Agreement, the Parties do not intend to confer any benefit by or under this Settlement Agreement upon any person or entity other than the Parties hereto and their respective successors and Permitted Assigns.

     28.   <u>Captions; Paragraphs and Rules of Construction</u>.

Any reference in this Settlement Agreement to a paragraph is to a paragraph of this Settlement Agreement.  "Including" is not intended to be a limiting term.  Paragraph and other headings contained in this Settlement Agreement are for reference purposes only and are not intended to describe, interpret, define, or limit the scope, extent, or intent of this Settlement Agreement or any provision hereof.  All pronouns and any variations thereof shall be deemed to refer to the masculine, feminine, or neuter, singular or plural, as the identity of the person or persons may require.

     29.   <u>Jointly Drafted Document</u>.

EXECUTION VERSION

This Settlement Agreement shall be deemed to have been jointly drafted by the Parties in construing and interpreting this Settlement Agreement.  No provision shall be construed and interpreted for or against any of the Parties because such provision or any other provision of this Settlement Agreement or the Settlement Agreement as a whole was, prepared or requested by such party.

**THIS SETTLEMENT AGREEMENT INCLUDES A GENERAL RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS AGAINST PARTIES WHO ARE NOT PARTIES TO THIS SETTLEMENT AGREEMENT WHO ARE AND SHALL BE THIRD PARTY BENEFICIARIES OF THIS SETTLEMENT AGREEMENT.**

**EACH PARTY EXPRESSLY ACKNOWLEDGES, REPRESENT, AND WARRANTS: THAT SUCH PARTY HAS CAREFULLY READ THIS SETTLEMENT AGREEMENT; THAT THIS SETTLEMENT AGREEMENT HAS BEEN FULLY EXPLAINED TO SUCH PARTY BY COUNSEL OF SUCH PARTY'S CHOICE; THAT SUCH PARTY FULLY UNDERSTANDS THE FINAL AND BINDING EFFECT OF THIS SETTLEMENT AGREEMENT, SUBJECT TO CONFIRMATION AND CONSUMMATION OF THE PLAN; THAT THE ONLY PROMISES MADE TO SUCH PARTY IN EXCHANGE FOR SIGNING THIS SETTLEMENT AGREEMENT ARE THOSE STATED ABOVE AND IN THE PLAN TERM SHEET; AND THAT SUCH PARTY IS SIGNING THIS SETTLEMENT AGREEMENT VOLUNTARILY IN ORDER TO FINALLY, COMPLETELY, AND CONCLUSIVELY SETTLE ALL MATTERS THAT WERE OR COULD HAVE BEEN RAISED IN THE ADVERSARY PROCEEDINGS OR THE CHAPTER 11 CASE OR RELATE IN ANY WAY WHATSOEVER TO THE ADVERSARY PROCEEDINGS OR THE CHAPTER 11 CASE.  THE PARTIES AGREE TO WAIVE AND RELEASE ANY CLAIMS THAT THIS SETTLEMENT AGREEMENT WAS PROCURED BY, OR THAT THEY WERE INDUCED TO ENTER INTO THIS SETTLEMENT AGREEMENT BY, FRAUD, DURESS, MISUNDERSTANDING, OR COERCION, AND FURTHER WAIVE AND RELEASE ANY CLAIM FOR FRAUD IN THE INDUCEMENT OR ANY SIMILAR CLAIM.**

## **APPROVED AND AGREED**

**MEGAN E. NOH,**
**SOLELY IN HER CAPACITY AS CHAPTER 11 TRUSTEE**

_____

Richard Levy, Jr.
**PRYOR CASHMAN LLP**
7 Times Square
New York, New York  10036-6569
Tel.:    (212) 421-4100
Fax:    (212) 326-0806
Email: rlevy@pryorcashman.com

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By:_____
Its: _____

Richard J. Corbi
**THE LAW OFFICES OF RICHA**
1501 Broadway
New York, New York 10036
Tel.:    (646) 571-2033
Email: rcorbi@corbilaw.com

**DIGITAL COMMERCE STRATEGY AG,**

By:_____
Its: _____

Jonathan I. Rabinowitz
**RABINOWITZ, LUBETKIN & TULLY, L.L.C**.
293 Eisenhower Parkway, Suite 100
Livingston, New Jersey 07039
Office:   973-597-9100 x109
Fax:      973-597-9119
E-Mail:  jrabinowitz@rltlawfirm.com

**FBNK FINANCE S.A.R.L.**

By:_____
Its: _____

## APPROVED AND AGREED

**MEGAN E. NOH,**
**SOLELY IN HER CAPACITY AS CHAPTER 11 TRUSTEE**

_____

Richard Levy, Jr.
**PRYOR CASHMAN LLP**
7 Times Square
New York, New York  10036-6569
Tel.:    (212) 421-4100
Fax:    (212) 326-0806
Email: rlevy@pryorcashman.com

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By: _Richard J. Corbi_
Its: _Attorneys_

Richard J. Corbi
**THE LAW OFFICES OF RICHARD J. CORBI PLLC**
1501 Broadway
New York, New York 10036
Tel.:    (646) 571-2033
Email: rcorbi@corbilaw.com

**DIGITAL COMMERCE STRATEGY AG,**

By:_____
Its: _____

Jonathan I. Rabinowitz
**RABINOWITZ, LUBETKIN & TULLY, L.L.C**.
293 Eisenhower Parkway, Suite 100
Livingston, New Jersey 07039
Office:  973-597-9100 x109
Fax:    973-597-9119
E-Mail:  jrabinowitz@rltlawfirm.com

**FBNK FINANCE S.A.R.L.**

By:_____
Its: _____

EXECUTION VERSION

### <u>APPROVED AND AGREED</u>

**MEGAN E. NOH,**
**SOLELY IN HER CAPACITY AS CHAPTER 11 TRUSTEE**

_____

Richard Levy, Jr.
**PRYOR CASHMAN LLP**
7 Times Square
New York, New York 10036-6569
Tel.:    (212) 421-4100
Fax:    (212) 326-0806
Email: rlevy@pryorcashman.com

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By:_____
Its: _____

Richard J. Corbi
**THE LAW OFFICES OF RICHARD J. CORBI PLLC**
1501 Broadway
New York, New York 10036
Tel.:    (646) 571-2033
Email: rcorbi@corbilaw.com

**DIGITAL COMMERCE STRATEGY AG,**

By: _THOMAS GARRAHAN_
Its: _DIRECTOR_

Jonathan I. Rabinowitz
**RABINOWITZ, LUBETKIN & TULLY, L.L.C.**
293 Eisenhower Parkway, Suite 100
Livingston, New Jersey 07039
Office:  973-597-9100 x109
Fax:    973-597-9119
E-Mail: jrabinowitz@rltlawfirm.com

**FBNK FINANCE S.A.R.L.**

By:_____
Its: _____

EXECUTION VERSION

### <u>APPROVED AND AGREED</u>

**MEGAN E. NOH,**
**SOLELY IN HER CAPACITY AS CHAPTER 11 TRUSTEE**

_____

Richard Levy, Jr.
**PRYOR CASHMAN LLP**
7 Times Square
New York, New York  10036-6569
Tel.:    (212) 421-4100
Fax:    (212) 326-0806
Email: rlevy@pryorcashman.com

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By:_____
Its: _____

Richard J. Corbi
**THE LAW OFFICES OF RICHARD J. CORBI PLLC**
1501 Broadway
New York, New York 10036
Tel.:    (646) 571-2033
Email: rcorbi@corbilaw.com

**DIGITAL COMMERCE STRATEGY AG,**

By:_____
Its: _____

Jonathan I. Rabinowitz
**RABINOWITZ, LUBETKIN & TULLY, L.L.C**.
293 Eisenhower Parkway, Suite 100
Livingston, New Jersey 07039
Office:   973-597-9100 x109
Fax:      973-597-9119
E-Mail:  jrabinowitz@rltlawfirm.com

**FBNK FINANCE S.A.R.L.**

By:_____
Its: Jan Schulmeister_____

Jonathan I. Rabinowitz
**RABINOWITZ, LUBETKIN & TULLY, L.L.C**.
293 Eisenhower Parkway, Suite 100
Livingston, New Jersey 07039
Office:   973-597-9100 x109
Fax:      973-597-9119
E-Mail:  jrabinowitz@rltlawfirm.com

**NORMAN HANSEN**

By: _____
Its: _____

Jonathan I. Rabinowitz
**RABINOWITZ, LUBETKIN & TULLY, L.L.C.**
293 Eisenhower Parkway, Suite 100
Livingston, New Jersey 07039
Tel.: 973-597-9100 x109
Fax:      973-597-9119
E-Mail:  jrabinowitz@rltlawfirm.com

**SERGEY SKATERSCHIKOV**

By:_____
Its: _____

**IZABELA DEPCZYK**

By:_____
Its: _____

Tracy Klestadt
Brendan M. Scott
**KLESTADT WINTERS GRELLER SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Tel.: (212) 972-3000
Fax: (212) 972-2245

**VALENTINE UHOVSKI**

By:_____
Its: _____

Joseph Czerniawski
**CONDON & FORSYTH LLP**

EXECUTION VERSION

Jonathan I. Rabinowitz
**RABINOWITZ, LUBETKIN & TULLY, L.L.C**.
293 Eisenhower Parkway, Suite 100
Livingston, New Jersey 07039
Office:   973-597-9100 x109
Fax:       973-597-9119
E-Mail:  jrabinowitz@rltlawfirm.com

**NORMAN HANSEN**

By:_____
Its: _____

Jonathan I. Rabinowitz
**RABINOWITZ, LUBETKIN & TULLY, L.L.C.**
293 Eisenhower Parkway, Suite 100
Livingston, New Jersey 07039
Tel.: 973-597-9100 x109
Fax:       973-597-9119
E-Mail:  jrabinowitz@rltlawfirm.com

**SERGEY SKATERSCHIKOV**

By:_____
Its: _____

**IZABELA DEPCZYK**

By:_____
Its: _____

Tracy Klestadt
Brendan M. Scott
**KLESTADT WINTERS GRELLER SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Tel.: (212) 972-3000
Fax: (212) 972-2245

**VALENTINE UHOVSKI**

By:_____
Its: _____

Joseph Czerniawski
**CONDON & FORSYTH LLP**

Jonathan I. Rabinowitz
**RABINOWITZ, LUBETKIN & TULLY, L.L.C.**
293 Eisenhower Parkway, Suite 100
Livingston, New Jersey 07039
Office:   973-597-9100 x109
Fax:       973-597-9119
E-Mail:  jrabinowitz@rltlawfirm.com

**NORMAN HANSEN**

By:_____
Its: _____

Jonathan I. Rabinowitz
**RABINOWITZ, LUBETKIN & TULLY, L.L.C.**
293 Eisenhower Parkway, Suite 100
Livingston, New Jersey 07039
Tel.: 973-597-9100 x109
Fax:       973-597-9119
E-Mail:  jrabinowitz@rltlawfirm.com

**SERGEY SKATERSCHIKOV**

By:_____
Its: _____

**IZABELA DEPCZYK**

By:_____
Its: _____

Tracy Klestadt
Brendan M. Scott
**KLESTADT WINTERS GRELLER SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Tel.: (212) 972-3000
Fax: (212) 972-2245

**VALENTINE UHOVSKI**

By: _____
Its:  N/A _____

Joseph Czerniawski
**CONDON & FORSYTH LLP**

7 Times Square
New York, New York 10036
Tel.:    (212) 894-6824
Fax:    (212) 370-4453
Email: JCzerniawski@condonlaw.com

**PETER RICH**

By: _____
Its: _____

Rosalyn Maldonado
**ROSALYN MALDONADO P.C.**
108 S. Franklin Avenue, Suite 11
Valley Stream, New York 11580
Tel.: (516) 274-0613, ext. 101
Fax: (516) 274-0615
Email: rmaldonado@rmaldonadolaw.com


**CHRISTOPHER HSU**

By:_____
Its: _____

Ronald A. Giller
Kasey T. Mahoney
**GORDON REES SCULLY MANSUKHANI, LLP**
1 Battery Park Plaza, 28th Floor
New York, NY 10004
Phone: (973) 549-2500
Fax: (973) 377-1911
Email: rgiller@grsm.com
        kmahoney@grsm.com


**FUBOTV INC.**

By:_____
Its: _____

EXECUTION VERSION

7 Times Square
New York, New York 10036
Tel.:    (212) 894-6824
Fax:    (212) 370-4453
Email: JCzerniawski@condonlaw.com

**PETER RICH**

By:_____
Its: _____

Rosalyn Maldonado
**ROSALYN MALDONADO P.C.**
108 S. Franklin Avenue, Suite 11
Valley Stream, New York 11580
Tel.: (516) 274-0613, ext. 101
Fax: (516) 274-0615
Email: rmaldonado@rmaldonadolaw.com

**CHRISTOPHER HSU**

*Christopher Hsu*

By:_____
Its: Authorized Signatory

Ronald A. Giller
Kasey T. Mahoney
**GORDON REES SCULLY MANSUKHANI, LLP**
1 Battery Park Plaza, 28th Floor
New York, NY 10004
Phone: (973) 549-2500
Fax: (973) 377-1911
Email: rgiller@grsm.com
          kmahoney@grsm.com

**FUBOTV INC.**

By:_____
Its: _____

## SCHEDULE A

## INDIVIDUALS AND ENTITIES RECEIVING RELEASES

Individuals

1. Sergey Skaterschikov (sometimes Sergei Skatershchikov)
2. Izabela Depczyk
3. Simon (sometimes "Semen") Vidrevich
4. Victor Iezuitov
5. Norman Hansen (sometimes Hanson)
6. Ilya Sokolovsky (sometimes "Sokolovskiy")
7. Julia Wasowska
8. Magdalena Gajny
9. Marek Domagala
10. Alex Rubin (sometimes Aleksandr Rubin)
11. Brian McConville
12. Peter Rich
13. Ramesh Ganeshan
14. Michael McClellan
15. Patrick Girod
16. Christopher Hsu
17. Jan Schulmeister
18. Aston Fallen
19. Christophe Bruno Cahuzac
20. Doug Bania, manager and member of Nevium LLC
21. Megan E. Noh, solely in her capacity as Chapter 11 Trustee
22. Valentine Uhovski

Entities
Note: All past, present and future parents, subsidiaries, affiliates, directors, officers, shareholders, members, partners, insurers, attorneys, advisors agents and employees and their respective successors or assigns and heirs.

1. 8+ Holdings LLC entity (including any subsequent name changes and any subsidiaries)
2. Paddle8 Holdings LLC
3. Alti Exchange Group AG
4. Alti Holdings, Inc (including any subsequent name changes and any subsidiaries)
5. Digital Commerce Strategy AG (formerly known at various times as FaceBank AG, Oakley Capital International AG, and/or Gamechanger AG)
6. FBNK Finance S.a.r.l.
7. Highlight Finance Corp.
8. IndexAtlas AG and all affiliates

EXECUTION VERSION

9.  IndexAtlas Group
10. Lighthouse Capital
11. Lightyear Collective, LLC
12. The Native SA (including any subsequent name changes and any subsidiaries) and all subsidiaries
13. Nexway AG and all affiliates
14. Nexway Group AG
15. Stockaccess Holdings SAS
16. The Native Media Inc. (including any subsequent name changes and any subsidiaries)
17. Prager Metis
18. Nevium LLC

EXECUTION VERSION

IN RE P8H, INC. D/B/A PADDLE 8

PLAN TERM SHEET

**August 20, 2021**

**THIS PLAN TERM SHEET IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN OF REORGANIZATION PURSUANT TO THE BANKRUPTCY CODE. ANY SUCH OFFER OR SOLICITATION WILL BE MADE ONLY IN COMPLIANCE WITH ALL APPLICABLE SECURITIES LAWS AND PROVISIONS OF THE BANKRUPTCY CODE. THIS PLAN TERM SHEET IS BEING PROVIDED IN FURTHERANCE OF SETTLEMENT DISCUSSIONS AND IS ENTITLED TO PROTECTION PURSUANT TO RULE 408 OF THE FEDERAL RULES OF EVIDENCE AND ANY SIMILAR FEDERAL OR STATE RULE OF EVIDENCE. THE TRANSACTIONS DESCRIBED IN THIS PLAN TERM SHEET ARE SUBJECT IN ALL RESPECTS TO, AMONG OTHER THINGS, EXECUTION AND DELIVERY OF DEFINITIVE DOCUMENTATION AND SATISFACTION OR WAIVER OF THE CONDITIONS PRECEDENT SET FORTH THEREIN.**

NOTHING IN THIS PLAN TERM SHEET SHALL CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, A STIPULATION OR A WAIVER, AND EACH STATEMENT CONTAINED HEREIN IS MADE WITHOUT PREJUDICE, WITH A FULL RESERVATION OF ALL RIGHTS, REMEDIES, CLAIMS AND DEFENSES OF THE PARTIES TO THE RESTRUCTURING SUPPORT AGREEMENT (AS DEFINED BELOW). THIS PLAN TERM SHEET DOES NOT INCLUDE A DESCRIPTION OF ALL OF THE TERMS, CONDITIONS, AND OTHER PROVISIONS THAT ARE TO BE CONTAINED IN THE DEFINITIVE DOCUMENTS, WHICH REMAIN SUBJECT TO DISCUSSION, NEGOTIATION AND EXECUTION. EXCEPT AS PROVIDED IN THE RESTRUCTURING SUPPORT AGREEMENT, THIS PLAN TERM SHEET, AND THE TERMS CONTAINED HEREIN, ARE CONFIDENTIAL.

### SUMMARY OF RESTRUCTURING TRANSACTION

This term sheet (this "**Plan Term Sheet**") sets forth certain key terms of a proposed restructuring transaction (the "**Transaction**") with respect to the existing debt and other obligations of P8H, Inc. d/b/a Paddle 8 (the "**Debtor**") to be implemented through a plan of reorganization (the "**Plan**") and the other Definitive Documents (as defined below).  This Plan Term Sheet supersedes any proposed summary of terms or conditions regarding the subject matter hereof and dated prior to the date hereof.

| The Debtor | P8H, Inc. d/b/a Paddle 8 |
|---|---|
| Plan Proponents | Megan M. Noh, in her role as Chapter 11 Trustee (the "**Trustee**") of the Debtor, and the Official Committee of Unsecured Creditors (the "**Committee**"). |
| Claims to be Restructured/Settled Pursuant to Plan | StockAccess/FBNK & Digital Commerce Strategy AG: consisting of alleged prepetition secured claims (the "**Secured Claims**").<br><br>Auction Seller Claims:  consisting of prepetition unsecured claims of persons and entities who, as sellers or consignors ("**Auction Sellers**"), claim common law rights, and certain Auction Sellers who, as artist-consignors also claim statutory protections under the New York Arts & Cultural Affairs Law (collectively, the "**Auction Seller Claims**").<br><br>General Unsecured Claims: consisting of all other prepetition general unsecured claims and prepetition auction buyer claims (the "**General Unsecured Claims**"). |
| Funding of the Plan | The Plan shall be funded with cash on hand in the Debtor's estate, including the remaining proceeds of the sale of substantially all of the Debtor's assets, certain segregated funds held pursuant to prior orders of the Bankruptcy Court pending further order or adjudication, and settlement proceeds resulted from the mediation and resolution of the three adversary proceedings commenced by the Trustee and/or the Committee.<br><br>Based on their review of the claims asserted and required to be paid, the Trustee and the Committee anticipate that the Debtor's cash requirements on the Effective Date will be approximately $2.153 million based on the following payment obligations: |

2

EXECUTION VERSION

**Uses of funds:**

- Priority Claims (including priority taxes): $40,000.00
- Administrative Expense Claims: $30,000.00
- General Unsecured Claims (other than the insider claims of StockAccess (including its successors in interest), Recall Studios, and Hashtag Studios): $250,000.00
- Auction Seller Claims: $283,000.00
- Professional Fees:
  - Pryor Cashman LLP: $1.2 million for services and expenses through June 30, 2021, and up to $200,000 for services from July 1, 2021 through confirmation.
  - The Law Offices of Richard J. Corbi PLLC: $100,000 for services and expenses through June 30, 2021, and $30,000 for services and expenses through confirmation.
- Prager Metis LLP: $20,000.00
- Estate reserve: $190,000 for adjustments in claims and post-confirmation expenses.

**Sources of funds:**

- Funds held in Trustee Accounts: **$944,000.00** (less estimated budgeted operating expenses of $30,988 to be incurred through confirmation).

- Additional Cash Required to Fund the Plan Net of Trustee Accounts: **$1,400,000.**

3

## SETTLEMENT OF LITIGATION CLAIMS

The Plan will incorporate approval of a settlement of the Litigation Claims pursuant to Bankruptcy Rule 9019.

| | |
|---|---|
| **Litigation Settlements** | 1. Defendant Digital Commerce Strategy AG, for itself and its affiliates or subsidiaries, including FBNK Finance S.à.r.l., a Luxembourg company ("<u>FBNK</u>"), and Stockaccess Holdings SAH and FaceBank AG, a privately-owned Swiss holding company ("<u>FBAG</u>", and together with FaceBank and FBNK, the "<u>FBAG Parties</u>") shall cause the aggregate amount of $1,250,000.00 to be deposited to an escrow account maintained by FBNK's counsel of record.<br><br>2. Defendants and Settlers Peter Rich, Valentine Uhovski, and Christopher Hsu, collectively, shall deposit the aggregate amount of $150,000.00 to the Settler Settlement Escrow or the escrow account of one of their respective attorneys of record. The Parties acknowledge that the sum paid by these Settlers shall be funded by the Debtor's directors' and officers' insurance carrier.<br><br>3. Payment shall be made as follows: (a) paid into escrow on or before the later of (i) the date on which the Settlement Agreement is fully executed; and (ii) September 15, 2021; and (b) settlement payments shall be held in the escrow account of counsel for the defendants pending confirmation of the Plan, including approval of the Settlement Agreement.<br><br>4. The Trustee and the Committee shall release all claims and causes of action against the Defendants and certain other persons covered by the Settlement Agreement (the "**Released Parties**") arising in the pending adversary proceedings commenced by the Trustee or the Committee, under the Bankruptcy Code and in the Chapter 11 case.<br><br>5. The FBAG Parties who are entitled to vote on the Plan shall vote in favor of the Plan.<br><br>6. The Trustee and the Committee take such other actions as may be necessary and appropriate to facilitate confirmation of the Plan. No settling party shall take positions adverse to the Plan or engage in litigation activities adverse to this Term Sheet or the Plan. |

| | |
|---|---|
| | 7. The Plan shall contain the broadest possible third party releases and plan injunction in favor of the Released Parties authorized by applicable law.<br><br>8. With respect to the Trustee D&O Action, no later than October 31 2021, the Trustee and the Committee shall prepare and sign a stipulation of dismissal (the "**Stipulation**") with prejudice as to the claims of the Debtor and the Estate against Textor, counterclaims (if any) that could be asserted by Textor against the Debtor, the Estate, the Trustee, and the Committee, and obtain the signature of Textor on the Stipulation. The Stipulation shall (i) contain mutual releases between the Trustee and the Committee on the one hand and Textor on the other hand; and (ii) become effective upon the occurrence of the Effective Date of the Plan, at which time the Trustee shall file the Stipulation with the Bankruptcy Court.. |

## TREATMENT OF CLAIMS AGAINST THE DEBTORS

The below substantially summarizes the treatment to be received on or as soon as practicable after the Plan Effective Date by holders of claims against the Debtor pursuant to the Plan and the voting status of such claims and interests.

| | |
|---|---|
| **Administrative Expense, Priority Tax, and Other Priority Claims**<br><br>*Unimpaired – Not Entitled to Vote; Presumed to Accept; Estimated Allowed Amount of Claims at $40,000, approximately $1.340 million of which is anticipated to be unpaid fees and costs of professionals* | Allowed administrative, priority tax, and other priority claims shall be satisfied in full, in cash, or otherwise receive treatment consistent with the provisions of section 1129(a)(9) (or other applicable provisions) of the Bankruptcy Code.<br><br>The Allowed Administrative Expense Claim of the Debtor's former landlord for post-petition/pre-rejection rent and other obligations due under the lease shall be satisfied by the landlord's retention and application of the full $45,000 cash security deposit it holds and application to its administrative expenses in the amount of [$40,500] for lease obligations and not more than $[    ] in the landlord's attorney's' fees chargeable for such period pursuant to the lease. The balance of the landlord's rejection claim shall be treated as a General Unsecured Claim.<br><br>The Trustee and/or the Committee will file a motion to set a pre-confirmation deadline for the filing of Administrative Expenses Claims. |
| **Other Secured Claims** | Each holder of an allowed secured claim other than the Stockaccess Claim, if any, shall receive (a) cash equal to the full allowed amount |

| | |
|---|---|
| *Impaired – Not Entitled to Vote; Presumed to Accept; Estimated Allowed Amount of Claims at $0.00* | of its claim, (b) reinstatement of such holder's claim, (c) the return or abandonment of the collateral securing such claim to such holder, or (d) such other less favorable treatment as may otherwise be agreed to by such holder and the Trustee in consultation with the Committee. |
| **Secured Claims**<br><br>*Unimpaired – Entitled to Vote;*<br><br>*Estimated Allowed Amount of Claims at $8.5 million* | StockAccess' alleged secured claim (the "**Stockaccess Claim**") shall be treated as an Allowed General Unsecured Claim in its full scheduled amount.  Such claim shall be subordinated to all other general unsecured claims, and shall not be entitled to any distribution. |
| **Auction Seller Claims**<br><br>*Impaired –Entitled to Vote*<br><br>*Estimated Allowed Amount of Claim at $730,000* | On or as soon as practicable after the Plan Effective Date or the date of allowance of any such claim to which an objection has been filed, except to the extent that a holder agrees to less favorable treatment, the holder of an Auction Seller Claim shall receive payment in cash as follows:  (i) ratable shares of the segregated cash account held by the Trustee; plus (ii) an amount equal to approximately 10% of the allowed payment of such claim.<br><br>For the six (6) Auction Seller Claims that asserted entitlements under NYACAL, each holder of such claim shall receive payment in cash of the amount stated under the preceding paragraph, plus an additional amount equal to approximately 10% of such claim. |
| **Other General Unsecured Claims**<br><br>*Impaired –Entitled to Vote*<br><br>*Estimated Allowed Amount of Claims at $2.5 million* | On or as soon as practicable after the earliest to occur of the Plan Effective Date or the date of allowance of any such claim to which an objection has been filed, except to the extent that a holder agrees to less favorable treatment, each holder of an allowed General Unsecured Claim shall receive payment in the amount of approximately 10% of the allowed claim in cash.<br><br>For those claimants whose claims are based on their purchases of items auctioned or sold on the Debtor's platform, but for which the claimant did not receive such purchase, each claimant shall have the following option: (1) confirm the purchase, in which case the claimant must defray the cost of shipment to receive delivery of such items from the location in which they have been stored, and the right to file a supplemental General Unsecured Claim for the costs of delivery; (2) decline to complete the purchase, in which case the claimant shall |

|  | have a General Unsecured Claim as scheduled or, if a proof of claim was filed, in such proof of claim, and the claimants shall be deemed to have waived any ownership right, title or interest in such items. The contract between the Debtor and each such claimant for the sale of such items shall be deemed rejected by the Plan, provided that if the claimant elects to receive delivery of the item(s) the claimant shall have no claim against the estate except for the reasonable delivery costs it incurs. |
|---|---|

## OTHER TERMS OF THE TRANSACTION AND IMPLEMENTATION

| Definitive Documents | This Plan Term Sheet is indicative, and any final agreement with respect to the Transaction will be subject to the Definitive Documents. The Definitive Documents shall (i) contain terms and conditions consistent in all respects with the Plan Term Sheet, and (ii) be consistent with and subject to the applicable approval and consent rights set forth in this Plan Term Sheet; provided, that, upon completion, the Definitive Documents and every other document, agreement, filing, notification letter or instrument related to the Transaction shall contain terms, conditions, representations, warranties, and covenants consistent with the terms of the Plan Term Sheet. |
|---|---|
| **Executory Contracts and Unexpired Leases** | All executory contracts and unexpired leases not expressly assumed shall be rejected pursuant to the Plan. |
| **Implementation of the Plan** | The Plan will provide for the designation of a Plan Administrator to implement the Plan and complete the liquidation of the Debtor. Among other things, the Plan Administrator will be a representative of the Debtor's estate under 11 U.S.C. § 1123(b)(3)(B) and shall have the power to pursue, settlement, compromise or elect not to pursue any causes of action held by the estate, and to abandon or otherwise dispose of any remaining property of the Debtor. |
| **Releases, Exculpation, and Indemnification** | The Plan and Confirmation Order will contain customary mutual releases (including third party releases), exculpation, and indemnification provisions, in each case, to the fullest extent permitted by law, in favor of the Debtor, the Trustee, the Committee, members of the Committee, the FBNK Parties, Valentine Uhovski, Peter Rich, Christopher Hsu, Sergey Skaterschikov, Isabela Depczyk, |

EXECUTION VERSION

| | |
|---|---|
| | and Norman Hansen. |
| **Injunction and Discharge** | The Plan and Confirmation Order will contain customary injunction and discharge provisions. |
| **Avoidable Transfers and Contract or Other Recoveries** | The Plan will provide for the appropriate mechanism to prosecute and recover (or compromise and settle) claims  pursuant to Chapter 5 of the Bankruptcy Code, contracts, and other avenues of recovery based on applicable law. |
| **Disposition of Remaining Property of the Estate** | The Trustee and the Committee shall confer concerning the disposition of any remaining tangible and miscellaneous property of the estate, and shall determine whether to sell, donate, or abandon any or all such property by reasonable and cost-effective means, or shall defer such matters to the Plan Administrator. |
| **Milestones** | No later than **August 23, 2021,** the Trustee and the Committee shall have filed with the Bankruptcy Court a settlement agreement (this "**Settlement Agreement**"), as an exhibit to the Plan, by and between the Trustee, the Committee, the FBNK Parties, Valentine Uhovski, Peter Rich, Christopher Hsu, Sergey Skaterschikov, Isabela Depczyk, and Norman Hansen.<br><br>No later than **August 23, 2021,** the Trustee and the Committee shall have filed with the Bankruptcy Court the Plan and related disclosure statement (the "**Disclosure Statement**") and the motion seeking approval of the solicitation procedures, preliminary and final approval of the adequacy of the Disclosure Statement and setting a final hearing on approval of the adequacy of the Disclosure Statement and confirmation of the Plan (the "**Disclosure Statement Motion**")<br><br>No later than **August**, **26, 2021, or as soon as practicable thereafter,** the Bankruptcy Court shall convene a hearing to schedule the solicitation of acceptance of the Plan pursuant to a conditionally-approved disclosure statement and the further proceedings for confirmation of the Plan and final approval of the Disclosure Statement, and shall have entered an order (the "**Disclosure Statement Order**") conditionally approving the Disclosure Statement on a preliminary basis, authorizing the solicitation of acceptances of the Plan, and scheduling the necessary further court proceedings, which Order shall be and remain in full force and effect and is not subject to any stay;<br><br>No later than **August 30, 2021, unless otherwise ordered by the** |

| | |
|---|---|
| | **Bankruptcy Court,** the Trustee shall have commenced the solicitation of acceptances in accordance with the Disclosure Statement Order and the related solicitation procedures;<br><br>No later than **September 30, 2021, unless otherwise ordered by the Bankruptcy Court,** the Bankruptcy Court shall have conducted the hearing and have entered an order approving the Disclosure Statement on a final basis and an order (the "**Confirmation Order**") confirming the Plan; and<br><br>No later than **September 30, 2021, unless otherwise ordered by the Bankruptcy Court,** the Trustee shall have consummated the Transaction and the Plan shall have become effective. |
| **Plan Effective Date** | The date upon which all conditions to the effectiveness of the Plan have been satisfied or waived in accordance with the terms of the Plan and the Plan becomes effective according to its terms (the "**Plan Effective Date**"). |
| **Conditions to Plan Effectiveness** | The Plan shall contain customary conditions precedent to confirmation of the Plan and occurrence of the Plan Effective Date, including, among others:<br><br>(i) the Plan and Disclosure Statement and the other Definitive Documents (as applicable) shall be in full force and effect, and in form and substance, and containing terms and conditions, consistent in all material respects with the Plan Term Sheet;<br><br>(ii) the Bankruptcy Court shall have entered the Disclosure Statement Order and Confirmation Order in form and substance consistent in all material respects with the Plan Term Sheet, and such orders shall not have been stayed, modified or vacated, and shall, among other things:<br><br>(iii) the final version of the Plan, the Definitive Documents, and all other documents contained in any supplement to the Plan, including any exhibits, schedules, amendments, modifications, or supplements thereto or other documents contained therein shall have been executed or filed, as applicable, in form and substance consistent in all material respects with the Plan Term Sheet; and<br><br>(iv) the Trustee, assisted by the Committee, shall have implemented the Transaction and all transactions contemplated in the Plan Term Sheet in a manner |

9

EXECUTION VERSION

|  | consistent with the Plan. |
|---|---|