# RABINOWITZ, LUBETKIN & TULLY, L.L.C.

## ATTORNEYS AT LAW

JONATHAN I. RABINOWITZ*
JAY L. LUBETKIN ∆
MARY ELLEN TULLY, RETIRED
BARRY J. ROY*□
JEFFREY A. COOPER*
HENRY M. KARWOWSKI*
LAURA E. QUINN*
JOHN J. HARMON*

293 EISENHOWER PARKWAY • SUITE 100
LIVINGSTON, NEW JERSEY 07039
TELEPHONE: (973) 597-9100
FACSIMILE: (973) 597-9119
WWW.RLTLAWFIRM.COM

\* MEMBER NJ & NY BARS
∆ MEMBER NJ & GA BARS
□ MEMBER MA BAR

September 8, 2021

<u>Via ECF</u>

Honorable David S. Jones
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004-1408

      Re:     P8H, INC. d/b/a PADDLE 8
              Docket No. 20-10809
              Hearing Date: September 9, 2021 at 2:00 p.m.
              Hearing on Approval of Disclosure Statement
              and to Fix Solicitation Procedures

Dear Judge Jones:

      In reference to the above-captioned matter, this firm represents FBNK, Digital Commerce, Stockaccess and Norman Hansen (the "FBNK Parties"). The FBNK Parties are Defendants in certain adversary proceedings commenced by the Trustee and the Committee (the "Adversary Proceedings"). Some of the FBNK Parties hold a claim or interest in this case. On behalf of the FBNK Parties, I submit this letter in lieu of a more formal memorandum of law addressing the opt out provision regarding the Third Party Release contained in the ballot (the "Ballot") to be included in the solicitation package. For the reasons set forth hereinafter, the FBNK Parties request that the Ballot contain an opt out, rather than an opt in, provision.

      Although the FBNK Parties deny liability in the Adversary Proceedings, in recognition of the costs and risk of litigation, they, in good faith, entered into mediation. As part of the mediation, the FBNK Parties have consistently said to the mediator and all the parties that this settlement must result in finality. The FBNK Parties are unwilling to contribute substantial consideration toward the settlement and remain at risk for being sued. Thus, paragraph 11(g) of the Settlement Agreement provides that "[T]he Plan shall contain the broadest possible third party releases and plan injunction in favor of the Released Parties authorized by applicable law." Thus, it is clear that in addition to receiving releases from the estate, the Trustee and the

September 8, 2021
Page 2

Committee, the FBNK Parties bargained for the broadest possible Third Party Release permtted by law. The Third Party Release insures finality.

The FBNK Parties, together with other defendants are contributing $950,000 to the settlement. In addition, they have entered into a side letter with John Textor for him to contribute an additional $300,000 to the settlement. Thus, the total to be contributed by the FBNK Parties and John Textor s $1,250,000 which represents 89.3% of the total settlement consideration and 54% of the Plan funding requirements. In addition, the FBNK Parties have agreed to support confirmation and are giving the estate releases including a release of a $8,540,000 secured claim against the estate. All of this consideration is necessary to fund the Plan. Without it, the Plan cannot be confirmed and substantial litigation will result to the detriment of the estate and other parties in interest.

As Your Honor is aware, there are two grounds to support the Third Party Release contained in the Plan. The first is creditors' consent and the second, in the absence of consent, is that the releasees are making a substantial contribution to the Plan. This latter issue, to wit, substantial contribution is a confirmation issue and not a Disclosure Statement issue. However, the FBNK Parties raise it at this time to alert the Court that it may be an issue at confirmation and to reserve all of rights in connection therewith.

Cases hold that consent can be inferred from inaction. Other cases hold that consent needs to be express. My clients submit that the more persuasive view is that consent can be inferred. This supports the opt out contained in the Ballot. In addition, in the absence of consent, the Third Party Release is justified by the substantial contribution to the Plan.

With regard to consent to the Third Party Release, the following three cases are illustrative: In re Calpine Corp., 2007 W.L. 4565223 (Bankr. S.D.N.Y. 2007); In re DBSD N. Am., Inc., 419 B.R. 179 (Bankr. S.D.N.Y. 2009); and In re Ditech Holding Corp., 606 B.R. 554 (Bankr. S.D.N.Y. 2019). In each of these cases, the Court held that voting to accept the Plan was consent to a third party release and that creditors who abstained from voting on the plan and didn't expressly opt out were still deemed to have consented to a third party release.

In Ditech, the third party release bound those who voted to accept the Plan and those who abstained from voting on the Plan but did not opt out of the third party release. The Ditech Court stated

> Based on the facts of this case, it finds that the forty seven parties that did not return a ballot and failed to opt out of the Third Party Releases are deemed to consent to the Third Party Releases. It is undisputed that –

September 8, 2021
Page 3

- The Third Party Releases were conspicuously disclosed in bold face type in the First Amended Plan, the Disclosure Statement and the ballots.
- The ballots plainly indicated that a vote to accept the plan constituted consent to the Third Party Releases.
- The ballots plainly notified abstaining creditors or creditors who voted to reject the plan the requirement to affirmatively opt out of the Third Party Release in order not to be bound thereby.
- An overwhelming majority of creditors entitled to vote on the Plan did so.

It is also undisputed that each party that did not return a ballot and did not opt out of the Third Party Releases was properly served with a ballot and related plan documents. There is no question that those parties received the ballots and actual notice of the consequences of failing to cast the ballot and to opt out of the release. ... It seems clear that all those parties understood the consequences of not casting a ballot in these Chapter 11 cases. Under these facts and circumstances, the Court finds that those parties have consented to the Third Party Releases. Id. at 629-30.

There should be the same result here. The existence of the Third Party Release in the Plan and its consequences and the requirement to opt out are conspicuously set forth in the Plan, Disclosure Statement and Ballot. It provides that those who vote to accept the Plan are deemed to have consented to the Third Party Release. Those that reject the Plan still need to opt out of the Third Party Release otherwise it binds them and those that abstain and do not opt out are also bound. Due notice of the Plan, Disclosure Statement and Ballot will be given. If not already done, the description of the Third Party Release, the opt out procedure and its consequences can be made bold and conspicuous. Thus, this Court should approve a ballot that requires creditors to opt out and ultimately, at confirmation, hold that those that vote to accept the Plan are bound by the Third Party Release, those that reject the Plan but do not opt out are bound and those that abstain and do not opt out are bound.

September 8, 2021
Page 4

Respectfully.

RABINOWITZ, LUBETKIN & TULLY, LLC

Jonathan I. Rabinowitz

JIR:jc
Cc: Via ECF and Email
    Richard Levy, Esq.
    Richard Corbi, Esq.
    Richard C. Morrissey, Esq.
    Tracey Klestadt, Esq.
    Brendan Scott, Esq.
    ECF Notice Parties

F:\Client_Files\A-M\FBNK Finance\Judge Jones-DS Approval.doc