# EXHIBIT C

## Consigning with Paddle8

Thank you for choosing to consign with Paddle8. Below are a few helpful tips to ensure a smooth process.

### Contract
Please review our terms of consignment carefully. Your specialist and our auctions team are happy to answer any questions

Take the time to cross reference your Property Schedule for the best cataloging you're able to provide and the most up to date collection address of your property.
If your items are in a storage facility, please complete the Release Authorization Form.

### Payment Method
Your preferred payment method will need to be included on the last pages of your consignment agreement. Payment can be made via check, direct deposit (ACH), or international wire. Banking details and a proof of account are required for the latter two, please see the requirements below.

For US Direct Deposit a document issued by your bank including: exact name on account, account number, ABA routing number for ACH payments

For International Direct Deposit a document issued by your bank including: exact name on account, account Number, swift ID

Paddle8 does not pay third parties. So please make sure that payment details and accounts match the consigning entity.

### Sale Updates
Auction results will be communicated by email on the day of sale. Adding noreply@paddle8.com to your contacts can help prevent these messages from going to a spam folder.

Live consignments can also be tracked in the Consignor Dashboard of your Paddle8 account. 

### Collection of Sold Property
We work with a global network of fine art shippers to collect on Paddle8's behalf. They will come to you! A representative from Cadogan Tate, G4S, Inc, Pakmail, AirSea Packing, or Box Brothers will be in touch upon notice from us. We only dispatch a shipper when a buyer's payment has been received in full.

Our shipping partners will also complete a condition report at time of collection, please assure that all works are unwrapped prior to their arrival.

### Release of Payment
We settle sales weekly on a lot basis. Payment can be expected within 31 days from buyer payment, pending the artwork has been collected.



Paddle8 — THE PREMIER ONLINE COLLECTING DESTINATION

# 8 Tips for Creating Photos that Sell

① **Prepare Items**
Dust and clean frames and surfaces. If it's a clothing item, ensure it's ironed and hung while photographing.

② **Perfect Your Lighting**
Use natural light or diffused lighting from an indirect source. Avoid flash, it will make all the difference in your photos.

③ **Plan a Main Image**
Shoot your item straight on at eye level, making sure the item is centered within the viewfinder of your camera, or from above, looking straight down. We cannot accept a main image that does not show the entirety of the item for sale.

④ **Check Your Camera's Settings**
Set your resolution to a medium-high settting (high is preferred; we require at least 600 pixels). Set your camera to auto focus and make sure your Auto White Balance (AWB) is turned on.

⑤ **Neatness Counts**
Hang items against a plain white wall. Place 3d objects on a table that is pushed up against a blank wall to avoid clutter.

⑥ **Use a Tripod**
Tripods eliminate any fuzziness or blur created by handling a camera. For a clear and sharp image, a tripod is the way to go.

⑦ **Get Every Angle**
After capturing your main image, take another 2-3 shots. These will include close-ups of details, different angles, including the vergo and any condition issues. Secondary photos help to better inform a potential buyer of the piece they're about to purchase.

⑧ **Give Us Your Best**
Before sending us your unedited images, look through your photos to ensure that you've captured everything you want and that nothing has been cut off or blurred. We want to make sure you send us the best images so that your item will sell.

## Mobile Phone Tips:



**Make sure your lens is clean**
Use lens cleaning solution. In a pinch, a clean cloth or even a t-shirt will work.



**Minimize cameramovement**
If possible, attach your phone to a tripod using an adapter. Otherwise, place your phone on a flat surface and use the shutter timer to avoid excess motion.



**Avoid the flash**
Try to use natural light or diffused lighting as much as possible. Flash will create shadows and highlights that make your photos less appealing.



**Do not zoom**
Using zoom on your camera lowers the quality of your image. Instead, for a closer view, move toward to the subject with your phone.

# Paddle8 Consignment Agreement

Thank you for choosing **P8H, Inc.** to sell your property on Paddle8.com. In this **Agreement**, "you" and "your" means the seller whose details are set out below. "**Paddle8**", "we", "us" and "our" means **P8H, Inc**. You can find the meanings of words in **bold** at the beginning of our **Terms and Conditions of Sale**, attached as Part 2 of this **Agreement**.

This **Agreement** confirms the terms upon which you and we have agreed to offer the property described in the attached **property schedule** for sale on the **site**, and incorporates our **Terms and Conditions of Sale**, our standard **Conditions of Business** and any Additional Terms as defined in the **Conditions of Business**. Our **Conditions of Business** can be viewed at https://paddle8.com/about/terms and as they form part of your contract with us, bidders and the **buyer**, you are strongly encouraged to read them.

In the event of any conflict between the **Conditions of Business** and this **Agreement**, the **Condition of Business** will prevail as to the relationship between you and the **buyer**, but this **Agreement** shall prevail as to the relationship between you and us.

This **Agreement** is comprised of four parts, plus the **Conditions of Business** and any Additional Terms. In the event of a conflict between Part 1 and Part 2 of this **Agreement**, Part 1 shall prevail. In the event of a conflict between Part 1 and Part 3 of this **Agreement**, Part 3 shall prevail.

Date:

Seller's Details

Name:

Address:

Telephone:

Email:

# Part 1: General Agreement

## A. The Consignment and Sale

**1. Consignment and Appointing Paddle8 as your exclusive agent**
You hereby consign the property described in the **property schedule** to us and appoint **Paddle8** as your exclusive agent to offer it for sale from the date of this **Agreement** until the earlier of i) a successfully completed sale, or ii) sixty (60) days after the last unsuccessful offer for sale on the **site**.

**2. Methods of Sale**
Your lot(s) shall be offered on the **site** for auction and/or **Buy Now**, as indicated in the **property schedule**.

If your lot(s) fail to sell on the **site**, you authorize us, in our sole discretion, for a period of sixty (60) days after the last date it was offered for sale on the **site**, to sell the property privately for a price that will result in a payment to you of not less than the **net sale proceeds** you would have been entitled to receive had the lot been sold at the **reserve** or **Buy Now price**, as applicable. Your obligations to us with respect to the private sale of the property are the same as if the Property had been sold on the **site**.

Any sale of the lot on the **site** is binding upon you. The contract of sale of the lot is concluded directly between you and the **buyer**. **Paddle8** may provide other services to you in connection with the listing, marketing and selling of your property.

Should you or we withdraw under the circumstances set forth in Part 2, Paragraph 7, you will owe us a **withdrawal fee**, as defined in Part 2, Paragraph 1.

**3. Vendor's Commission and Buyer's Premium**
You agree that we may retain solely for our account a **vendor's commission** on each lot sold on the **site** in an amount equal to twenty percent (20%) of the **winning bid price** or Buy Now price of the lot, unless a different commission rate is noted in the attached **property schedule**. There is no **vendor's commission** if a lot fails to sell, but other fees may apply and will be outlined in the attached **property schedule**.

You acknowledge and agree that we may charge the **buyer** and retain for our account a **buyer's premium** on any lot sold on the **site**. You have no right or claim over the **buyer's premium**.
We reserve the right and you authorize us to pay out of our **vendor's commission** or elsewhere a fee to any third party introducing property or clients to us.

**4. Sale Expenses**
You will be responsible for any pre-approved marketing, photography, shipping, storage, and/or any additional expenses as outlined in the attached **property schedule** that Paddle8 incurs on your behalf in relation to the sale of your property on the **site**.

**5. Settlement**
From the **winning bid price** or **Buy Now price** of each lot sold on the **site**, we will deduct:
(i)   the **vendor's commission**
(ii)  any pre-sale shipping and storage charges that we incur on your behalf
(iii) any applicable **collection fee**
(iv)  any applicable taxes, and
(v)   any other amount you owe us, whether arising out of the sale of the lot or otherwise.

The **net sale proceeds** are the **winning bid price** or **Buy Now price** of a lot less the sums of our deductions set out at (i) to (v) above.

Except as otherwise provided in this **Agreement**, within thirty-one (31) **business days** after you have released the property pursuant to Part 1, Paragraph 6 below, we will pay you the **net sale proceeds** of that lot. Payment of **net sale proceeds** will be withheld by **Paddle8** should you refuse to release the sold property to the identified third-party shipping partner in a timely manner, as instructed in Part 1 Paragraph 6 below. Payment of **net sale proceeds** shall be by electronic funds transfer to a bank account identified by you on the final page (Part 4) of this **Agreement**. If for any reason, we are not able to process an electronic funds transfer, you will receive a check made out in your name and mailed to the address set out on the first page of this **Agreement**.

If we do not receive payment from the **buyer** within five (5) **business days** of (i) the end of an auction or the date when the **buyer** placed the order for the **Buy Now** lot or (ii) where we issue a separate shipping invoice to the **buyer** in relation to the **buyer's** purchase of the lot, within five (5) **business days** of the date of the shipping invoice, we shall have the right, in our sole discretion, to cancel the sale and/or to exercise the other rights and remedies provided in Paragraph 12 (Remedies for Non-Payment) of the **Conditions of Business**, including but not limited to reoffering the lot for sale.

**6. Delivery**
You agree to release the lot(s) for collection to a third-party shipper designated by **Paddle8** within five (5) to seven (7) days of our notice to you that we have received the **total amount due** for the lot(s) in cleared funds. Collection must occur within the designated third-party shipper's business hours. If

collection occurs outside of the designated third-party shipper's business hours and we are charged an additional fee as a result, you authorize us to deduct and retain this additional **collection fee** from the **net sale proceeds**. If a lot is not released within seven (7) **business days** of our notice to you, you authorize us to deduct and retain from the **net sale proceeds** a sum of $50 for every day that the lot is not released after the expiry of the seven (7) **business day** period. If you fail to release the lot in breach of your contractual obligations, and you have not rectified your breach following written notice of default by **Paddle8** to do so within fourteen (14) **business days** from the date of such notice, **Paddle8** reserves the right to treat the sale of the lot at an end, refund the **total amount due** for the lot to the **buyer**, and you shall have no further rights or claims against **Paddle8** in relation to that lot including but not limited to any claims for loss or damage (whether direct, indirect or foreseeable) and/or costs or expenses (including but not limited to legal fees or expenses). If needed, you agree to reschedule collection with the designated third-party shipper at least 24 hours in advance of the scheduled collection time. If you fail to provide 24 hours notice to reschedule the collection time or if the work is located at a different address than the address indicated in the **property schedule**, you authorize us to deduct and retain an additional **collection fee** from the **net sale proceeds**.

### 7. Auction Estimates and Reserves and Buy Now Price
The auction **estimate(s)** and the **reserve(s)** and the **buy now price(s)**, as applicable, shall be set in accordance with Part 2, Paragraphs 3 and 4 of this **Agreement**.

### 8. Seller's Representations, Undertakings and Indemnity
We refer you to Part 2, Paragraph 2 of this **Agreement**, which set out your representations, undertakings and indemnity to **Paddle8** and the **buyer** of the lot.

You further agree that while we are the exclusive agent of the property listed in the **property schedule** and while the property is in your possession, you will not sell, gift or mortgage the property, and shall keep the property free of all liens, claims and encumbrances. You acknowledge, understand and agree that if you breach this provision, **Paddle8** shall be permitted to recover from you the **total amount due**, and any other direct or indirect damages incurred by Paddle8, including but not limited to any consequential damages.

### 9. Term
You are permitted to consign lot(s) under this **Agreement** until six (6) months from the date of this **Agreement**. At such time, this **Agreement** will be terminated. Notwithstanding the foregoing, termination of this **Agreement** shall not relieve you or **Paddle8** from any obligation accruing prior to such termination.

## B. Your Agreement

Please carefully read this **Agreement**, including our **Terms and Conditions of Sale** (attached as Part 2 hereto) and the **Conditions of Business** plus any Additional Terms. Please confirm your agreement with the foregoing by dating, signing and returning to us the duplicate copy of this **Agreement**.

P8H, Inc.

By: _____


ACCEPTED AND AGREED TO:

_____
Seller sign here


_____
Print name


Dated: _____

# Part 2: Terms and Conditions of Sale

Please read all parts of this Agreement carefully

TERMS AND CONDITIONS OF SALE

1– Definitions

**Agreement:** Our agreement with you under which the lot(s) consigned by you and listed on the attached **property schedule** will be offered for sale on the site and which incorporates our **Terms and Conditions of Sale**, our standard **Conditions of Business** and any Additional Terms as defined in the **Conditions of Business**

**business day-** a day when banks are open for business in the United States, excluding Saturdays, Sundays and public holidays

**Buy Now** - the functionality on the **site** allowing the **buyer** to purchase a lot immediately at the **Buy Now price**

**Buy Now price** - the price at which a lot can be purchased immediately

**buyer** - the party purchasing a lot on the site through a sale on the **site**

**buyer's premium** - the amount equal to twenty percent (20%) of the **winning bid price** or the **Buy Now price** payable to **Paddle8** by the **buyer** of a lot

**collection fee** – a fee payable by you to us if we are required to collect your property outside of our standard pickup zones

**Conditions of Business** - the contractual terms posted to the **site** under which we offer lots for sale, and sell lots, on the **site** on your behalf and which records the terms of the contract with bidders and **buyers**

**condition report** - a report provided to, or obtained by, a potential **buyer** on the physical condition of a lot

**estimates** - the price range within which we believe a lot may sell at auction. The low **estimate** means the lower figure in the range and high **estimate** means the higher figure. The mid **estimate** is the mid-point between the two

**insurance amount** - the amount of insurance shall be: (a) prior to the auction, the mean of our current **estimates** or agreement upon valuation, (b) for a lot that has been sold at auction, the **winning bid price** plus the **buyer's premium**, (c) for a lot that has failed to sell in an auction, and is reoffered as **Buy Now**, the **Buy Now price**, (d) for a lot that has been sold as a **Buy Now**, the **Buy Now price** plus the **buyer's premium**, and (e) for a lot that has failed to sell at **Buy Now**, the **reserve**.

**Limited Authorship Guarantee** - the guarantee we give to the buyer, on your behalf, described in the **Conditions of Business**

**net sale proceeds** - the balance of the **winning bid price** or **Buy Now price** of a lot after deduction of the **vendor's commission**, the **collection fee**, any pre-sale shipping and storage charges that we incur on your behalf, any applicable tax, and any other amount owed by you to us whether arising out of the sale of the lot or otherwise

**P8H Inc. or Paddle8** - P8H, Inc., a Delaware corporation, including any successor to or transferee of all or substantially all of its business, operations and assets (whether by sale or transfer of assets, stock, merger or other business combination).

**Paddle8 Group company** - **Paddle8** and any legal entity formed under the laws of any jurisdiction controlling, controlled by or under common control with **Paddle8**. For purposes of this definition, **control** means (i) the ownership of equity interests having at least a majority of the voting power of an entity or the right to appoint at least the majority of an entity's directors or managers or similar governing body, or (ii) the right to direct the management of an entity by contract or otherwise.

**property schedule** - Part 3 of this **Agreement** which sets out information about the lot(s) consigned for sale

**reissue fee** - an amount equal to $30 that will be deducted from the **net sale proceeds** if we much reissue a wire payment or cancel and reissue a check

**reserve** - the confidential amount below which we will not sell a lot unless otherwise set out in this **Agreement**

**site** - www.Paddle8.com, owned and operated by P8H, Inc.

**site notice** – a posting on the **site** providing information on a lot or a sale

**total amount due** – the total amount payable by the **buyer** for a lot

**vendor's commission** - the commission payable by you to us on the sale of a lot on the **site**

**winning bid price** - the highest bid on a lot at the end of a timed auction on the **site**; or if there is more than one highest bid on the lot at the end of the timed auction, the highest bid first received by us

**withdrawal fee** - an amount equal to (a) 20% of the latest mid auction **estimate** for unsold auction lots as well as all out-of-pocket expenses incurred by us up to and including the date of withdrawal of the lot, (b) 20% of the hammer

price if the lot sold as well as all out-of-pocket expenses incurred by us up to and including the date of withdrawal of the lot, or (c) 20% of the **Buy Now price** of a lot, as applicable, as well as all out-of-pocket expenses incurred by us up to and including the date of withdrawal of the lot.

2 - Your Representations, Undertakings and Indemnity

You represent to us and to the **buyer** of the lot that now, and at the time of the sale and payment of the **total amount due** for the lot:

a) YOU ARE, AND WILL BE, THE SOLE LEGAL AND BENEFICIAL OWNER OF THE LOT, OR A JOINT LEGAL AND BENEFICIAL OWNER OF THE LOT ACTING WITH THE PERMISSION OF ALL OTHER JOINT LEGAL AND BENEFICIAL OWNERS, and you have conducted appropriate due diligence to ensure that you are the owner(s) of the lot, and consent to us relying on this due diligence and will retain for a period of not less than 5 years the documentation and records evidencing the due diligence, or, if you are not the owner of the lot:

i) you have the express consent of the owner(s) to appoint us to sell the lot on the terms of this **Agreement** and will disclose to the owner(s) all material facts in relation to the sale of the lot;

ii) you are irrevocably authorized to receive the **net sale proceeds** on behalf of the owner(s) of the lot;

iii) you have made the owner(s) aware that Paddle8 will deduct the **vendor's commission** from the **winning bid price** or **Buy Now price** paid for the lot, and retain the **buyer's premium** for our own account;

iv) you have or will obtain the owner(s) consent before you deduct any other commission, costs or amounts from the **net sale proceeds** you receive from us;

v) if you, or a person connected to you, receives a commission from us in connection with the lot, you have disclosed and will disclose your receipt of the commission and the amount of the commission to the owner(s) and your receipt of the commission is lawful and is not in breach of applicable law (including without limitation any anti-bribery or anticorruption laws); and

vi) you have conducted appropriate due diligence on the owner(s) of the lot, consent to us relying on this due diligence and will retain for a period of not less than 5 years the documentation and records evidencing the due diligence;

b) You and any and all owners of the lot will be together and separately responsible for performing your obligations under this **Agreement**;

c) You have, and you will have, the right to transfer ownership of the lot to the **buyer** without any restrictions or claims by anyone else;

d) The lot is now, and through and including its sale will be kept, free of all liens, claims and encumbrances of others, including, but not limited to, claims of governments or governmental agencies;

e) Good title to and right to possession of the lot will pass to the **buyer** free of all liens, claims and encumbrances;

f) At the time that the lot is delivered to the **buyer**, you will have met all legal requirements relating to exporting or importing the lot. You are not aware that anyone else has failed to meet these requirements;

g) You do not know, and have no reason to suspect, that the lot is, or is connected with, the proceeds of criminal activity;

h) The **net sale proceeds** will not be used for any unlawful purpose;

i) You have conducted appropriate due diligence on the condition or provenance of the lot or whether it is authentic, consent to us relying on this due diligence and will retain for a period of not less than 5 years the documentation and records evidencing the due diligence. At our sole discretion, we may conduct our own due diligence to confirm the provenance or authenticity information you provide to us. You will promptly update and inform us of any changes to this information to maintain its accuracy. In particular, since we will not take possession of the lot(s), we will not have the opportunity to inspect its/their physical condition, and we strictly rely on the images of the lot(s) and other information relating to the lot(s) that you provide to us;

j) You have told us in writing about any alterations, repairs or restoration to the lot of which you are aware;

k) You have made sure that any lot containing any electrical or mechanical part is in a safe operating condition;

l) You have told us and will continue to tell us about all facts and matters of which you are aware which might affect the sale or value of the lot or the terms on which we are prepared to accept the lot for sale (including whether you have tried to sell the lot in the last five years); and

m) You will tell us as soon as you become aware or have reason to suspect, that any of your representations above are, or may have become, untrue.

For the purposes of Paragraph 2(a)(v), "a person connected to you" means: (i) if you are an individual, your spouse, civil partner, child or step-child; or (ii) if you are a corporate entity, your directors and any shareholders holding more than 20% of the voting power or shares; or (iii) a trustee or personal representative or a beneficiary of the trust or will.

You will be directly responsible to the **buyer** for: a) the **representations** in this Paragraph 2 a) to m) above; and b) any representations you authorize us to make to the **buyer** on your behalf.

You shall indemnify us and the **buyer** against any loss, claims, judgment, fees, costs and expenses of any kind we incur or the **buyer** incurs in connection with any claim or

dispute related to any of your representations set out in this Paragraph 2.

3- Estimates and Buy Now Price

**Estimates** are shown on the **property schedule**. We will set the **estimates** for lots to be sold on our **site**, in our sole discretion. Neither you, nor anyone else, may rely upon any **estimate** as a prediction or guarantee of the actual selling price of the lot. **Estimates** included in receipts, the **property schedule** or elsewhere are preliminary only and are subject to revisions by us from time to time in our sole discretion.

The **Buy Now price**, as applicable, will be agreed with you in advance. The **Buy Now price** may be set between the low and high auction **estimate** and it may not be less than the low **estimate**.

4- Reserves

If applicable, each lot will be offered subject to a **reserve** when listed in an auction, unless otherwise agreed with you. The starting bid for a lot will not exceed the low auction **estimate** and may be equal to the **reserve**. Unless there is a different **reserve** on a lot recorded on the **property schedule**, you agree that the **reserve** shall be 70% of the final low auction **estimate** of the lot, rounded down to the nearest bidding increment. However, we may sell a lot below the **reserve**, provided that we pay you the **net sale proceeds** that you would have been entitled to receive had the lot been sold at the **reserve**. If we lower the **estimates** for a lot, and the **reserve** for such lot exceeds the revised low auction estimate, the reserve for such lot shall be automatically lowered to the revised low **estimate** or the agreed percentage of the revised low **estimate**, as applicable.

5- Bidding on or Buying Your Own Property

You agree not to bid or purchase your property on the **site** and you shall not instruct or permit any other person or entity to bid for or purchase your property on the **site** on your behalf. If you violate this commitment and you become or your agent becomes the **buyer** of your property, you will pay us the **buyer's premium** on the **winning bid price** or the **Buy Now price**, and you will not be entitled to the benefit of the rights afforded to the **buyer** in the **Conditions of Business** including but not limited to the **Limited Authorship Guarantee**. However, we have the right as your agent to bid on your property on the site on your behalf, but only up to and not including the amount of the **reserve**.

6- Condition Report

Prospective bidders may request a **condition report** on a lot before bidding on the lot. You agree to use reasonable endeavors to provide, in a timely fashion, a **condition report** upon request or to give access to the lot to the representative we commission, or the prospective buyer commissions, to prepare a **condition report**.

7. Withdrawal

You may not withdraw any lot from sale after the date on which you sign this **Agreement**. Regardless of whether we have posted a lot on the **site** or advertised its sale, we may withdraw the lot at any time before sale if in our sole discretion (a) there is any doubt as to its authenticity or attribution, (b) the condition of the lot makes it unsuitable for inclusion in a sale, (c) the offering for sale of the lot may subject us and/or you to any liability, (d) there is reasonable doubt as to the accuracy of any of your representations, or (e) you have breached any provision of this **Agreement**, or you have told us that you intend to breach any provision of this **Agreement**. If you withdraw a lot in breach of this Paragraph, or if we withdraw a lot under (d) or (e) of this Paragraph, you must within 10 (ten) days of our notice to you of our withdrawal pay us the **withdrawal fee** for the lot. If we withdraw a lot under (a), (b) or (c) above, you will not be charged a **withdrawal fee** for the lot.

8- Buyer's Premium

We will charge the **buyer** a **buyer's premium** on each lot sold and retain the **buyer's premium** for our account.

9- Unsold Lots

If we are in possession of the property and the lot is not reoffered or if the lot is reoffered and fails to sell, you agree to arrange with us for the return shipment of your unsold property and pay to us any expenses due to us hereunder, including costs of return packing, handling, shipping and insurance, within five (5) **business days** of our notification to you. Subject to the next paragraph below, we will arrange to have the property shipped back to you at an agreed upon location within approximately two weeks of our receipt of your email or written notice to us requesting to return the property.

If we are in possession of the property and you have not paid all expenses due us hereunder or do not arrange for the return of any unsold property in our custody within five (5) **business days** after our notification, we may at our sole discretion (a) offer it for sale on the **Site** with **estimates** and a **reserve** reduced to an amount equal to approximately 25% of the **estimates** and **reserve** at which the lot was initially offered, (b) transfer it to a third party warehouse, (c) retain the property at the existing third party warehouse, or (d) return it to you at your expense. The proceeds of any sale

pursuant to (a) above shall be applied to any amount you owe us, including, but not limited to, our commissions and expenses, and any excess will be remitted to you. If we transfer any unsold property to a third party warehouse under (b) above, you shall bear the cost and risk thereof and shall be liable to such warehouse for the payment of all storage and insurance charges at such warehouse's standard rates. If the unsold property is already located at such a warehouse under (c) above, you shall be liable to such warehouse for the payment of all storage and insurance charges at such warehouse's standard rates.

10- Exclusions and Limitations of Liability

Information provided to you in respect of a lot, including in this **Agreement** or on the **site**, is not a representation of fact but limited to a statement of opinion held by Paddle8.

We do not give you any warranty or make any representations in relation to any lot and will not be liable to you:
a) for any mistakes or missing information in the description of any lot;
b) if the **buyer** fails to pay for the lot; and
c) in any circumstances for any special, consequential, incidental or indirect damages of any kind.

We accept no obligation to take legal action against the **buyer** if the **buyer** pays late or does not pay for a lot.

The **site** is provided "AS IS" and "AS AVAILABLE" and without any express or implied warranties. Paddle8 does not guarantee or represent that the site will operate error-free or that the service will be uninterrupted. Broadband or other internet capacity constraints, corporate firewalls and other technical problems beyond our reasonable control may create difficulties for some registered users including but not limited to accessing sales, placing bids, receiving emails and making online payments. Errors may occur in the quality of digital images. Paddle8 accepts no liability for such difficulties or errors.

If, despite the terms of this Paragraph 10, we are found to be liable in relation to a lot, our maximum liability to you shall be a sum equal to the **vendor's commission** calculated on the **winning bid price** or **Buy Now price** of the lot, or if the lot has not sold in a timed auction, the mid auction **estimate**.

11- Payment

a) Remittance

We will pay you the **net sale proceeds** by ACH transfer. If you request a wire transfer or expedited check by FedEx, we will deduct the applicable fees from the **winning bid price**. We will deduct a **reissue fee** of $30 from the **net sale proceeds** if we must reissue a wire payment or cancel and reissue a check.

b) Currency

We will pay you in the currency in which the **buyer** pays for the lot (generally in U.S. dollars).

c) Right to delay payment

We may delay paying the **net sale proceeds** to you for a reasonable period if we reasonably believe that any of the circumstances set out in Paragraph 14a below may apply.

d) Accuracy of payment information

You are responsible for providing accurate payment information in Part 4 of this **Agreement**. Failure to provide accurate and complete information may result in a delay of payment, and you may be liable for additional processing fees. You agree that we will not be liable for any delay or failure to execute your payment due to any inaccuracies in the payment information.

12- Additional Rights

a) Right of retention

We may withhold any of your property in our possession or control or in the possession or control of another company in the **Paddle8 Group company**:
i) until you have paid all amounts you owe us or any **Paddle8 group company**;
ii) for a reasonable period if we become aware of anyone else claiming ownership of, or any other interest in, the property or we have reasonable doubts as to whether it is authentic;
iii) while we complete our client identification and registration procedures to our satisfaction; or
iv) if we reasonably consider we have to do so by law or regulation.

b) Right of sale

If you owe money to us or to another **Paddle8 group company**, and we are holding any of your property, we can sell it in any way we reasonably decide, after giving you reasonable advance written notice at the address recorded on the first page of this **Agreement** or any subsequent address notified to us in writing, subject to any mandatory requirements under applicable law.

c) Right of Set-Off

You irrevocably authorize us to use the proceeds of sale of any of your property we have sold, and any other amounts we owe you, in order to:
i) pay any amount you owe us; and
ii) pay as your agent any amount you owe any other **Paddle8 group company**.

13- Taxes

All fees, charges and expenses set out in this **Agreement** are quoted exclusive of applicable taxes. You are responsible for paying any value added tax, sales tax, use tax and other tax at the rate in force from time to time and as required by

applicable law. We have the right to deduct from the **winning bid price** or **Buy Now price** an amount equal to any tax due on the **winning bid price** or the **Buy Now price**, the **vendor's commission**, the **buyer's premium**, the **collecting fee** and any other fee, cost or expense due by you under this **Agreement**. You must give us all relevant information about your tax status and that of the property. If we have to pay any taxes, duties or other amounts to any tax authorities on your behalf or as a result of any information you give us under this Paragraph being incorrect or due to your failure to complete any forms required by law, you must refund us the full amount and our related costs or expenses when we ask you to do so.

14- Our Right to Cancel the Sale of a Lot
a) We can cancel a sale of a lot if: i) the **buyer** fails to pay in full; ii) any of your representations or undertakings set out in Paragraph 2 above is inaccurate or misleading; iii) the **buyer** is entitled to cancel the sale under the **Limited Authorship Guarantee**; iv) we reasonably believe that completing the sale is or may be unlawful; or v) we reasonably believe that the sale of the lot could render you or us liable to each other or to a third party.
b) If we cancel the sale under Paragraph 14a above, you will accept the return of the lot if the lot has been collected from you, or you will authorize us to accept the return of the lot on your behalf. If we have already paid you any of the **net sale proceeds**, you shall return to us any such **net sale proceeds** no later than five (5) days of us notifying you that the sale is cancelled.
c) If cancellation of the sale of a lot is caused by your act(s) or omission(s), you must pay us in full when we ask you to do so for any loss, liability (whether to the **buyer** or anyone else), cost or expense (including legal fees) we incur as a result of your act(s) or omission(s).

15- Physical Loss or Damage to Property
a) You bear the risk of loss for each lot offered for sale on the site that remains in your possession. FOR TRADE CONSIGNORS: Each lot offered for sale on the site on your behalf that remains in your possession will be insured by you under a relevant insurance policy with a reputable insurance company in a sum equal to the **insurance amount**. Your obligation to insure the lot ends when risk passes to the buyer under Paragraph 15.b below.
b) Under the **Conditions of Business**, risk of loss or damage to the lot will pass to the **buyer** upon your physical release of the property to a third-party shipper designated by Paddle8. From the date you release the lot to the third-party shipper, Paddle8 shall assume the risk of loss or damage to the lot until the lot is delivered to the **buyer** or the **buyer's** designated agent, or in the event that you ship the property to Paddle8 or our designated agent and the lot is not sold for any reason, when the lot is returned to you.
c) You shall indemnify us and the **buyer** against any loss, claims, judgment, costs, fees and expenses of any kind we incur or the **buyer** incurs arising from or in connection with (i) any breach of your obligation to insure the lot under Paragraph 15a above, (ii) your failure to pay to us and the buyer any insurance proceeds paid to you by your insurer in respect of the lot, and (iii) any failure by your insurer to indemnify you under the policy in the event of loss or damage to the lot while the lot is insured by you.
d) If we take possession of any lot for sale or inspection, then: i) you agree to insure the lot while it is in transit to us, and ii) you authorize us to purchase insurance to cover the risk of loss or damage to the lot while in our custody until it ceases to be in our custody, or until 60 days after the sale, whichever occurs first, in the amount equal to the **insurance amount**. Such insurance will be arranged automatically by us, and you authorize and instruct us, whether or not the lot is sold, to pay insurance premiums on your behalf. The insurer's and our combined liability to you resulting from loss or damage to any lot shall not exceed the **insurance amount**.

16- Ending the Agreement
a) Termination
(i) We will be entitled to terminate this **Agreement** immediately by giving you written notice if: i) you have breached any of your representations in this **Agreement**; ii) the lot(s) consigned under this **Agreement** is/are withdrawn; iii) if the sale is cancelled or iv) the sale of the lot(s) consigned under this **Agreement** is postponed by more than fourteen (14) days.
(ii) We may terminate this **Agreement** for no reason by giving you thirty (30) days prior written notice, as long as there is no property scheduled for sale at the time of the notice.
(iii) Even after termination, you shall i) pay us any amounts you owe us, whether arising under this **Agreement** or otherwise, and ii) release any property for which we have received payment in full from the buyer, as indicated in Part 1 Paragraph 6.
b) Events beyond our control
We will not be responsible for any failure to meet our obligations under this **Agreement** which is caused by circumstances beyond our reasonable control. This includes, but is not limited to strike, lock-out, fire, flood, natural disasters, war, armed conflict, terrorist attack and nuclear and chemical contamination.
c) Material Adverse effect
We may terminate this **Agreement** with immediate effect and without liability on our part if one or more of the following happens:
(i) a primary stock index in the location of the saleroom falls

by more than 10% after the date of this **Agreement**;
ii) there is a general suspension of trading in or limitation on prices for securities traded on the New York or London Stock Exchange within the month before the auction; or
iii) within the previous three months, at any other auction of items similar to the lot, a) the aggregate sale price for the auction was less than 60% of the low estimate of the auction; or b) less than 60% of all such items sold.

17- Copyright and Archive
We have the right to photograph, video or otherwise reproduce images of the **property** in whatever way we think appropriate, as allowed by law. You agree that, subject to any rights of third parties, we may use and retain images and descriptions of the **property**. We retain the exclusive copyright to all illustrations, photographs, videography, and descriptions of the **property** created by us. We grant you a non-exclusive right, subject to any rights of third parties, to use any images and descriptions of the **property** created by us for your educational and archival purposes only, provided (a) you credit Paddle8 for the materials, (b) your use is not for sales or marketing purposes, and (c) none of the materials are provided to, or for use by, a competitor of Paddle8 (as determined solely by us).

As a service to you and to purchasers, we will maintain an archival database of **property** included in an auction or **Buy Now** sale. You authorize us to compile and publish this database, subject to any confidentiality settings or requests by you, and freely use the information you provide to us (including images and descriptions of the Property), (collectively, the "**property data**"), whereby you grant us an irrevocable, non-exclusive, worldwide, royalty-free, perpetual license and right to exercise the copyright you have in the **property data** and the right to publish, reproduce or otherwise use the **property data** for archival purposes only.

If you include in any **property data** any material the use of which requires the permission of any copyright holder or any other person having rights in such material, you agree to obtain any necessary permissions or licenses to use such material in the manner contemplated in this **Agreement** prior to providing the **property data** to us for posting to the **site**. We may limit the scope of this database (including, without limitation, the time period covered by such database) at our discretion.

18- Use of Name
Unless we have agreed in writing to a particular designation, the property consigned by you for sale on the site will be offered without designation. If we have agreed in writing to a particular designation, then you authorize us to use such designation when we offer the property for sale, advertise or otherwise promote the sale, both before and after the sale.

19- Confidentiality
Both of you and we agree to keep the terms of this **Agreement** confidential other than disclosing them to our respective professional advisors and unless otherwise required by law, as a result of a valid legal process, by a court or a regulating authority, compelling the disclosure.

20- General
a) **Validity**
If a court finds that any part of this **Agreement** is not valid, or is illegal or impossible to enforce, that part of the **Agreement** will be treated as being deleted, and the rest of this **Agreement** will not be affected.
b) **Your Identity**
You confirm that your name and address set out on page 1 of this **Agreement** are accurate. You also agree to give us any information and documents we may reasonably need to satisfy our client identification and registration procedures, and confirm that all the information and documents you give us are accurate and are originals or true copies of the originals.
c) **Documents, records and research**
i) You authorize us to deliver and/or disclose to the **buyer** all documents and records you have about the history and provenance of the property.
ii) You agree that we may carry out certain checks and searches, including through other organizations, in connection with the property.
d) **No Security Interests, Liens or Charges without our Consent**
You may not grant or create any security interest, lien, charge or other similar right or interest in favor of any third party in or to your rights and/or obligations under or with respect to this **Agreement** unless we have given our written permission which we will not withhold unreasonably.
e) **Translations**
If we have provided a translation of this **Agreement** we will use this original version in deciding any issues or disputes which arise under this **Agreement**.
f) **Entire Agreement**
This **Agreement** is the entire agreement and understanding between you and us concerning the property. It will replace any and all other agreements or statements between you and us relating to the property. Neither you nor we may amend, supplement or waive any provision of this **Agreement** other than by means of a writing signed by both parties.
g) **Governing Law and disputes; Entire Agreement; Restrictions on Assignment**
This **Agreement** shall be governed by and construed and enforced in accordance with the laws of the State of New York. In the event of a dispute hereunder, you agree to

submit to the exclusive jurisdiction of the state courts of and the federal courts sitting in the State of New York. This **Agreement** shall be binding upon your heirs, executors, beneficiaries, successors and/or assigns, but you may not assign this **Agreement** or delegate any of your obligations hereunder without our prior written consent. Neither party shall be liable to the other for any special, consequential or incidental damages. This **Agreement**, including the Schedules hereto, and the **Conditions of Business** constitute the entire agreement between the parties with respect to the transactions contemplated hereby and supersede all prior or contemporaneous written, oral or implied understandings, representations and agreements of the parties relating to the subject matter of this **Agreement**. We may assign this **Agreement** to a **Paddle8 Group company** without your prior consent.

**h) Indemnity**
You agree to indemnify and hold us and each bidder and **buyer** harmless from and against any and all claims, actions, damages, losses, liabilities and expenses (including reasonable attorneys' fees) relating to the breach or alleged breach of any of your agreements, representations or warranties in this **Agreement**.

**i) Headings**
The paragraph headings contained in this **Agreement** are for convenience of reference only and shall not affect in any way the meaning or interpretation of this **Agreement**.

**j) Execution**
This **Agreement** may be executed in counterparts, each of which will be deemed an original and all of which together constitute one and the same instrument. Signatures sent by facsimile transmission and scanned executed agreements in PDF format sent by email transmission are each valid and binding and will be deemed an original.

## 21 - Disclaimer of Warranties
Please note that the site on which we will offer your property for sale is provided "AS IS" and "AS AVAILABLE" and without any express or implied warranties. To the maximum extent permitted by law, the site provider and Paddle8 specifically disclaim the implied warranty of merchantability and fitness for a particular purpose. In no event shall we or the site provider be liable for lost profits or any special, incidental or consequential damages arising out of or in connection with this **Agreement**. Neither we nor the site provider guarantee or represent that the site will operate error-free or that service will be uninterrupted.

## 22 – Notices and Communications
Any notices or communications under this **Agreement** shall be given by email or regular mail. Our email address for the property is auctions@Paddle8.com. Any notice we give to you hereunder by email will be sent to the email address you provide on the first page of this **Agreement**. Any notices we give to you hereunder by regular mail will be sent to the address you provide on the first page of this **Agreement**. Either party may change its address by email or regular mail notification to the other party. Notice shall be deemed to have been given (a) twenty-four (24) hours after it has been sent in the case of email and (b) ten (10) calendar days after it has been sent in the case of regular mail. Notice will not be deemed to be given if the sending party receives a notification that the email or other address is invalid or any other notification that indicates that the email or other mail was not received. If you do not maintain an email address, we will deliver all notices and other communications concerning the property to you at your address as listed on the first page of the **Agreement**, and in such event you agree to pay us an administrative service fee of $10 per piece of property.

## 23 - Personal Data
We will record any information that you supply to us or that we obtain about you in our data systems. By signing this **Agreement**, you consent to this processing of your personal data by the **Paddle8 group company** and any affiliated companies. We may use third party partners to help operate the site and deliver our products and services, and may, when necessary to do so, share your information with our affiliates, service providers and other third parties that provide products or services for or through the site or for our business purposes (such as Web site or database hosting companies, address list hosting companies, e-mail service providers, analytics companies, distribution companies, fulfillment companies, and other similar service providers that use such information on our behalf). These third party partners are obligated to protect the security and confidentiality of your information. Paddle8 shall not be liable to you should these third party partners breach their obligation. We do not sell, lease or give your Personal Information to any other company, unless otherwise stated herein. From time to time we may send you information about our sales and events, or about products and services of other organizations with which we have a relationship.